UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

KEITH STANSELL,   CASE NO.:
MARC GONSALVES, and
THOMAS HOWES,

    Plaintiffs,
vs.

BGP, INC.,
BGP INTERNATIONAL, INC.,
BGP AMERICAS, INC.,
GLOBAL EXPLORATION SERVICE, LLC,
ZHIMIN ZHANG, TING SONG, and
JOHN DOE #1 a/k/a "Hector",

    Defendants.
_____/

## COMPLAINT

Plaintiffs sue Defendants and allege:

## THE ACTION, EXCLUSIVE JURISDICTION & VENUE

1. This is a civil action for damages arising from acts of international terrorism committed by Defendants by knowingly providing material support to the REVOLUTIONARY ARMED FORCES OF COLOMBIA ("FARC").[1]

2. This action is brought pursuant to the civil remedies provisions of the Anti-Terrorism Act, 18 U.S.C. § 2333 which provides:

> "(a) Action and jurisdiction.--Any national of the United States injured in his or her person, property, or business by reason of an act of international terrorism, or his or her estate, survivors, or heirs, may sue therefor in any appropriate district court of the United States and shall recover threefold the damages he or she sustains and the cost of the suit, including attorney's fees."

---

[1] Plaintiffs are suing the FARC Defendants in related case number 8:09-cv-2308-RAL-MAP

3.     Plaintiffs seek damages against Defendants for knowingly providing material support to a terrorist organization in violation of 18 U.S.C. § 2339B(a)(1).

4.     Pursuant to 18 U.S.C. § 2338, the district courts of the United States have exclusive jurisdiction over this action and extraterritorial jurisdiction pursuant to 18 USC § 2333B(d).

5.     This Court also has diversity jurisdiction under 28 U.S.C. § 1332 because the state of incorporation and principal places of business and residence for Defendants are in a state other than Florida or Connecticut.

6.     Venue is proper where any Plaintiff resides pursuant to 18 U.S.C. § 2334(a), therefore venue is proper in this district because Plaintiffs KEITH STANSELL and THOMAS HOWES reside in the Middle District of Florida.

## THE PLAINTIFFS

7.     Plaintiff KEITH STANSELL is a U.S. citizen residing in Manatee County, Florida who was injured by repeated acts of international terrorism occurring from February 13, 2003 and continuing through the date of his rescue on July 2, 2008.

8.     Plaintiff MARC GONSALVES is a U.S. citizen residing in Connecticut who was injured by repeated acts of international terrorism occurring from February 13, 2003 and continuing through the date of his rescue on July 2, 2008.

9.     Plaintiff THOMAS HOWES is a U.S. citizen residing in Brevard County, Florida who was injured by repeated acts of international terrorism occurring from February 13, 2003 and continuing through the date of his rescue on July 2, 2008.

2

## THE DEFENDANTS

10.     Defendant BGP, INC. is a foreign corporation which is a wholly owned subsidiary of CNPC.

11.     Defendant BGP INTERNATIONAL, INC., is a Texas corporation with its principal place of business at 10630 Haddington Drive, Houston, TX.

12.     Defendant BGP AMERICAS, INC. is a Delaware corporation with its principal place of business at 10630 Haddington Drive, Houston, TX.

13.     Defendant GLOBE EXPLORATION SERVICE, LLC (GES) is a Texas corporation with its principal place of business at 10630 Haddington Drive, Houston, TX.  GES is a joint venture between BGP INTERNATIONAL, INC. and Geosoft Solution, Inc.

14.     The BGP Defendants are all wholly owned subsidiaries of CHINA NATIONAL PETROLEUM CORPORATION (CNPC), a state authorized investment entity incorporated in China.  The State owned Assets Supervision and Administration Commission (SASAC) of the State Council executes the shareholders supervision rights over CNPC on behalf of the central government of the People's Republic of China.

15.     None of the BGP corporate Defendants above are directly owned by the People's Republic of China and therefore they are not entitled to the protections of the Foreign Sovereign Immunities Act.

16.     Defendant ZHIMIN ZHANG, is a resident of Harris County, Texas and is subject to the jurisdiction of this Court.  Zhimin Zang is an officer and director and the General Manger for one or more of the BGP Defendants.

17. Defendant TING SONG, is a resident of Harris County, Texas and is subject to the jurisdiction of this Court. Ting Song is an officer and director and the Regional Manger for America for one or more of the BGP Defendants.

18. Defendant JOHN DOE #1 a/k/a "Hector" is believed to be a foreign national who was working as a contract worker employed by one or more of the BGP Defendants in Colombia and who is subject to the extraterritorial jurisdiction of this Court.

19. BGP is one of the world's leading oil exploration and geophysical service companies. BGP's business activities include seismic data acquisition, processing, interpretation, GME and multi-client surveys, equipment manufacturing and software R & D.

20. BGP is headquartered in Zhuozhou city, Hebei province, sixty kilometers south of Beijing, China.

21. BGP currently has 101 land seismic crews, 8 shallow water and transition zone crews, 7 VSP crews and 20 non-seismic crews operating in 29 countries on 4 continents.

22. BGP's operations are conducted in a wide variety of terrain conditions, such as gravel plains, mountains, deserts, jungles, swamps, marshes, shallow water and transition zones. BGP has 40 overseas branches and offices in Asia, America, Africa and the Middle East.

23. The BGP Defendants own and operate the BGP Houston Training Center in Houston, TX which also has a seismic data processing plant.

## DEFENDANTS' PURPOSEFUL DIRECTION OF ACTIVITIES AT CITIZENS OF THE UNITED STATES

24. Prior to 2006, the FARC were known terrorists operating in Colombia who engaged in international terrorism, including premeditated, politically motivated violence, threats of

4

violence, hostage takings, murders and other terrorist related activities perpetrated against noncombatant targets including U.S. nationals including directing terrorist activities across national and international borders in order to influence U.S. and Colombian policy.

25.     On October 8, 1997 the Secretary of State of the United States, designated the FARC designated foreign terrorist organization (FTO), pursuant to Title 8, United States Code, Section 1189.  The FARC was re-designated on September 5, 2001.  At all times material to this action, the FARC is a designated foreign terrorist organization.  As a result of this designation, it is unlawful for persons subject to the jurisdiction of the United States to provide material support and resources to the FARC.  Specifically, 8 U.S.C. § 1189(a)(1) authorizes the Secretary of State to designate an organization as a foreign terrorist organization . . . if the Secretary finds that (A) the organization is a foreign organization; (B) the organization engages in terrorist activity . . . ; and (C) the terrorist activity or terrorism of the organization threatens the security of United States nationals or the national security of the United States. 8 U.S.C. § 1189(a)(1).  The FARC was also identified by the President of the United States as a significant foreign narcotics trafficker, or drug kingpin, pursuant to the Kingpin Act on May 29, 2003.

26.     Prior to February 13, 2003, the FARC had kidnapped or murdered many U.S. and Colombian nationals.  These terrorist acts were well publicized in media outlets worldwide.

27.     On February 13, 2003 Plaintiffs were conducting a counter narcotics surveillance mission in a U.S registered aircraft when the FARC opened fire on the aircraft.  Post-crash investigation revealed the FARC had hit the aircraft with heavy machine gun fire before it had crash landed.

28. FARC members have publicly admitted that the FARC had intentionally fired at the aircraft to shoot it down, and capture its crew, knowing that it was a U.S. aircraft and U.S. national crew on-board.

29. All five occupants of the plane survived a crash-landing, but were immediately taken captive by FARC terrorists who quickly located the downed plane. The American pilot, Thomas Janis, and the Colombian soldier, Luis Alcides Cruz, were shot and killed by FARC members within minutes of the landing, and their bodies were left a short distance from the damaged plane. The other three American hostages, Keith Stansell, Marc Gonsalves, and Thomas Howes were seized by force, taken hostage, and marched into the jungle by FARC members, where they were held captive for 1,967 days until their rescue July 2, 2008.

30. About two months after the plane crash, on April 27, 2003, the FARC issued a public communique taking credit for seizing and holding the three Americans hostage. In that public letter, published to the United States, the FARC offered to release approximately 250 high level Colombian citizens that it was then holding hostage, together with the three Americans captured on February 13, 2003, in exchange for certain political concessions from the Colombian government and to illegally influence the policy of the U.S. The FARC demanded that the Colombian government carve out of its sovereign territory a demilitarized zone (DMZ), which would be used as a new base of operations for the FARC, and release hundreds of FARC terrorists currently held by the Colombian authorities, as a condition for the release of the three American hostages.

31. In July 2003, the FARC forced the Plaintiffs, Keith Stansell, Marc Gonsalves, and Thomas Howes to participate in a videotaped interview to prove that they were alive and

being held by the defendants.  A FARC senior leader and defendant here, Mono Jojoy, told the plaintiffs, Keith Stansell, Marc Gonsalves, and Thomas Howes that the FARC Commander "has ordered us . . . to send a proof of life to your families."  The Plaintiffs' families lived inside the United States.  The "proof of life" was delivered to CBS News, an American media organization, in New York, New York and aired throughout the U.S.

32. The FARC publicly demanded, in a form of communication published in the U.S., the release of two convicted FARC terrorists in the U.S. or the defendants would kill, injure, and continue to forcible detain the plaintiffs.

33. The foregoing terrorist acts committed by the FARC were well publicized in media outlets worldwide.

34. Starting in 2006, Defendants purposefully and intentionally provided material support to the FARC when they knew, or consciously avoided knowing, of the FARC's designation as a Foreign Terrorist Organization (FTO) and its criminal and international terrorism activities, including the kidnapping, hostage taking, imprisonment, and murder of Plaintiffs.

35. Defendants individually and collectively had fair warning and knew or should have known that their activities would subject them to the extraterritorial jurisdiction of the U.S. for civil liability under the Anti-Terrorism Act.

36. The defendants' decision to purposefully direct their material support of a known terrorist organization, which was engaged in ongoing acts of international terrorism against U.S. nationals, should suffice to cause the defendants to have "reasonably anticipated being haled into" a U.S. court.

37. The Defendants have purposefully established minimum contacts with the U.S. as a whole.

38. Defendants have purposefully directed their activities at U.S. citizens residing in this District and are therefore subject to the personal jurisdiction of this Court compatible with fair play and substantial justice.

39. This Court may exercise personal jurisdiction over the defendants consistent with the Due Process Clause of the Fifth Amendment.

89. Defendants are also subject to the jurisdiction of this Court under Florida's long arm statute, Fla. Stat. §48.193 because defendants engaged in substantial and not isolated business activities in Florida.

40. Defendants intentionally and purposefully hid and concealed their true identities, physical whereabouts and their involvement in their provision of material support to the FARC.

## ALLEGATIONS APPLICABLE TO ALL COUNTS

41. In November 2005, the Colombian government's national hydrocarbons agency ANH (Agencia Nacional de Hidrocarburos) awarded a contract to the BGP Defendants to acquire, process and interpret 2D seismic data in the frontier area of the Atrato-San Juan river basins in the State of Choco on and near the Pacific coast and the Panamian border.  It is and was well known that the FARC was very active and controlled this region of Colombia.

42. In 2006, Defendants employees and contract workers were actively engaged in oil exploration and seismic data activities in this region of Colombia.

43. Sometime in 2006, employees and/or agents of Defendants communicated with, and

8

met personally with, Ivan Rios[2], a member of the FARC Secretariat, and agreed to and did in fact pay substantial moneys (at least one initial payment of 800 million Colombian pesos, the equivalent to several hundred thousand US dollars) to the FARC in exchange for the FARC's agreement to allow the BGP Defendants to conduct their oil exploration activities without fear of terrorist acts.

44.     BGP contracted with a Colombian helicopter company, Helicargo, S.A. for transport services throughout the remote jungle terrain where they would be operating.

45.     On June 9, 2006, 2 of BGP's local contract assistant topographers, Hanner Mosquera Mosquera and Ivan Mosquera Longo, were kidnapped by the FARC because the FARC had specified that the local workers had to come from the local area and the Mosqueras were Afro-Colombians from another part of Colombia. 20 other employees and contract workers present in the BGP camp on that date were not taken by the FARC.

46.     The BGP Defendants continued providing material support to the FARC after June 9, 2006, including, but not limited to, substantial monetary payments, a diesel generator, computer and printer, food, medicine, doctors and nurses, transportation of FARC terrorists via helicopter, and aerial surveillance to confirm that FARC camps were safely hidden from the Colombian Air Force or US counter-narcotics surveillance flights above.

## COUNT ONE
### (Keith Stansell against all defendants)
### 18 U.S.C. § 2333

47.     Plaintiff adopts and incorporates the allegations and facts contained in prior paragraphs and in allegations common to all counts.

---

[2] Ivan Rios is now dead. One of his bodyguards killed him, cut off his right hand and delivered it to the Colombian authorities with Ivan Rios' laptop and ID as proof in order to collect a reward for Ivan Rios.

48. Plaintiff Keith Stansell is a U.S. national injured by reason of an act of international terrorism and seeks damages under 18 U.S.C. § 2333.

49. Plaintiff was victimized by acts of "international terrorism" as defined by 18 U.S.C. § 2331(1) which states:

> **"(1)** the term "international terrorism" means activities that--
>
> **(A)** involve violent acts or **acts dangerous to human life that are a violation of the criminal laws of the United States** or of any State, or that would be a criminal violation if committed within the jurisdiction of the United States or of any State;
>
> **(B)** appear to be intended--
> **(i)** to intimidate or coerce a civilian population;
> **(ii)** to influence the policy of a government by intimidation or coercion; or
> **(iii)** to affect the conduct of a government by mass destruction, assassination, or kidnapping; and
>
> **(C)** occur primarily outside the territorial jurisdiction of the United States, or transcend national boundaries in terms of the means by which they are accomplished, the persons they appear intended to intimidate or coerce, or the locale in which their perpetrators operate or seek asylum."

50. Giving money and other material support to the FARC, like giving a loaded gun to a child, is "an act dangerous to human life" and it violates 18 USC 2339B(a)(1) which provides in relevant part:

> **§ 2339B. Providing material support or resources to designated foreign terrorist organizations**
>
> **(a) Prohibited activities.--**
> **(1) Unlawful conduct.**--Whoever knowingly provides material support or resources to a foreign terrorist organization, or attempts or conspires to do so, shall be fined under this title or imprisoned not more than 15 years, or both, and, if the death of any person results, shall be imprisoned for any term of years or for life. To violate this paragraph, a person must have knowledge that the organization is a designated terrorist organization (as defined in subsection

10

      (g)(6)), that the organization has engaged or engages in terrorist activity (as defined in section 212(a)(3)(B) of the Immigration and Nationality Act), or that the organization has engaged or engages in terrorism (as defined in section 140(d)(2) of the Foreign Relations Authorization Act, Fiscal Years 1988 and 1989).

51. Defendants are all "persons" as defined by 18 USC §2331(3) as "any individual or entity capable of holding a legal or beneficial interest in property".

52. Defendants knowingly aided and abetted, provided and/or conspired to provide material support to the FARC which Defendants knew, or consciously avoided knowing, was a designated Foreign Terrorist Organization..  This material support and/or aiding and abetting of acts of international terrorism assisted the FARC with its ongoing terrorist activities, including the continuing captivity and torture of hostages, including Plaintiffffs.

53. Defendants' activities of providing material support to the FARC were themselves violent and dangerous acts to human life that were, and are, a violation of the criminal laws of the United States.

54. The FARC's terrorist acts against Plaintiffs were intended to intimidate or coerce the Colombian and United States civilian population, to influence policy of the U.S. Government by intimidation or coercion, and to affect the conduct of a government by kidnapping, hostage taking and assassination.

55. Defendants' activities occurred outside the territorial jurisdiction of the United States and transcend international boundaries.

56. Defendants' provision of material support to the FARC aided and abetted the FARC in continued acts of international terrorism that have injured Plaintiffs.

Case 8:09-cv-02501-JSM-AEP   Document 1   Filed 12/11/09   Page 12 of 19 PageID 12

money is fungible; giving support intended to aid an organization's peaceful activities frees up resources that can be used for terrorist acts

57. Defendants intentionally and purposefully hid and concealed their true identities, physical whereabouts and their involvement in providing material support to the FARC terrorist activities, thereby tolling any applicable statute of limitations. Furthermore, Plaintiffs are entitled to equitable tolling of any statute of limitations for the time period they were held captive in the jungles of Colombia.

58. The legislative history of 18 USC §2333 indicates that Congress intended to allow a plaintiff to recover from anyone at any point along the full length of the causal chain of terrorism.

59. By aiding and abetting the FARC and providing material support to the FARC, or conspiring to do so, Defendants are all jointly and severally liable for the injuries and damages suffered by Plaintiffs as a result of the FARC's terrorist acts against them.

**WHEREFORE**, Plaintiff, Keith Stansell, demands judgment in his favor against all defendants, jointly and severally, for his past and future physical and mental pain and suffering, disability, disfigurement, mental anguish, loss of capacity for the enjoyment of life, emotional distress, loss of years of his life, including treble damages under 18 U.S.C. 2333, plus interest, costs, attorneys fees, and such other monetary and equitable relief as this Honorable Court deems appropriate to compensate plaintiff.

### COUNT TWO
**(Marc Gonsalves against all defendants)**
**18 U.S.C. § 2333**

60.     Plaintiff adopts and incorporates the allegations and facts contained in prior paragraphs and in allegations common to all counts.

61.     Plaintiff Marc Gonsalves is a U.S. national injured by reason of an act of international terrorism and seeks damages under 18 U.S.C. § 2333.

62.     Plaintiff was victimized by acts of "international terrorism" as defined by 18 U.S.C. § 2331(1) which states:

> **"(1)** the term "international terrorism" means activities that--
>
> **(A)** involve violent acts or **acts dangerous to human life that are a violation of the criminal laws of the United States** or of any State, or that would be a criminal violation if committed within the jurisdiction of the United States or of any State;
>
> **(B)** appear to be intended--
> **(i)** to intimidate or coerce a civilian population;
> **(ii)** to influence the policy of a government by intimidation or coercion; or
> **(iii)** to affect the conduct of a government by mass destruction, assassination, or kidnapping; and
>
> **(C)** occur primarily outside the territorial jurisdiction of the United States, or transcend national boundaries in terms of the means by which they are accomplished, the persons they appear intended to intimidate or coerce, or the locale in which their perpetrators operate or seek asylum."

63.     Giving money and other material support to the FARC, like giving a loaded gun to a child, is "an act dangerous to human life" and it violates 18 USC 2339B(a)(1) which provides in relevant part:

> **§ 2339B. Providing material support or resources to designated foreign terrorist organizations**
>
> **(a) Prohibited activities.--**
> **(1) Unlawful conduct.**--Whoever knowingly provides material support or resources to a foreign terrorist organization, or attempts or conspires to do so,

13

        shall be fined under this title or imprisoned not more than 15 years, or both, and, if the death of any person results, shall be imprisoned for any term of years or for life. To violate this paragraph, a person must have knowledge that the organization is a designated terrorist organization (as defined in subsection (g)(6)), that the organization has engaged or engages in terrorist activity (as defined in section 212(a)(3)(B) of the Immigration and Nationality Act), or that the organization has engaged or engages in terrorism (as defined in section 140(d)(2) of the Foreign Relations Authorization Act, Fiscal Years 1988 and 1989).

64. Defendants are all "persons" as defined by 18 USC §2331(3) as "any individual or entity capable of holding a legal or beneficial interest in property".

65. Defendants knowingly aided and abetted, provided and/or conspired to provide material support to the FARC which Defendants knew, or consciously avoided knowing, was a designated Foreign Terrorist Organization.. This material support and/or aiding and abetting of acts of international terrorism assisted the FARC with its ongoing terrorist activities, including the continuing captivity and torture of hostages, including Plaintifffs.

66. Defendants' activities of providing material support to the FARC were themselves violent and dangerous acts to human life that were, and are, a violation of the criminal laws of the United States.

67. The FARC's terrorist acts against Plaintiffs were intended to intimidate or coerce the Colombian and United States civilian population, to influence policy of the U.S. Government by intimidation or coercion, and to affect the conduct of a government by kidnapping, hostage taking and assassination.

68. Defendants' activities occurred outside the territorial jurisdiction of the United States and transcend international boundaries.

14

69.     Defendants' provision of material support to the FARC aided and abetted the FARC in continued acts of international terrorism that have injured Plaintiffs.

money is fungible; giving support intended to aid an organization's peaceful activities frees up resources that can be used for terrorist acts

70.     Defendants intentionally and purposefully hid and concealed their true identities, physical whereabouts and their involvement in providing material support to the FARC terrorist activities, thereby tolling any applicable statute of limitations.  Furthermore, Plaintiffs are entitled to equitable tolling of any statute of limitations for the time period they were held captive in the jungles of Colombia.

71.     The legislative history of 18 USC §2333 indicates that Congress intended to allow a plaintiff to recover from anyone at any point along the full length of the causal chain of terrorism.

72.     By aiding and abetting the FARC and providing material support to the FARC, or conspiring to do so, Defendants are all jointly and severally liable for the injuries and damages suffered by Plaintiffs as a result of the FARC's terrorist acts against them.

       **WHEREFORE**, Plaintiff, Marc Gonsalves, demands judgment in his favor against all defendants, jointly and severally, for his past and future physical and mental pain and suffering, disability, disfigurement, mental anguish, loss of capacity for the enjoyment of life, emotional distress, loss of years of his life, including treble damages under 18 U.S.C. 2333, plus interest, costs, attorneys fees, and such other monetary and equitable relief as this Honorable Court deems appropriate to compensate plaintiff.

## **COUNT THREE**

**(Thomas Howes against all defendants)**
**18 U.S.C. § 2333**

73.     Plaintiff adopts and incorporates the allegations and facts contained in prior paragraphs and in allegations common to all counts.

74.     Plaintiff Thomas Howes is a U.S. national injured by reason of an act of international terrorism and seeks damages under 18 U.S.C. § 2333.

75.     Plaintiff was victimized by acts of "international terrorism" as defined by 18 U.S.C. § 2331(1) which states:

> **"(1)** the term "international terrorism" means activities that--
>
> **(A)** involve violent acts or <u>**acts dangerous to human life that are a violation of the criminal laws of the United States**</u> or of any State, or that would be a criminal violation if committed within the jurisdiction of the United States or of any State;
>
> **(B)** appear to be intended--
> **(i)** to intimidate or coerce a civilian population;
> **(ii)** to influence the policy of a government by intimidation or coercion; or
> **(iii)** to affect the conduct of a government by mass destruction, assassination, or kidnapping; and
>
> **(C)** occur primarily outside the territorial jurisdiction of the United States, or transcend national boundaries in terms of the means by which they are accomplished, the persons they appear intended to intimidate or coerce, or the locale in which their perpetrators operate or seek asylum."

76.     Giving money and other material support to the FARC, like giving a loaded gun to a child, is "an act dangerous to human life" and it violates 18 USC 2339B(a)(1) which provides in relevant part:

> **§ 2339B. Providing material support or resources to designated foreign terrorist organizations**

16

> **(a) Prohibited activities.--**
> **(1) Unlawful conduct.**--Whoever knowingly provides material support or resources to a foreign terrorist organization, or attempts or conspires to do so, shall be fined under this title or imprisoned not more than 15 years, or both, and, if the death of any person results, shall be imprisoned for any term of years or for life. To violate this paragraph, a person must have knowledge that the organization is a designated terrorist organization (as defined in subsection (g)(6)), that the organization has engaged or engages in terrorist activity (as defined in section 212(a)(3)(B) of the Immigration and Nationality Act), or that the organization has engaged or engages in terrorism (as defined in section 140(d)(2) of the Foreign Relations Authorization Act, Fiscal Years 1988 and 1989).

77. Defendants are all "persons" as defined by 18 USC §2331(3) as "any individual or entity capable of holding a legal or beneficial interest in property".

78. Defendants knowingly aided and abetted, provided and/or conspired to provide material support to the FARC which Defendants knew, or consciously avoided knowing, was a designated Foreign Terrorist Organization..  This material support and/or aiding and abetting of acts of international terrorism assisted the FARC with its ongoing terrorist activities, including the continuing captivity and torture of hostages, including Plaintifffs.

79. Defendants' activities of providing material support to the FARC were themselves violent and dangerous acts to human life that were, and are, a violation of the criminal laws of the United States.

80. The FARC's terrorist acts against Plaintiffs were intended to intimidate or coerce the Colombian and United States civilian population, to influence policy of the U.S. Government by intimidation or coercion, and to affect the conduct of a government by kidnapping, hostage taking and assassination.

81. Defendants' activities occurred outside the territorial jurisdiction of the United States and transcend international boundaries.

82.     Defendants' provision of material support to the FARC aided and abetted the FARC in continued acts of international terrorism that have injured Plaintiffs.

money is fungible; giving support intended to aid an organization's peaceful activities frees up resources that can be used for terrorist acts

83.     Defendants intentionally and purposefully hid and concealed their true identities, physical whereabouts and their involvement in providing material support to the FARC terrorist activities, thereby tolling any applicable statute of limitations.  Furthermore, Plaintiffs are entitled to equitable tolling of any statute of limitations for the time period they were held captive in the jungles of Colombia.

84.     The legislative history of 18 USC §2333 indicates that Congress intended to allow a plaintiff to recover from anyone at any point along the full length of the causal chain of terrorism.

85.     By aiding and abetting the FARC and providing material support to the FARC, or conspiring to do so, Defendants are all jointly and severally liable for the injuries and damages suffered by Plaintiffs as a result of the FARC's terrorist acts against them.

**WHEREFORE**, Plaintiff, Thomas Howes, demands judgment in his favor against all defendants, jointly and severally, for his past and future physical and mental pain and suffering, disability, disfigurement, mental anguish, loss of capacity for the enjoyment of life, emotional distress, loss of years of his life, including treble damages under 18 U.S.C. 2333, plus interest, costs, attorneys fees, and such other monetary and equitable relief as this Honorable Court deems appropriate to compensate plaintiff.

DATED: December 10, 2009

_____  
NEWTON P. PORTER  
Trial Counsel  
(Florida Bar No. 833738)  
nporter@porterandkorvick.com  
PORTER & KORVICK, P.A.  
Pinecrest Professional Building  
9655 South Dixie Highway Suite 208  
Miami, Florida 33156  
Telephone:   (305) 373-5040  
Facsimile:   (305) 668-9154  
Attorneys for Plaintiffs

_____  
TONY KORVICK  
Trial Counsel  
(Florida Bar No. 768405)  
tkorvick@porterandkorvick.com  
PORTER & KORVICK, P.A.  
Pinecrest Professional Building  
9655 South Dixie Highway Suite 208  
Miami, Florida 33156  
Telephone:   (305) 373-5040  
Facsimile:   (305) 668-9154  
Attorneys for Plaintiffs