UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

KEITH STANSELL,                          CASE NO.: 8:09-cv-2501-JSM-AEP
MARC GONSALVES, and
THOMAS HOWES,

     Plaintiffs,

vs.

BGP, INC., CNPC, CHINA NATIONAL PETROLEUM CORPORATION,
BGP INTERNATIONAL, INC.,
BGP AMERICAS, INC.,

     Defendants.

_____/

## FOURTH AMENDED COMPLAINT

     Plaintiffs sue Defendants and allege:

## THE ACTION,  EXCLUSIVE JURISDICTION & VENUE

1.     This is a civil action for damages arising from acts of international terrorism committed

by Defendants by knowingly providing material support to the REVOLUTIONARY ARMED

FORCES OF COLOMBIA ("FARC").

2.     This action is brought pursuant to the civil remedies provisions of the Anti-Terrorism

Act, 18 U.S.C. § 2333 which provides:

> "(a) Action and jurisdiction.--Any national of the United States injured in his or
> her person, property, or business by reason of an act of international terrorism, or
> his or her estate, survivors, or heirs, may sue therefor in any appropriate district
> court of the United States and shall recover threefold the damages he or she
> sustains and the cost of the suit, including attorney's fees."

3.     Plaintiffs seek damages against Defendants for knowingly providing material support to

a terrorist organization in violation of 18 U.S.C. § 2339B(a)(1).

4.      Pursuant to 18 U.S.C. § 2338, the district courts of the United States have exclusive jurisdiction over this action and extraterritorial jurisdiction pursuant to 18 U.S.C. § 2333B(d).  This Court has subject matter jurisdiction over these claims and this action.  No exclusions or limitations under the Anti-Terrorism Act apply here.  No immunity exists under the Foreign Sovereign Immunities Act 28 U.S.C.A § 1603.

5.      This Court also has diversity jurisdiction under 28 U.S.C. § 1332 because the state of incorporation and principal places of business and residence for Defendants are in a state other than Florida or Connecticut.

6.      Venue is proper where any Plaintiff resides pursuant to 18 U.S.C. § 2334(a), therefore venue is proper in this district because Plaintiffs KEITH STANSELL and THOMAS HOWES reside in the Middle District of Florida.

## THE PLAINTIFFS

7.      Plaintiff KEITH STANSELL is a U.S. citizen residing in Manatee County, Florida who was injured by repeated acts of international terrorism occurring daily from February 13, 2003 and continuing through the date of his rescue on July 2, 2008.

8.      Plaintiff MARC GONSALVES is a U.S. citizen residing in Connecticut who was injured by repeated acts of international terrorism occurring daily from February 13, 2003 and continuing through the date of his rescue on July 2, 2008.

9.      Plaintiff THOMAS HOWES is a U.S. citizen residing in Brevard County, Florida who was injured by repeated acts of international terrorism occurring daily from February 13, 2003 and continuing through the date of his rescue on July 2, 2008.

2

## THE DEFENDANTS

10.     Defendant BGP, INC., CNPC, CHINA NATIONAL PETROLEUM

CORPORATION, ("BGP, INC. CNPC") is a foreign corporation organized in the People's

Republic of China which is a separate corporate entity and wholly owned subsidiary of China

National Petroleum Corporation ("CNPC"), a state authorized investment entity incorporated

in China.  The State Owned Assets Supervision and Administration Commission ("SASAC")

of the State Council executes the shareholders supervision rights over CNPC on behalf of the

central government of the People's Republic of China.

11.     CNPC is an integrated international energy company with businesses and operations

covering: (i) oil and gas exploration and production; (ii) oilfield services in geophysical

prospecting and well drilling; (iii) oil and gas pipeline construction; (iv) manufacturing of

prospecting facilities; (v) insurance services; and (vi) unconventional oil and gas resources.

CNPC is ranked 5th among the world's top 50 oil companies.

12.     Defendant BGP INTERNATIONAL, INC., is a Texas corporation with its principal

place of business at 10630 Haddington Drive, Houston, TX.

13.     Defendant BGP AMERICAS, INC. is a Delaware corporation with its principal place

of business at 10630 Haddington Drive, Houston, TX.

14.     None of the Defendants is a foreign state, an agency of a foreign state, or an officer or

employee of a foreign state or an agency of a foreign state thereof acting within his or her

official capacity or under legal authority limiting this action under the Anti-Terrorism Act

("ATA") 18 U.S.C.A. §2337(2).   None of the Defendants is a foreign state or a political

3

subdivision of a foreign state and therefore are not entitled to immunity under the Foreign

Sovereign Immunities Act ("FSIA") 28 U.S.C.A § 1603(a).

15.     Defendants are all engaged in traditional commercial activities related to seismic oil

exploration.  The nature of the commercial activity is that type of commercial activity by

which a private party may engage.  While not a foreign state or agency thereof, the BGP

Defendants' activities alleged herein were also acts outside the territory of the United States

in connection with a commercial activity that caused a direct effect in the United States and

on U.S. nationals.  As such, the BGP Defendants are not immune under the FSIA.

16.     Defendants are not an agency or instrumentality of a foreign state entitled to

immunity under the FSIA.  None of the BGP corporate Defendants above are directly owned

by the People's Republic of China ("PRC").  The PRC does not own a majority of the shares

of any of the BGP Defendants.  No political subdivision or agency directly owns any of the

BGP Defendants.  Any ownership interest of the PRC or the State-Owned Assets Supervision

Administration Commission ("SASAC") of the BGP Defendant corporate entities is an

indirect ownership through two or more tiers of corporate entities.  As such, the BGP

Defendants are not entitled to immunity under the FSIA.

17.     The BGP Defendants are not organs of a foreign state or political subdivision thereof.

No upstream organ or agency or instrumentality can confer agency or instrumentality status

on the BGP Defendants.

18.     The BGP defendants: (i) were created by their respective parent corporation as

corporate subsidiaries and not state-owned entities and are legally distinct from any national,

state or local government; (ii) perform a commercial nature and non-public, non-national,

4

and not strictly-governmental activity; (iii) are not state supervised or controlled; (iv) are not state owned or subsidized and are for profit corporations; (v) do not employ and pay public employees; (vi) do not have exclusive rights or privileges under Chinese law, but pay corporate taxes to the government like other corporations; (vii) are simply corporate subsidiaries performing a non-public nature commercial activity.

19.     The BGP Defendants are merely corporate subsidiaries, not directly owned by a foreign state, and therefore they are not entitled to the protections of the FSIA.

20.     BGP, INC., CNPC is one of the world's largest oil exploration and geophysical service companies.  BGP's business activities include seismic data acquisition, processing, interpretation, GME and multi-client surveys, equipment manufacturing and software R & D.

21.     BGP, INC., CNPC currently has 101 land seismic crews, 8 shallow water and transition zone crews, 7 VSP crews and 20 non-seismic crews operating in 29 countries on 4 continents. BGP's operations are conducted in a wide variety of terrain conditions, such as gravel plains, mountains, deserts, jungles, swamps, marshes, shallow water and transition zones.

22.     BGP, INC., CNPC has 40 overseas branches and offices in Asia, North and South America, Africa and the Middle East.

23.     The BGP Defendants own, operate and share offices at the BGP Houston Training Center in Houston, TX which is also a worldwide seismic data processing plant.

<div align="center">

**DEFENDANTS' PURPOSEFUL DIRECTION OF ACTIVITIES
AT CITIZENS OF THE UNITED STATES APPLICABLE TO ALL COUNTS**

</div>

24.     Prior to 2006, the FARC were known terrorists operating in Colombia who engaged in international terrorism, including premeditated, politically motivated violence, threats of

violence, hostage takings, murders and other terrorist related activities perpetrated against noncombatant targets including U.S. nationals and directing terrorist activities across national and international borders in order to influence U.S. and Colombian policy.

25.     On October 8, 1997 the Secretary of State of the United States, designated the FARC designated foreign terrorist organization (FTO), pursuant to Title 8, United States Code, Section 1189.  The FARC was re-designated on September 5, 2001.  At all times material to this action, the FARC was and is a designated foreign terrorist organization.  As a result of this designation, it is unlawful for persons subject to the jurisdiction of the United States to provide material support and resources to the FARC.  Specifically, 8 U.S.C. § 1189(a)(1) authorizes the Secretary of State to designate an organization as a foreign terrorist organization . . . if the Secretary finds that (A) the organization is a foreign organization; (B) the organization engages in terrorist activity . . . ; and (C) the terrorist activity or terrorism of the organization threatens the security of United States nationals or the national security of the United States. 8 U.S.C. § 1189(a)(1).  The FARC was also identified by the President of the United States as a significant foreign narcotics trafficker, or drug kingpin, pursuant to the Kingpin Act on May 29, 2003.

26.     Prior to February 13, 2003, the FARC had kidnapped or murdered many U.S. and Colombian nationals.  These terrorist acts were well publicized in media outlets worldwide.

27.     On February 13, 2003 Plaintiffs were conducting a counter narcotics surveillance mission in a U.S registered civilian aircraft (Cessna 208 tail number N1116G) when the FARC opened fire on the aircraft.  Post-crash investigation revealed the FARC had hit the aircraft with heavy machine gun fire before it had crash landed.  Plaintiffs' aircraft was not a

military aircraft, the aircraft was not equipped with weapons systems and bore no markings of any U.S. or Colombian military force or organization.  Plaintiffs were civilians, non-military personnel, not part of any armed forces, employed by a U.S. corporation, and were not a military force of any origin.

28.    FARC members have publicly admitted that the FARC had intentionally fired at the aircraft to shoot it down, and capture its crew, knowing that it was a U.S. registered aircraft and U.S. national crew on-board.

29.    All five occupants of the plane survived a crash-landing, but were immediately taken captive by FARC terrorists who quickly located the downed plane.   The American pilot, Thomas Janis was shot and killed by FARC members within minutes of the landing, and his body was left a short distance from the damaged plane.  The Colombian host nation rider, Sgt. Luis Alcides Cruz, was also shot and killed by FARC members at the same time and place as Tom Janis.  The other three Americans, Keith Stansell, Marc Gonsalves, and Thomas Howes were seized by force, taken hostage, and marched into the jungle by FARC members, where they were held captive for 1,967 days until their rescue July 2, 2008.

30.    About two months after the plane crash, on April 27, 2003, the FARC issued a public communique taking credit for seizing and holding the three Americans hostage.   In that public letter, published to the United States, the FARC offered to release approximately 250 high level Colombian citizens that it was then holding hostage, together with the three Americans captured on February 13, 2003, in exchange for certain political concessions from the Colombian government and to illegally influence the policy of the U.S.  The FARC demanded that the Colombian government carve out of its sovereign territory a demilitarized

zone (DMZ), which would be used as a new base of operations for the FARC, and release hundreds of FARC terrorists currently held by the Colombian authorities, as a condition for the release of the three American hostages.  These terrorist acts were well publicized in media outlets worldwide.

31.     In July 2003, the FARC forced the Plaintiffs, Keith Stansell, Marc Gonsalves, and Thomas Howes to participate in a videotaped interview to prove that they were alive and being held by the defendants.  A FARC commander told the Plaintiffs that the FARC's Supreme Commander and Secretariat Member, Mono Jojoy, "has ordered us . . . to send a proof of life to your families."  The Plaintiffs' families lived inside the United States.  The "proof of life" was delivered to CBS News, an American media organization, in New York, New York and aired throughout the U.S.

32.     The FARC publicly demanded, in a form of communication published in the U.S., the release of two convicted FARC terrorists in the U.S. or the defendants would kill, injure, and continue to forcible detain the plaintiffs.

33.     The foregoing terrorist acts were committed by the terrorist group or organization the FARC.  The FARC is not a foreign state or agency of a foreign state.  The FARC is not a nation.  The FARC is not an armed force of a nation.  The FARC is not an "armed forces."  The FARC is not a military force of any origin.  The FARC is a terrorist organization or group.  The events giving rise to these acts of terrorism and plaintiffs' claims were not part of a declared war, not part of an armed conflict between two nations, and not part of armed conflict between military forces of any origin.  There is no "act of war" exclusion applicable

to this action and these claims and therefore this Court has subject matter over this action and these claims.

34.     Starting in 2006, Defendants purposefully and intentionally provided material support to the FARC when they knew, or consciously avoided knowing, of the FARC's designation as a Foreign Terrorist Organization (FTO) and knowing that the FARC was engaged or had engaged in terrorism, including kidnapping, hostage taking, imprisonment, and murder.

35.     Defendants individually and collectively had fair warning and knew or should have known that their activities would subject them to the extraterritorial jurisdiction of the U.S. for civil liability under the Anti-Terrorism Act.

36.     The Defendants' decision to purposefully direct their material support of a known terrorist organization, which was engaged in ongoing acts of international terrorism against U.S. nationals, should suffice to cause the defendants to have "reasonably anticipated being haled into" a U.S. court.

37.     The Defendants have purposefully established minimum contacts with the U.S. as a whole.  BGP INTERNATIONAL, INC. and BGP AMERICAS, INC. are both incorporated in the U.S. with their principal place of business in Houston, TX.  In 2009, Defendant BGP, INC., CNPC commenced negotiations in the U.S to acquire a controlling interest in a joint venture with ION Geophysical Corp., a leading U.S. manufacturer of land based seismic oil exploration equipment and software (Delaware corporation with its principal place of business in Houston, TX).  A binding term sheet was executed by the 2 companies on October 23, 2009 and the transaction closed in March 2010.  The total estimated equity value of the joint venture is $275 million.  The scope of the joint venture includes designing,

development, engineering, manufacturing, research and development, distribution, sales and marketing and field support of land based equipment used in seismic data acquisition for the energy and petroleum industry.  Defendant BGP, INC., CNPC has continuous and systematic contacts with the United States including, but not limited to:

(a)      BGP, INC., CNPC's website includes a global map search engine for Region and Country that reflects a pull down menu choice for America and then USA which identify a Houston, TX office address with no reference to any corporate subsidiary.

(b)      BGP, INC., CNPC's website includes a global map with legends identifying both "branches and offices" and "processing center" located in Houston, TX.

(c)      BGP, INC., CNPC has established "an R&D institute and a processing center in the USA."

(d)      BGP, INC., CNPC's website identifies its corporate name as BGP, Inc. at the top header, then as BGP, Inc., CNPC, and then includes a Houston USA office in its listing of "BGP Office Worldwide."  No mention is made of any separate subsidiary corporation(s) at the BGP Houston USA office location.

(e)      BGP, INC., CNPC hired 3 lobbyists with a Washington, DC lobbying firm on or about October 23, 2009 for general government lobbying issues.  These lobbyists included "covered executive branch officials" and "covered legislative branch official."

(f)      A Registration Rights Agreement executed October 23, 2009 with ION Geophysical Corporation also provided BGP, INC., CNPC a number of demand registration, shelf registration, and piggyback registration rights under the U.S. Securities Act, therefore BGP, INC., CNPC has purposefully availed itself of the protections of U.S. securities laws.

10

(g)      BGP, INC., CNPC has held a patent since 2006 registered with and protected by the U.S. Patent & Trademark Office, therefore BGP, Inc. has purposefully availed itself of the protection afforded by U.S. patent laws.

(h)      BGP, INC., CNPC and BGP International, Inc., a U.S. corporation, have overlapping executives.

(i)      BGP, INC., CNPC was a Titanium Level corporate sponsor that paid $20,000 or more to sponsor the 2009 Society of Exploration Geophysicists (SEG) International Exposition and Annual Meeting October 25–29, 2009 in Houston, TX.  This is the world's largest oil, energy and mineral exposition showcasing cutting-edge geophysical technology. BGP, Inc.'s corporate logo was prominently displayed on SEG Annual Meeting brochures and display board next to multinational oil conglomerates BP, Exxon Mobil, Chevron, Shell and others.  The Titanium Level sponsorship included company logo on signage, on screen at the beginning of each technical program session, complimentary booth in the Career Placement Area and complimentary table at the Student Networking Event.

(j)      The SEG 2009 Exhibitor List identifies BGP, Inc., not BGP International, Inc. and not BGP Americas, Inc.

(k)      "BGP, Inc., China National Petroleum Corporation" was an Exhibitor and Titanium Level Sponsor at the 2006 SEG International Exposition and Annual Meeting October 1–6, 2006 in New Orleans, LA.

(l)      As of 2007, "BGP, Inc., CNPC" had accumulated 111.5 SEG Priority Points based on years of membership, attendance, sponsorship and advertising with SEG.  This

11

ranked "BGP, Inc., CNPC" 18th in total points accumulated out of 798 SEG corporate members.

(m)    "BGP, Inc., CNPC" sponsored multiple Global Affairs Committee Meetings on November 7, 2005 during the SEG 2005 International Exposition and Annual Meeting in Houston, TX at $1,000 each.

(n)    In 2009, BGP/CNPC awarded a $185,000 grant to Professor Hua-wei Zhou at Texas Tech University for research on seismic imaging, including 2 research associates and 3 Ph.D. students.

38.    Defendants have purposefully directed their activities at U.S. citizens residing in this District and are therefore subject to the personal jurisdiction of this Court compatible with fair play and substantial justice.

39.    This Court may exercise personal jurisdiction over the defendants consistent with the Due Process Clause of the Fifth and Fourteenth Amendments.

40.    Defendant BGP, INC., CNPC is subject to the jurisdiction of this Court under Federal Rule of Civil Procedure 4(k)(2) because (1) Plaintiffs' claims arise under federal law, (2) a summons, or waiver of service, has been served, (3) defendant is not subject to the jurisdiction of any single state court, (4) the exercise of federal jurisdiction is consistent with the Constitution (and laws) of the United States.

41.    Whether the exercise of jurisdiction is "consistent with the Constitution" for purposes of Rule 4(k)(2) depends on whether a defendant has sufficient contacts with the United States as a whole to justify the exercise of personal jurisdiction under the Due Process Clause of the Fifth Amendment.

42.     In 2006, Defendants knew or should have known that the FARC was a U.S. designated foreign terrorist organization, had engaged in many prior terrorist acts against U.S. nationals and others, and was engaged in ongoing terrorist acts against Plaintiffs who were U.S. nationals and Florida permanent residents at the time.

43.     In 2006, Defendants knew or should have known that the FARC supplied more than 60% of the cocaine being imported to the United States and has a designated narcotics Kingpin in the United States.

44.     By knowingly providing material support to the FARC, Defendants purposefully directed activities at Florida residents and the United States as a whole and therefore had "fair warning" that their activities would subject them to the jurisdiction of the United States.

45.     Because it was foreseeable that Defendants' conduct in Colombia would cause injury to Florida residents, the "foreseeability" of causing injury in the forum establishes minimum contacts where Defendants' conduct and connection with the forum are such that it should have reasonably anticipated being haled into court here.

46.     Because Defendants' activities were purposefully directed toward Florida residents,  an absence of physical contacts in Florida cannot defeat personal jurisdiction under the ATA.  In the alternative, BGP International, Inc. and BGP Americas, Inc. are mere agents or alter egos of their corporate parent, BGP INC., CNPC, such that the activities of the subsidiaries can be imputed to the parent for purposes of establishing personal jurisdiction in the U.S.

## COUNT ONE
### (BGP, INC., CNPC - 18 U.S.C. § 2333)

47.     Plaintiffs adopt and incorporate the allegations and facts contained in prior

paragraphs and in allegations common to all counts.

48.     In November 2005, the Colombian government's national hydrocarbons agency,

Agencia Nacional de Hidrocarburos (ANH), an agency within the Colombian Ministry of

Mining, awarded a contract to BGP, INC., CNPC and/or its subsidiaries to acquire, process

and interpret 2D seismic data in the frontier area of the Atrato-San Juan river basins in the

State of Choco on and near the Pacific coast and the Panamanian border.  It is and was well

known that the FARC was very active and controlled this region of Colombia.  Many other

commercial entities bid on other ANH oil exploration contract areas but BGP, INC., CNPC

was the sole bidder for the contract in the FARC controlled Choco region.

49.     In 2006, Defendant BGP, INC., CNPC's employees, agents  and contract workers

were actively engaged in oil exploration and seismic data activities in this region of Colombia.

50.     Sometime in 2006, employees and/or agents of Defendant BGP, INC., CNPC

communicated with, and met personally with, Ivan Rios, a member of the FARC Secretariat,

and agreed to and did in fact pay substantial moneys (at least one initial payment of 800

million Colombian pesos, the equivalent to several hundred thousand U.S. dollars) to the

FARC in exchange for the FARC's agreement to allow Defendant BGP, INC., CNPC to

conduct its oil exploration activities without fear of terrorist acts.

51.     BGP, INC., CNPC contracted with a Colombian helicopter company, Helicargo, S.A.

for transport services throughout the remote jungle terrain where they would be operating.

14

52.     On June 9, 2006, 2 of BGP, INC., CNPC's local contract assistant topographers, Hanner Mosquera Mosquera and Ivan Mosquera Longo, were kidnapped by the FARC because the FARC had specified that the local workers had to come from the local area and the Mosqueras were Afro-Colombians from another part of Colombia.  Twenty other employees and contract workers present in the BGP camp on that date were not taken by the FARC.

53.     BGP, INC., CNPC continued providing additional material support to the FARC after June 9, 2006, including, but not limited to, substantial monetary payments, a diesel generator, computer and printer, food, medical, nursing and dental services, radios, weapons and ammunition, transportation services for FARC terrorists via helicopter, and aerial surveillance flights to confirm that FARC camps were safely hidden from the Colombian Air Force or US counter-narcotics surveillance flights above.

54.     Defendant BGP, INC., CNPC provided material support, in the form of money, equipment, radios, power systems, weapons and ammunition, medical, nursing and dental services, transport, aerial surveillance and services, to the FARC starting in 2006, which supported the FARC's ability to continue to hold Plaintiffs hostage from 2006 to July 2, 2008, and this material support was itself an act of international terrorism which was causally related to Plaintiffs' damages.

55.     18 U.S.C. §§ 2331 and 2333 were initially enacted in 1990 as the Anti-Terrorism Act of 1990, Pub.L. No. 101-519, § 132, 104 Stat. 2250 (1990), but were repealed as the result of a technical deficiency. They were subsequently re-enacted as part of the Federal Courts Administration Act of 1992, Pub.L. No. 102-572, 106 Stat. 4506 (1992).

56.     On April 24, 1996, Congress passed the Antiterrorism and Effective Death Penalty

Act of 1996 ("AEDPA"), PL 104-132 (S 735) which provides in part:

> SEC. 301. FINDINGS AND PURPOSE.
>
> (a) FINDINGS.--The Congress finds that--
> (1) international terrorism is a serious and deadly problem that threatens the vital
> interests of the United States;
>
> (7) foreign organizations that engage in terrorist activity are so tainted by their
> criminal conduct that any contribution to such an organization facilitates that
> conduct.
>
> (b) PURPOSE.--The purpose of this subtitle is to provide the Federal Government
> the fullest possible basis, consistent with the Constitution, to prevent persons
> within the United States, or subject to the jurisdiction of the United States, from
> providing material support or resources to foreign organizations that engage in
> terrorist activities.

57.     Congress extended criminal liability to those providing material support to foreign

terrorist organizations in Section 303 of the AEDPA:

> "Whoever, within the United States or subject to the jurisdiction of the United States,
> knowingly provides material support or resources to a foreign terrorist organization, or
> attempts or conspires to do so, shall be fined under this title or imprisoned not more than 10
> years, or both." 18 U.S.C. § 2339B(a)(1). [1]

58.     Section 2339B adopts the definition of "material support or resources" provided in

section 2339A, and looks to 8 U.S.C. § 1189 for the definition of "terrorist organization".

"Material support or resources" is a defined term and includes provision of currency or

monetary instruments, weapons, transportation, and false documentation..   18 U.S.C. §

2339A(b).

59.  18 U.S.C. § 1203. Hostage taking, provides:

---

[1] In 2004 Congress amended §2339B(a)(1) as set forth in ¶ 74 herein.

"(a) Except as provided in subsection (b) of this section, whoever, whether inside or outside the United States, seizes or detains and threatens to kill, to injure, **or to continue to detain** another person in order to compel a third person or a governmental organization to do or abstain from doing any act as an explicit or implicit condition for the release of the person detained, or attempts or conspires to do so, shall be punished by imprisonment for any term of years or for life and, if the death of any person results, shall be punished by death or life imprisonment." (emphasis supplied).

60.     The mental element required to fix liability on Defendant BGP, INC., CNPC for providing support to the FARC terrorist organization is present if Defendant knew the character and terrorist nature of the FARC - which BGP, INC., CNPC did know.

61.     Defendant BGP, INC., CNPC's provision of money and support to an organization that commits terrorist acts was intentional misconduct because Defendant knew that the FARC engaged in terrorist acts, or was deliberately indifferent to whether it did or not, and Defendant knew there was a substantial probability that the FARC engaged in terrorism and would continue to do so.

62.     The facts known to Defendant BGP, INC., CNPC placed it on notice of a risk of contributing to the continued detention of U.S. national hostages, therefore Defendant BGP, INC., CNPC cannot ignore the facts and plead ignorance of the risk.

63.     Extending liability to secondary actors is recognized under the ATA.

64.     Defendant BGP, INC., CNPC knowingly provided substantial assistance to international terrorism.

65.     Because money is fungible, it is not generally possible to say that a particular dollar caused a particular act or paid for a particular gun, nor is this level of "but for" causation required under the ATA.

17

66.     Defendant BGP, INC., CNPC's provision of funds and other support to the FARC was a substantial factor in the FARC's maintaining Plaintiffs' captivity as hostages and was a proximate cause of the daily terrorist acts suffered by Plaintiffs from 2006 through July 2, 2008.

67.     Defendant, BGP, INC., CNPC, as a reasonably prudent person, could have foreseen that a harm like the one that the plaintiffs suffered might result from its conduct, therefore there is proximate causation.

68.     It was entirely foreseeable that transmitting money to a terrorist organization would lead to violence and hostage taking and Congress had precisely that lethal connection in mind in passing the ATA.

69.     A donor of even $1,000 to a terrorist organization can be liable under the ATA because knowing contributors as a whole significantly enhance the risk of terrorist acts and thus the probability that the Plaintiffs would be future victims.

70.     Plaintiffs are all U.S. nationals who were injured by reason of an act of international terrorism and seek non-economic compensatory damages under 18 U.S.C. § 2333.

71.     At all times material, Plaintiffs were civilian employees of Northrup Grumman engaged in a counter-narcotics surveillance mission.  Plaintiffs were not injured as a result of any "act of war" as defined by 18 U.S.C. §2331(4) because Plaintiffs were not injured by reason of any "declared war", or "armed conflict between two or more nations", or "armed conflict between military forces of any origin".

72.     Plaintiffs were victimized by acts of "international terrorism" as defined by 18 U.S.C. § 2331(1) which states:

**"(1)** the term "international terrorism" means activities that--

**(A)** involve violent acts or acts dangerous to human life that are a violation of the criminal laws of the United States or of any State, or that would be a criminal violation if committed within the jurisdiction of the United States or of any State;

**(B)** appear to be intended--
**(i)** to intimidate or coerce a civilian population;
**(ii)** to influence the policy of a government by intimidation or coercion; or
**(iii)** to affect the conduct of a government by mass destruction, assassination, or kidnapping; and

**(C)** occur primarily outside the territorial jurisdiction of the United States, or transcend national boundaries in terms of the means by which they are accomplished, the persons they appear intended to intimidate or coerce, or the locale in which their perpetrators operate or seek asylum."

73.    Plaintiffs were "political hostages" whose detention and captivity fall within the definition of "international terrorism" above.

74.    Defendant BGP, INC., CNPC's giving money and other material support to the FARC, like giving a loaded gun to a child, is "an act dangerous to human life", is an act of international terrorism, and it violates a criminal law of the United States, 18 U.S.C. §2339B(a)(1), which provides in relevant part:

§ 2339B. Providing material support or resources to designated foreign terrorist organizations

(a) Prohibited activities.--
(1) Unlawful conduct.--Whoever knowingly provides material support or resources to a foreign terrorist organization, or attempts or conspires to do so, shall be fined under this title or imprisoned not more than 15 years, or both, and, if the death of any person results, shall be imprisoned for any term of years or for life. To violate this paragraph, a person must have knowledge that the organization is a designated terrorist organization (as defined in subsection (g)(6)), that the organization has engaged or engages in terrorist activity (as defined in section 212(a)(3)(B) of the Immigration and Nationality Act), or that

the organization has engaged or engages in terrorism (as defined in section 140(d) (2) of the Foreign Relations Authorization Act, Fiscal Years 1988 and 1989).

75.     Section 2339B(a) on its face does not require proof that the provider of material support intended for that support to further the terrorist activities of the organization; the provider need only have knowledge that the organization has been designated a foreign terrorist organization or that the organization engaged or engages in terrorist activity. Defendant BGP, INC., CNPC's provision of material support to the FARC appears to have been intended: (i) to intimidate or coerce a civilian population; (ii) to influence the policy of a government by intimidation or coercion; or (iii) to affect the conduct of a government by mass destruction, assassination, or kidnapping; because Defendant BGP, INC., CNPC knew the FARC was a designated foreign terrorist organization, or because Defendant BGP, INC., CNPC knew the FARC was engaged in terrorist activity.

76.     Plaintiffs' 1,967 days of captivity, injury and damages as FARC hostages occurred outside the territorial jurisdiction of the U.S.  The material support provided by Defendant BGP, INC., CNPC to the FARC also occurred outside the territorial jurisdiction of the U.S. and transcended international boundaries.

77.     Congress intended that the intentional or reckless provision of material support to a terrorist organization in violation of §2339A or §2339B fulfills each prong of §2331(1)'s definition of "international terrorism" and therefore suffices to establish civil liability under §2333(a).  Defendant BGP, INC., CNPC's material support to the FARC, as alleged herein, are acts of international terrorism actionable under § 2333(a).

78.     Defendant BGP, INC., CNPC is a "person" as defined by 18 U.S.C. §2331(3) as "any individual or entity capable of holding a legal or beneficial interest in property".

79.     Defendant BGP, INC., CNPC is not a foreign state, an agency of a foreign state, or an officer or employee of a foreign state or an agency thereof, acting within his or her official capacity or under color of legal authority.

80.     Defendant BGP, INC., CNPC knowingly provided material support to the FARC.

81.     Defendant BGP, INC., CNPC knew, or consciously avoided knowing, that the FARC was a designated Foreign Terrorist Organization, and/or that it was engaged or had engaged in terrorist activities.

82.     This material support of acts of international terrorism assisted the FARC with its ongoing terrorist activities, including the continuing ability to maintain captivity and torture of hostages, including Plaintiffs.

83.     The FARC's terrorist acts against Plaintiffs were intended to intimidate or coerce the Colombian and United States civilian population, to influence policy of the U.S. Government by intimidation or coercion, and to affect the conduct of a government by kidnapping, hostage taking and assassination.

84.     Defendant BGP, INC., CNPC's provision of material support to the FARC starting in 2006 supported the FARC in continued acts of international terrorism that continue to injure Plaintiffs from 2006.

85.     Defendant BGP, INC., CNPC's payment of moneys and provision of material support to the FARC starting in 2006 was a proximate cause or contributing cause of Plaintiff's damages starting in 2006.  "But for" causation is not required under the ATA.

21

86.     Congress intended these provisions to impose, "liability at any point along the causal

chain of terrorism." S.Rep. No. 102-342 at 22. In enacting the material support statute

Congress made an express finding of fact that, "**foreign organizations that engage**

**in terrorist activity are so tainted by their criminal conduct that any contribution to**

**such an organization facilitates that conduct.**" (emphasis supplied). Antiterrorism and

Effective Death Penalty Act of 1996, Pub.L. 104-32, § 301(a)(7), 110 Stat. 1214, 1247

(1996).

87.     Money is fungible; Defendant BGP, INC., CNPC's giving money and material

support, even if intended to buy protection from the FARC – a designated FTO - freed up

resources that were then used for terrorist acts.  Defendant BGP, INC., CNPC's material

support to the FARC played a causal role, or was a cause in fact, in the FARC's ability to

continue to hold Plaintiffs hostage and continue to maintain their captivity because the

support and resources provided to the FARC was used in part to maintain Plaintiffs' captivity

and/or freed up other FARC resources to be diverted for the purpose of maintaining

Plaintiffs' captivity.

88.     Defendant BGP, INC., CNPC's giving money and providing material support to a

FARC Front or member in one geographic area of Colombia benefitted the FARC

organization as a whole because part of these moneys were delivered to the FARC's central

command (Secretariat) and then re-distributed to FARC Fronts in other geographic areas of

Colombia for terrorist activities, including to the First Front which was holding Plaintiffs'

hostage from 2006 to their rescue on July 2, 2008.

89.     Defendant BGP, INC., CNPC's payment of moneys and provision of additional material support to the FARC's Aurelio Rodriguez Front freed up FARC resources that would otherwise have to be distributed by the Secretariat to the Aurelio Rodriguez Front and therefore were then used in part by the First Front to continue holding Plaintiffs hostage from 2006 to July 2, 2008.

90.     Defendant BGP, INC., CNPC's payment of moneys and provision of additional material support to the FARC's Aurelio Rodriguez Front was also distributed in part directly to the First Front to continue to maintain Plaintiffs' captivity.

91.     The legislative history of 18 USC §2333 indicates that Congress intended to allow plaintiffs to recover from anyone at any point along the full length of the causal chain of terrorism.

92.     Plaintiffs have standing because they have demonstrated: (i) injury in fact; (ii) a causal relationship between the injury and BGP, INC., CNPC's challenged conduct; and (iii) the likelihood that their injuries will be redressed by a favorable decision.  Plaintiffs were held hostage by the FARC for over 2 years after BGP, INC., CNPC commenced providing material support to the FARC.  Plaintiffs have demonstrated that their injuries are traceable to BGP, INC., CNPC's material support of the FARC and how that material support was distributed throughout the FARC to continue to maintain Plaintiffs as hostages.  Plaintiffs need not prove "but for" causation to have standing.  Liability extends to both on the ground terrorists and those who aid and abet them or knowingly provide them with material support. Plaintiffs have demonstrated more than a speculative prospect of obtaining redress if the Court rules in their favor because BGP, INC., CNPC is the world's largest geophysical

contractor and is capable of satisfying a judgment in favor of Plaintiffs. Plaintiffs have

demonstrated a personal stake in the outcome of the controversy to warrant the federal courts

exercise of jurisdiction.

93.     By providing material support to the FARC, Defendant BGP, INC., CNPC is jointly

and severally liable for the injuries and damages suffered by Plaintiffs as a result of the

FARC's daily terrorist acts against them starting in 2006.

94.     Defendant BGP, INC., CNPC is vicariously liable for the acts of its employees,

agents, alter ego wholly owned corporate subsidiaries, and contractors, and knowledge of any

employee, agent, subsidiary or contractor is imputed to Defendant BGP, INC., CNPC.

95.     By willfully providing material support to FARC, Defendant BGP, INC., CNPC

supported FARC's acts of international terrorism and other violations of law that have

permanently injured each plaintiff.

**WHEREFORE**, Plaintiffs, Keith Stansell, Marc Gonsalves and Thomas Howes

demand judgment in their favor against Defendant BGP, INC., CNPC, jointly and severally,

for their past and future physical and mental pain and suffering, disability, disfigurement,

mental anguish, loss of capacity for the enjoyment of life, emotional distress, loss of years of

their life, including treble damages under 18 U.S.C. §2333, plus costs, attorneys fees, and

such other monetary and equitable relief as this Honorable Court deems appropriate to

compensate plaintiffs.

<u>COUNT TWO</u>
(BGP INTERNATIONAL, INC. - 18 U.S.C. § 2333)

96.     Plaintiffs adopt and incorporate the allegations and facts contained in prior

paragraphs and in allegations common to all counts.

97.     In November 2005, the Colombian government's national hydrocarbons agency,

Agencia Nacional de Hidrocarburos (ANH), an agency within the Colombian Ministry of

Mining, awarded a contract to BGP, INC., CNPC and/or its subsidiaries to acquire, process

and interpret 2D seismic data in the frontier area of the Atrato-San Juan river basins in the

State of Choco on and near the Pacific coast and the Panamanian border.  It is and was well

known that the FARC was very active and controlled this region of Colombia.  Many other

commercial entities bid on other ANH oil exploration contract areas but BGP, INC., CNPC

was the sole bidder for the contract in the FARC controlled Choco region.

98.     In 2006, Defendant BGP INTERNATIONAL, INC.'s  employees, agents and contract

workers were actively engaged in oil exploration and seismic data activities in this region of

Colombia.

99.     Sometime in 2006, employees and/or agents of Defendant BGP INTERNATIONAL,

INC. communicated with, and met personally with, Ivan Rios, a member of the FARC

Secretariat, and agreed to and did in fact pay substantial moneys (at least one initial payment

of 800 million Colombian pesos, the equivalent to several hundred thousand U.S. dollars) to

the  FARC  in  exchange  for  the  FARC's  agreement  to  allow  Defendant  BGP

INTERNATIONAL, INC. to conduct its oil exploration activities without fear of terrorist acts.

100.    BGP INTERNATIONAL, INC. contracted with a Colombian helicopter company,

Helicargo, S.A. for transport services throughout the remote jungle terrain where they would be operating.

101.    On June 9, 2006, 2 of BGP INTERNATIONAL, INC.'s local contract assistant topographers, Hanner Mosquera Mosquera and Ivan Mosquera Longo, were kidnapped by the FARC because the FARC had specified that the local workers had to come from the local area and the Mosqueras were Afro-Colombians from another part of Colombia.   Twenty other employees and contract workers present in the BGP camp on that date were not taken by the FARC.

102.    BGP INTERNATIONAL, INC. continued providing additional material support to the FARC after June 9, 2006, including, but not limited to, substantial monetary payments, a diesel generator, computer and printer, food, medical, nursing and dental services, radios, weapons and ammunition, transportation services for FARC terrorists via helicopter, and aerial surveillance flights to confirm that FARC camps were safely hidden from the Colombian Air Force or US counter-narcotics surveillance flights above.

103.    Defendant BGP INTERNATIONAL, INC. provided material support, in the form of money, equipment, radios, power systems, weapons and ammunition, medical, nursing and dental services, transport, aerial surveillance and services, to the FARC starting in 2006, which supported the FARC's ability to continue to hold Plaintiffs hostage from 2006 to July 2, 2008, and this material support was itself an act of international terrorism which was causally related to Plaintiffs' damages.

104.    18 U.S.C. §§ 2331 and 2333 were initially enacted in 1990 as the Anti-Terrorism Act of 1990, Pub.L. No. 101-519, § 132, 104 Stat. 2250 (1990), but were repealed as the result of

a technical deficiency. They were subsequently re-enacted as part of the Federal Courts

Administration Act of 1992, Pub.L. No. 102-572, 106 Stat. 4506 (1992).

105.    On April 24, 1996, Congress passed the Antiterrorism and Effective Death Penalty

Act of 1996 ("AEDPA"), PL 104-132 (S 735) which provides in part:

> SEC. 301. FINDINGS AND PURPOSE.
>
> (a) FINDINGS.--The Congress finds that--
> (1) international terrorism is a serious and deadly problem that threatens the vital
> interests of the United States;
>
> (7) foreign organizations that engage in terrorist activity are so tainted by their
> criminal conduct that any contribution to such an organization facilitates that
> conduct.
>
> (b) PURPOSE.--The purpose of this subtitle is to provide the Federal Government
> the fullest possible basis, consistent with the Constitution, to prevent persons
> within the United States, or subject to the jurisdiction of the United States, from
> providing material support or resources to foreign organizations that engage in
> terrorist activities.

106.    Congress extended criminal liability to those providing material support to foreign

terrorist organizations in Section 303 of the AEDPA:

> "Whoever, within the United States or subject to the jurisdiction of the United States,
> knowingly provides material support or resources to a foreign terrorist organization, or
> attempts or conspires to do so, shall be fined under this title or imprisoned not more than 10
> years, or both."  18 U.S.C. § 2339B(a)(1). [2]

107.    Section 2339B adopts the definition of "material support or resources" provided in

section 2339A, and looks to 8 U.S.C. § 1189 for the definition of "terrorist organization".

"Material support or resources" is a defined term and includes provision of currency or

monetary instruments, weapons, transportation, and false documentation..   18 U.S.C. §

2339A(b).

---

[2] In 2004 Congress amended §2339B(a)(1) as set forth in ¶ 123 herein.

108.  18 U.S.C. § 1203. Hostage taking, provides:

> "(a) Except as provided in subsection (b) of this section, whoever, whether inside or outside the United States, seizes or detains and threatens to kill, to injure, **or to continue to detain** another person in order to compel a third person or a governmental organization to do or abstain from doing any act as an explicit or implicit condition for the release of the person detained, or attempts or conspires to do so, shall be punished by imprisonment for any term of years or for life and, if the death of any person results, shall be punished by death or life imprisonment." (emphasis supplied).

109.    The mental element required to fix liability on Defendant BGP INTERNATIONAL, INC. for providing support to the FARC terrorist organization is present if Defendant knew the character and terrorist nature of the FARC - which BGP INTERNATIONAL, INC. did know.

110.    Defendant BGP INTERNATIONAL, INC.'s provision of money and support to an organization that commits terrorist acts was intentional misconduct because Defendant knew that the FARC engaged in terrorist acts, or was deliberately indifferent to whether it did or not, and Defendant knew there was a substantial probability that the FARC engaged in terrorism and would continue to do so.

111.    The facts known to Defendant BGP INTERNATIONAL, INC. placed it on notice of a risk of contributing to the continued detention of U.S. national hostages, therefore Defendant BGP INTERNATIONAL, INC. cannot ignore the facts and plead ignorance of the risk.

112.    Extending liability to secondary actors is recognized under the ATA.

113.    Defendant BGP INTERNATIONAL, INC. knowingly provided substantial assistance to international terrorism.

114.    Because money is fungible, it is not generally possible to say that a particular dollar caused a particular act or paid for a particular gun, nor is this level of "but for" causation required under the ATA.

115.    Defendant BGP INTERNATIONAL, INC.'s provision of funds and other support to the FARC was a substantial factor in the FARC's maintaining Plaintiffs' captivity as hostages and was a proximate cause of the daily terrorist acts suffered by Plaintiffs from 2006 through July 2, 2008.

116.    Defendant, BGP INTERNATIONAL, INC., as a reasonably prudent person, could have foreseen that a harm like the one that the plaintiffs suffered might result from its conduct, therefore there is proximate causation.

117.    It was entirely foreseeable that transmitting money to a terrorist organization would lead to violence and hostage taking and Congress had precisely that lethal connection in mind in passing the ATA.

118.    A donor of even $1,000 to a terrorist organization can be liable under the ATA because knowing contributors as a whole significantly enhance the risk of terrorist acts and thus the probability that the Plaintiffs would be future victims.

119.    Plaintiffs are all U.S. nationals who were injured by reason of an act of international terrorism and seek non-economic compensatory damages under 18 U.S.C. § 2333.

120.    At all times material, Plaintiffs were civilian employees of Northrup Grumman engaged in a counter-narcotics surveillance mission.  Plaintiffs were not injured as a result of any "act of war" as defined by 18 U.S.C. §2331(4) because Plaintiffs were not injured by

reason of any "declared war", or "armed conflict between two or more nations", or "armed

conflict between military forces of any origin".

121.    Plaintiffs were victimized by acts of "international terrorism" as defined by 18 U.S.C.

§ 2331(1) which states:

> **"(1)** the term "international terrorism" means activities that--
>
>> **(A)** involve violent acts or acts dangerous to human life that are a violation of the criminal laws of the United States or of any State, or that would be a criminal violation if committed within the jurisdiction of the United States or of any State;
>>
>> **(B)** appear to be intended--
>>> **(i)** to intimidate or coerce a civilian population;
>>> **(ii)** to influence the policy of a government by intimidation or coercion; or
>>> **(iii)** to affect the conduct of a government by mass destruction, assassination, or kidnapping; and
>>
>> **(C)** occur primarily outside the territorial jurisdiction of the United States, or transcend national boundaries in terms of the means by which they are accomplished, the persons they appear intended to intimidate or coerce, or the locale in which their perpetrators operate or seek asylum."

122.    Plaintiffs were "political hostages" whose detention and captivity fall within the

definition of "international terrorism" above.

123.    Defendant BGP INTERNATIONAL, INC.'s giving money and other material support

to the FARC, like giving a loaded gun to a child, is "an act dangerous to human life", is an

act of international terrorism, and it violates a criminal law of the United States, 18 U.S.C.

§2339B(a)(1), which provides in relevant part:

> § 2339B. Providing material support or resources to designated foreign terrorist organizations
>
> (a) Prohibited activities.--

(1) Unlawful conduct.--Whoever knowingly provides material support or resources to a foreign terrorist organization, or attempts or conspires to do so, shall be fined under this title or imprisoned not more than 15 years, or both, and, if the death of any person results, shall be imprisoned for any term of years or for life. To violate this paragraph, a person must have knowledge that the organization is a designated terrorist organization (as defined in subsection (g)(6)), that the organization has engaged or engages in terrorist activity (as defined in section 212(a)(3)(B) of the Immigration and Nationality Act), or that the organization has engaged or engages in terrorism (as defined in section 140(d)(2) of the Foreign Relations Authorization Act, Fiscal Years 1988 and 1989).

124.    Section 2339B(a) on its face does not require proof that the provider of material support intended for that support to further the terrorist activities of the organization; the provider need only have knowledge that the organization has been designated a foreign terrorist organization or that the organization engaged or engages in terrorist activity. Defendant BGP INTERNATIONAL, INC.'s provision of material support to the FARC appears to have been intended: (i) to intimidate or coerce a civilian population; (ii) to influence the policy of a government by intimidation or coercion; or (iii) to affect the conduct of a government by mass destruction, assassination, or kidnapping; because Defendant BGP INTERNATIONAL, INC. knew the FARC was a designated foreign terrorist organization, or because Defendant BGP INTERNATIONAL, INC. knew the FARC was engaged in terrorist activity.

125.    Plaintiffs' 1,967 days of captivity, injury and damages as FARC hostages occurred outside the territorial jurisdiction of the U.S.  The material support provided by Defendant BGP INTERNATIONAL, INC. to the FARC also occurred outside the territorial jurisdiction of the U.S. and transcended international boundaries.

126.     Congress intended that the intentional or reckless provision of material support to a terrorist organization in violation of §2339A or §2339B fulfills each prong of §2331(1)'s definition of "international terrorism" and therefore suffices to establish civil liability under §2333(a).  Defendant BGP INTERNATIONAL, INC.'s material support to the FARC, as alleged herein, are acts of international terrorism actionable under § 2333(a).

127.     Defendant BGP INTERNATIONAL, INC. is a "person" as defined by 18 USC §2331(3) as "any individual or entity capable of holding a legal or beneficial interest in property".

128.     Defendant BGP INTERNATIONAL, INC. is not a foreign state, an agency of a foreign state, or an officer or employee of a foreign state or an agency thereof, acting within his or her official capacity or under color of legal authority.

129.     Defendant BGP INTERNATIONAL, INC. knowingly provided material support to the FARC.

130.     Defendant BGP INTERNATIONAL, INC. knew, or consciously avoided knowing, that the FARC was a designated Foreign Terrorist Organization, and/or that it was engaged or had engaged in terrorist activities.

131.     This material support of acts of international terrorism assisted the FARC with its ongoing terrorist activities, including the continuing ability to maintain captivity and torture of hostages, including Plaintiffs.

132.     The FARC's terrorist acts against Plaintiffs were intended to intimidate or coerce the Colombian and United States civilian population, to influence policy of the U.S. Government

by intimidation or coercion, and to affect the conduct of a government by kidnapping, hostage taking and assassination.

133.    Defendant BGP INTERNATIONAL, INC.'s provision of material support to the FARC starting in 2006 supported the FARC in continued acts of international terrorism that continue to injure Plaintiffs from 2006.

134.    Defendant BGP INTERNATIONAL, INC.'s payment of moneys and provision of material support to the FARC starting in 2006 was a proximate cause or contributing cause of Plaintiff's damages starting in 2006.  "But for" causation is not required under the ATA.

135.    Congress intended these provisions to impose, "liability at any point along the causal chain of terrorism." S.Rep. No. 102-342 at 22. In enacting the material support statute Congress made an express finding of fact that, "**foreign organizations that engage in terrorist activity are so tainted by their criminal conduct that any contribution to such an organization facilitates that conduct.**" (emphasis supplied). Antiterrorism and Effective Death Penalty Act of 1996, Pub.L. 104-32, § 301(a)(7), 110 Stat. 1214, 1247 (1996).

136.    Money is fungible; Defendant BGP INTERNATIONAL, INC.'s giving money and material support, even if intended to buy protection from the FARC – a designated FTO - freed up resources that were then used for terrorist acts.  Defendant BGP INTERNATIONAL, INC.'s material support to the FARC played a causal role, or was a cause in fact, in the FARC's ability to continue to hold Plaintiffs hostage and continue to maintain their captivity because the support and resources provided to the FARC was used in

33

part to maintain Plaintiffs' captivity and/or freed up other FARC resources to be diverted for the purpose of maintaining Plaintiffs' captivity.

137.    Defendant BGP INTERNATIONAL, INC.'s giving money and providing material support to a FARC Front or member in one geographic area of Colombia benefitted the FARC organization as a whole because part of these moneys were delivered to the FARC's central command (Secretariat) and then re-distributed to FARC Fronts in other geographic areas of Colombia for terrorist activities, including to the First Front which was holding Plaintiffs' hostage from 2006 to their rescue on July 2, 2008.

138.    Defendant BGP INTERNATIONAL, INC.'s payment of moneys and provision of additional material support to the FARC's Aurelio Rodriguez Front freed up FARC resources that would otherwise have to be distributed by the Secretariat to the Aurelio Rodriguez Front and therefore were then used in part by the First Front to continue holding Plaintiffs hostage from 2006 to July 2, 2008.

139.    Defendant BGP INTERNATIONAL, INC.'s payment of moneys and provision of additional material support to the FARC's Aurelio Rodriguez Front was also distributed in part directly to the First Front to continue to maintain Plaintiffs' captivity.

140.    The legislative history of 18 USC §2333 indicates that Congress intended to allow plaintiffs to recover from anyone at any point along the full length of the causal chain of terrorism.

141.    Plaintiffs have standing because they have demonstrated: (i) injury in fact; (ii) a causal relationship between the injury and BGP INTERNATIONAL, INC.'s challenged conduct; and (iii) the likelihood that their injuries will be redressed by a favorable decision.

Plaintiffs were held hostage by the FARC for over 2 years after BGP INTERNATIONAL, INC. commenced providing material support to the FARC.  Plaintiffs have demonstrated that their injuries are traceable to BGP INTERNATIONAL, INC.'s material support of the FARC and how that material support was distributed throughout the FARC to continue to maintain Plaintiffs as hostages.  Plaintiffs need not prove "but for" causation to have standing. Liability extends to both on the ground terrorists and those who aid and abet them or knowingly provide them with material support.  Plaintiffs have demonstrated more than a speculative prospect of obtaining redress if the Court rules in their favor because BGP INTERNATIONAL, INC. is a wholly owned subsidiary of the world's largest geophysical contractor and is capable of satisfying a judgment in favor of Plaintiffs.  Plaintiffs have demonstrated a personal stake in the outcome of the controversy to warrant the federal courts exercise of jurisdiction.

142.     By providing material support to the FARC, Defendant BGP INTERNATIONAL, INC. is jointly and severally liable for the injuries and damages suffered by Plaintiffs as a result of the FARC's daily terrorist acts against them starting in 2006.

143.     Defendant BGP INTERNATIONAL, INC. is vicariously liable for the acts of its employees, agents, alter ego wholly owned corporate subsidiaries, and contractors, and knowledge of any employee, agent, subsidiary or contractor is imputed to Defendant BGP INTERNATIONAL, INC.

144.     By willfully providing material support to FARC, Defendant BGP INTERNATIONAL, INC. supported FARC's  acts of international terrorism  and other violations of law that have permanently injured each plaintiff.

145.    In the alternative, if the "material support" described herein was provided to the FARC solely by employees or agents of the Chinese parent corporation, Defendant BGP, INC., CNPC, then the Court should disregard the separate corporate fiction between the parent and subsidiary and reverse pierce the corporate veil between BGP, INC., CNPC and its alter ego BGP INTERNATIONAL, INC. and find BGP INTERNATIONAL, INC. vicariously liable for the violations of 18 U.S.C. § 2339B by its parent alter ago, which violations are actionable under the civil remedy provision in 18 U.S.C. § 2333.

146.    The common stock of BGP INTERNATIONAL, INC. is wholly owned by the parent BGP, INC., CNPC.

147.    BGP INTERNATIONAL, INC. has common directors and officers with its parent BGP, INC., CNPC.

148.    BGP INTERNATIONAL, INC. has common business departments, divisions and territories with its parent BGP, INC., CNPC.

149.    BGP INTERNATIONAL, INC. shares consolidated financial statements and tax returns with its parent BGP, INC., CNPC.

150.    BGP, INC., CNPC has provided the financing for its subsidiary BGP INTERNATIONAL, INC.

151.    BGP, INC., CNPC incorporated its subsidiary BGP INTERNATIONAL, INC.

152.    BGP INTERNATIONAL, INC. has been undercapitalized by its parent creator, BGP, INC., CNPC.

153.    BGP, INC., CNPC pays salaries and other expenses of its subsidiary BGP INTERNATIONAL, INC.

36

154.    BGP, INC., CNPC is the sole source of business for its subsidiary BGP INTERNATIONAL, INC.

155.    BGP, INC., CNPC uses its subsidiary's property as its own.

156.    BGP, INC., CNPC has combined daily operations with its subsidiary BGP INTERNATIONAL, INC.

157.    BGP, INC., CNPC exercises complete control over the  general policies or daily activities of its subsidiary BGP INTERNATIONAL, INC.

158.    BGP, INC., CNPC shares an identical corporate logo and internet web site with its subsidiary BGP INTERNATIONAL, INC.

159.    BGP, INC., CNPC shares a U.S. office, seismic data processing center and training center in Houston, TX with its subsidiary BGP INTERNATIONAL, INC.

160.    BGP, INC., CNPC controls the internal business operations and affairs of its wholly owned subsidiary, BGP INTERNATIONAL, INC., to such an extent that the two entities cease to be separate and the corporate fiction should be disregarded to prevent injustice.

161.    Defendants' fictional separate Chinese parent-U.S. subsidiary corporate form has been used as part of a basically unfair device to achieve an inequitable result, including a scheme to attempt to shield U.S. assets and income from claims of victims injured by extraterritorial violations of the U.S. Anti-Terrorism Act and its material support provisions.

162.    BGP INTERNATIONAL, INC. is organized and operated as a mere tool or business conduit of its parent BGP, INC., CNPC and each is the alter ego of the other.

163.    The corporate fiction between the Chinese parent BGP, INC., CNPC and its U.S. subsidiary BGP INTERNATIONAL, INC. is resorted to as a means of evading an existing

37

legal obligation for criminal and civil tort liability arising from the violations of 18 U.S.C. § 2339B in Colombia in 2006.

164.    The corporate fiction between the Chinese parent BGP, INC., CNPC and its U.S. subsidiary BGP INTERNATIONAL, INC. is used to circumvent criminal and civil tort liability arising from the violations of 18 U.S.C. § 2339B with the FARC in Colombia, and liability arising from the parent corporation's business dealings in Cuba, Iran, Myanmar, Sudan, North Korea, and under past or existing contracts of the parent corporation to provide goods or services with persons and entities that are identified on the List of Specially Designated Nationals and Blocked Persons (" SDNs "), that is the target of U.S. economic sanctions administered by the U.S. Treasury Department's Office of Foreign Assets Control (" OFAC ").

**WHEREFORE**, Plaintiffs, Keith Stansell, Marc Gonsalves and Thomas Howes demand judgment in their favor against Defendant BGP INTERNATIONAL, INC., jointly and severally, for their past and future physical and mental pain and suffering, disability, disfigurement, mental anguish, loss of capacity for the enjoyment of life, emotional distress, loss of years of their life, including treble damages under 18 U.S.C. §2333, plus costs, attorneys fees, and such other monetary and equitable relief as this Honorable Court deems appropriate to compensate plaintiffs.

## COUNT THREE
### (BGP AMERICAS, INC. - 18 U.S.C. § 2333)

165.    Plaintiffs adopt and incorporate the allegations and facts contained in prior paragraphs and in allegations common to all counts.

166.    In November 2005, the Colombian government's national hydrocarbons agency, Agencia Nacional de Hidrocarburos (ANH), an agency within the Colombian Ministry of Mining, awarded a contract to BGP, INC., CNPC and/or its subsidiaries to acquire, process and interpret 2D seismic data in the frontier area of the Atrato-San Juan river basins in the State of Choco on and near the Pacific coast and the Panamanian border.  It is and was well known that the FARC was very active and controlled this region of Colombia.  Many other commercial entities bid on other ANH oil exploration contract areas but BGP, INC., CNPC was the sole bidder for the contract in the FARC controlled Choco region.

167.    In 2006, Defendant BGP AMERICAS, INC.'s employees, agents and contract workers were actively engaged in oil exploration and seismic data activities in this region of Colombia.

168.    Sometime in 2006, employees and/or agents of Defendant BGP AMERICAS, INC. communicated with, and met personally with, Ivan Rios, a member of the FARC Secretariat, and agreed to and did in fact pay substantial moneys (at least one initial payment of 800 million Colombian pesos, the equivalent to several hundred thousand U.S. dollars) to the FARC in exchange for the FARC's agreement to allow Defendant BGP AMERICAS, INC. to conduct its oil exploration activities without fear of terrorist acts.

169.    BGP AMERICAS, INC. contracted with a Colombian helicopter company, Helicargo, S.A. for transport services throughout the remote jungle terrain where they would be operating.

170.    On June 9, 2006, 2 of BGP AMERICAS, INC.'s local contract assistant topographers, Hanner Mosquera Mosquera and Ivan Mosquera Longo, were kidnapped by the FARC

because the FARC had specified that the local workers had to come from the local area and the Mosqueras were Afro-Colombians from another part of Colombia. Twenty other employees and contract workers present in the BGP camp on that date were not taken by the FARC.

171.    BGP AMERICAS, INC. continued providing additional material support to the FARC after June 9, 2006, including, but not limited to, substantial monetary payments, a diesel generator, computer and printer, food, medical, nursing and dental services, radios, weapons and ammunition, transportation services for FARC terrorists via helicopter, and aerial surveillance flights to confirm that FARC camps were safely hidden from the Colombian Air Force or US counter-narcotics surveillance flights above.

172.    Defendant BGP AMERICAS, INC. provided material support, in the form of money, equipment, radios, power systems, weapons and ammunition, medical, nursing and dental services, transport, aerial surveillance and services, to the FARC starting in 2006, which supported the FARC's ability to continue to hold Plaintiffs hostage from 2006 to July 2, 2008, and this material support was itself an act of international terrorism which was causally related to Plaintiffs' damages.

173.    18 U.S.C. §§ 2331 and 2333 were initially enacted in 1990 as the Anti-Terrorism Act of 1990, Pub.L. No. 101-519, § 132, 104 Stat. 2250 (1990), but were repealed as the result of a technical deficiency. They were subsequently re-enacted as part of the Federal Courts Administration Act of 1992, Pub.L. No. 102-572, 106 Stat. 4506 (1992).

174.    On April 24, 1996, Congress passed the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), PL 104-132 (S 735) which provides in part:

SEC. 301. FINDINGS AND PURPOSE.

(a) FINDINGS.--The Congress finds that--
(1) international terrorism is a serious and deadly problem that threatens the vital interests of the United States;

(7) foreign organizations that engage in terrorist activity are so tainted by their criminal conduct that any contribution to such an organization facilitates that conduct.

(b) PURPOSE.--The purpose of this subtitle is to provide the Federal Government the fullest possible basis, consistent with the Constitution, to prevent persons within the United States, or subject to the jurisdiction of the United States, from providing material support or resources to foreign organizations that engage in terrorist activities.

175.   Congress extended criminal liability to those providing material support to foreign

terrorist organizations in Section 303 of the AEDPA:

"Whoever, within the United States or subject to the jurisdiction of the United States, knowingly provides material support or resources to a foreign terrorist organization, or attempts or conspires to do so, shall be fined under this title or imprisoned not more than 10 years, or both." 18 U.S.C. § 2339B(a)(1). [3]

176.   Section 2339B adopts the definition of "material support or resources" provided in

section 2339A, and looks to 8 U.S.C. § 1189 for the definition of "terrorist organization".

"Material support or resources" is a defined term and includes provision of currency or

monetary instruments, weapons, transportation, and false documentation..   18 U.S.C. §

2339A(b).

177.   18 U.S.C. § 1203. Hostage taking, provides:

"(a) Except as provided in subsection (b) of this section, whoever, whether inside or outside the United States, seizes or detains and threatens to kill, to injure, **or to continue to detain** another person in order to compel a third person or a governmental organization to do or abstain from doing any act as an explicit or implicit condition for the release of the person detained, or

---

[3] In 2004 Congress amended §2339B(a)(1) as set forth in ¶ 192 herein.

attempts or conspires to do so, shall be punished by imprisonment for any term of years or for life and, if the death of any person results, shall be punished by death or life imprisonment." (emphasis supplied).

178.    The mental element required to fix liability on Defendant BGP AMERICAS, INC. for providing support to the FARC terrorist organization is present if Defendant knew the character and terrorist nature of the FARC - which BGP AMERICAS, INC. did know.

179.    Defendant BGP AMERICAS, INC.'s provision of money and support to an organization that commits terrorist acts was intentional misconduct because Defendant knew that the FARC engaged in terrorist acts, or was deliberately indifferent to whether it did or not, and Defendant knew there was a substantial probability that the FARC engaged in terrorism and would continue to do so.

180.    The facts known to Defendant BGP AMERICAS, INC. placed it on notice of a risk of contributing to the continued detention of U.S. national hostages, therefore Defendant BGP AMERICAS, INC. cannot ignore the facts and plead ignorance of the risk.

181.    Extending liability to secondary actors is recognized under the ATA.

182.    Defendant BGP AMERICAS, INC. knowingly provided substantial assistance to international terrorism.

183.    Because money is fungible, it is not generally possible to say that a particular dollar caused a particular act or paid for a particular gun, nor is this level of "but for" causation required under the ATA.

184.    Defendant BGP AMERICAS, INC.'s provision of funds and other support to the FARC was a substantial factor in the FARC's maintaining Plaintiffs' captivity as hostages

and was a proximate cause of the daily terrorist acts suffered by Plaintiffs from 2006 through July 2, 2008.

185.    Defendant, BGP AMERICAS, INC., as a reasonably prudent person, could have foreseen that a harm like the one that the plaintiffs suffered might result from its conduct, therefore there is proximate causation.

186.    It was entirely foreseeable that transmitting money to a terrorist organization would lead to violence and hostage taking and Congress had precisely that lethal connection in mind in passing the ATA.

187.    A donor of even $1,000 to a terrorist organization can be liable under the ATA because knowing contributors as a whole significantly enhance the risk of terrorist acts and thus the probability that the Plaintiffs would be future victims.

188.    Plaintiffs are all U.S. nationals who were injured by reason of an act of international terrorism and seek non-economic compensatory damages under 18 U.S.C. § 2333.

189.    At all times material, Plaintiffs were civilian employees of Northrup Grumman engaged in a counter-narcotics surveillance mission.  Plaintiffs were not injured as a result of any "act of war" as defined by 18 U.S.C. §2331(4) because Plaintiffs were not injured by reason of any "declared war", or "armed conflict between two or more nations", or "armed conflict between military forces of any origin".

190.    Plaintiffs were victimized by acts of "international terrorism" as defined by 18 U.S.C. § 2331(1) which states:

   **"(1)** the term "international terrorism" means activities that--

(**A**) involve violent acts or acts dangerous to human life that are a violation of the criminal laws of the United States or of any State, or that would be a criminal violation if committed within the jurisdiction of the United States or of any State;

(**B**) appear to be intended--
    (**i**) to intimidate or coerce a civilian population;
    (**ii**) to influence the policy of a government by intimidation or coercion; or
    (**iii**) to affect the conduct of a government by mass destruction, assassination, or kidnapping; and

(**C**) occur primarily outside the territorial jurisdiction of the United States, or transcend national boundaries in terms of the means by which they are accomplished, the persons they appear intended to intimidate or coerce, or the locale in which their perpetrators operate or seek asylum."

191.    Plaintiffs were "political hostages" whose detention and captivity fall within the definition of "international terrorism" above.

192.    Defendant BGP AMERICAS, INC.'s giving money and other material support to the FARC, like giving a loaded gun to a child, is "an act dangerous to human life", is an act of international terrorism, and it violates a criminal law of the United States, 18 U.S.C. §2339B(a)(1), which provides in relevant part:

§ 2339B. Providing material support or resources to designated foreign terrorist organizations

(a) Prohibited activities.--
(1) Unlawful conduct.--Whoever knowingly provides material support or resources to a foreign terrorist organization, or attempts or conspires to do so, shall be fined under this title or imprisoned not more than 15 years, or both, and, if the death of any person results, shall be imprisoned for any term of years or for life. To violate this paragraph, a person must have knowledge that the organization is a designated terrorist organization (as defined in subsection (g)(6)), that the organization has engaged or engages in terrorist activity (as defined in section 212(a)(3)(B) of the Immigration and Nationality Act), or that the organization has engaged or engages in terrorism (as defined in section 140(d)(2) of the Foreign Relations Authorization Act, Fiscal Years 1988 and 1989).

193.     Section 2339B(a) on its face does not require proof that the provider of material support intended for that support to further the terrorist activities of the organization; the provider need only have knowledge that the organization has been designated a foreign terrorist organization or that the organization engaged or engages in terrorist activity. Defendant BGP AMERICAS, INC.'s provision of material support to the FARC appears to have been intended: (i) to intimidate or coerce a civilian population; (ii) to influence the policy of a government by intimidation or coercion; or (iii) to affect the conduct of a government by mass destruction, assassination, or kidnapping; because Defendant BGP AMERICAS, INC. knew the FARC was a designated foreign terrorist organization, or because Defendant BGP AMERICAS, INC. knew the FARC was engaged in terrorist activity.

194.     Plaintiffs' 1,967 days of captivity, injury and damages as FARC hostages occurred outside the territorial jurisdiction of the U.S.  The material support provided by Defendant BGP AMERICAS, INC. to the FARC also occurred outside the territorial jurisdiction of the U.S. and transcended international boundaries.

195.     Congress intended that the intentional or reckless provision of material support to a terrorist organization in violation of §2339A or §2339B fulfills each prong of §2331(1)'s definition of "international terrorism" and therefore suffices to establish civil liability under §2333(a).  Defendant BGP AMERICAS, INC.'s material support to the FARC, as alleged herein, are acts of international terrorism actionable under § 2333(a).

196.    Defendant BGP AMERICAS, INC. is a "person" as defined by 18 USC §2331(3) as "any individual or entity capable of holding a legal or beneficial interest in property".

197.    Defendant BGP AMERICAS, INC. is not a foreign state, an agency of a foreign state, or an officer or employee of a foreign state or an agency thereof, acting within his or her official capacity or under color of legal authority.

198.    Defendant BGP AMERICAS, INC. knowingly provided material support to the FARC.

199.    Defendant BGP AMERICAS, INC. knew, or consciously avoided knowing, that the FARC was a designated Foreign Terrorist Organization, and/or that it was engaged or had engaged in terrorist activities.

200.    This material support of acts of international terrorism assisted the FARC with its ongoing terrorist activities, including the continuing ability to maintain captivity and torture of hostages, including Plaintiffs.

201.    The FARC's terrorist acts against Plaintiffs were intended to intimidate or coerce the Colombian and United States civilian population, to influence policy of the U.S. Government by intimidation or coercion, and to affect the conduct of a government by kidnapping, hostage taking and assassination.

202.    Defendant BGP AMERICAS, INC.'s provision of material support to the FARC starting in 2006 supported the FARC in continued acts of international terrorism that continue to injure Plaintiffs from 2006.

203.    Defendant BGP AMERICAS, INC.'s payment of moneys and provision of material support to the FARC starting in 2006 was a proximate cause or contributing cause of Plaintiff's damages starting in 2006.  "But for" causation is not required under the ATA.

46

204.    Congress intended these provisions to impose, "liability at any point along the causal chain of terrorism." S.Rep. No. 102-342 at 22. In enacting the material support statute Congress made an express finding of fact that, "**foreign organizations that engage in terrorist activity are so tainted by their criminal conduct that any contribution to such an organization facilitates that conduct.**" (emphasis supplied). Antiterrorism and Effective Death Penalty Act of 1996, Pub.L. 104-32, § 301(a)(7), 110 Stat. 1214, 1247 (1996).

205.    Money is fungible; Defendant BGP AMERICAS, INC.'s giving money and material support, even if intended to buy protection from the FARC – a designated FTO - freed up resources that were then used for terrorist acts.  Defendant BGP AMERICAS, INC.'S material support to the FARC played a causal role, or was a cause in fact, in the FARC's ability to continue to hold Plaintiffs hostage and continue to maintain their captivity because the support and resources provided to the FARC was used in part to maintain Plaintiffs' captivity and/or freed up other FARC resources to be diverted for the purpose of maintaining Plaintiffs' captivity.

206.    Defendant BGP AMERICAS, INC.'s giving money and providing material support to a FARC Front or member in one geographic area of Colombia benefitted the FARC organization as a whole because part of these moneys were delivered to the FARC's central command (Secretariat) and then re-distributed to FARC Fronts in other geographic areas of Colombia for terrorist activities, including to the First Front which was holding Plaintiffs' hostage from 2006 to their rescue on July 2, 2008.

207.    Defendant BGP AMERICAS, INC.'s payment of moneys and provision of additional material support to the FARC's Aurelio Rodriguez Front freed up FARC resources that would otherwise have to be distributed by the Secretariat to the Aurelio Rodriguez Front and therefore were then used in part by the First Front to continue holding Plaintiffs hostage from 2006 to July 2, 2008.

208.    Defendant BGP AMERICAS, INC.'s payment of moneys and provision of additional material support to the FARC's Aurelio Rodriguez Front was also distributed in part directly to the First Front to continue to maintain Plaintiffs' captivity.

209.    The legislative history of 18 USC §2333 indicates that Congress intended to allow plaintiffs to recover from anyone at any point along the full length of the causal chain of terrorism.

210.    Plaintiffs have standing because they have demonstrated: (i) injury in fact; (ii) a causal relationship between the injury and BGP AMERICAS, INC.'s challenged conduct; and (iii) the likelihood that their injuries will be redressed by a favorable decision.  Plaintiffs were held hostage by the FARC for over 2 years after BGP AMERICAS, INC. commenced providing material support to the FARC.  Plaintiffs have demonstrated that their injuries are traceable to BGP AMERICAS, INC.'s material support of the FARC and how that material support was distributed throughout the FARC to continue to maintain Plaintiffs as hostages. Plaintiffs need not prove "but for" causation to have standing.  Liability extends to both on the ground terrorists and those who aid and abet them or knowingly provide them with material support.  Plaintiffs have demonstrated more than a speculative prospect of obtaining redress if the Court rules in their favor because BGP AMERICAS, INC. is a wholly owned

48

subsidiary of the world's largest geophysical contractor and is capable of satisfying a judgment in favor of Plaintiffs.  Plaintiffs have demonstrated a personal stake in the outcome of the controversy to warrant the federal courts exercise of jurisdiction.

211.    By providing material support to the FARC, Defendant BGP AMERICAS, INC. is jointly and severally liable for the injuries and damages suffered by Plaintiffs as a result of the FARC's daily terrorist acts against them starting in 2006.

212.    Defendant BGP AMERICAS, INC. is vicariously liable for the acts of its employees, agents, alter ego corporate entities, and contractors, and knowledge of any employee, agent, subsidiary or contractor is imputed to Defendant BGP AMERICAS, INC..

213.    By willfully providing material support to FARC, Defendant BGP AMERICAS, INC. supported FARC's  acts of international terrorism  and other violations of law that have permanently injured each plaintiff.

214.    In the alternative, if the "material support" described herein was provided to the FARC solely by employees or agents of the Chinese parent corporation, Defendant BGP, INC., CNPC, then the Court should disregard the separate corporate fiction between the parent and subsidiary and reverse pierce the corporate veil between BGP, INC., CNPC and its alter ego BGP AMERICAS, INC. and find BGP AMERICAS, INC. vicariously liable for the violations of 18 U.S.C. § 2339B by its parent alter ago, which violations are actionable under the civil remedy provision in 18 U.S.C. § 2333.

215.    The common stock of  BGP AMERICAS, INC. is wholly owned by the parent BGP, INC., CNPC.

216.    BGP AMERICAS, INC. has common directors and officers with its parent BGP, INC., CNPC.

217.    BGP AMERICAS, INC. has common business departments, divisions and territories with its parent BGP, INC., CNPC.

218.    BGP AMERICAS, INC. shares consolidated financial statements and tax returns with its parent BGP, INC., CNPC.

219.    BGP, INC., CNPC has provided the financing for its subsidiary BGP AMERICAS, INC.

220.    BGP, INC., CNPC incorporated its subsidiary BGP AMERICAS, INC.

221.    BGP AMERICAS, INC. has been undercapitalized by its parent creator, BGP, INC., CNPC.

222.    BGP, INC., CNPC pays salaries and other expenses of its subsidiary BGP AMERICAS, INC.

223.    BGP, INC., CNPC is the sole source of business for its subsidiary BGP AMERICAS, INC.

224.    BGP, INC., CNPC uses its subsidiary's property as its own.

225.    BGP, INC., CNPC has combined daily operations with its subsidiary BGP AMERICAS, INC.

226.    BGP, INC., CNPC exercises complete control over the  general policies or daily activities of its subsidiary BGP AMERICAS, INC.

227.    BGP, INC., CNPC shares an identical corporate logo and internet web site with its subsidiary BGP AMERICAS, INC.

228.    BGP, INC., CNPC shares a U.S. office, seismic data processing center and training center in Houston, TX with its subsidiary BGP AMERICAS, INC.

229.    BGP, INC., CNPC controls the internal business operations and affairs of its wholly owned subsidiary, BGP AMERICAS, INC., to such an extent that the two entities cease to be separate and the corporate fiction should be disregarded to prevent injustice.

230.    Defendants' fictional separate Chinese parent-U.S. subsidiary corporate form has been used as part of a basically unfair device to achieve an inequitable result, including a scheme to attempt to shield U.S. assets and income from claims of victims injured by extraterritorial violations of the U.S. Anti-Terrorism Act and its material support provisions.

231.    BGP AMERICAS, INC. is organized and operated as a mere tool or business conduit of its parent BGP, INC., CNPC and each is the alter ego of the other.

232.    The corporate fiction between the Chinese parent BGP, INC., CNPC and its U.S. subsidiary BGP AMERICAS, INC. is resorted to as a means of evading an existing legal obligation for criminal and civil tort liability arising from the violations of 18 U.S.C. § 2339B in Colombia in 2006.

233.    The corporate fiction between the Chinese parent BGP, INC., CNPC and its U.S. subsidiary BGP AMERICAS, INC. is used to circumvent criminal and civil tort liability arising from the violations of 18 U.S.C. § 2339B with the FARC in Colombia, and liability arising from the parent corporation's business dealings in Cuba, Iran, Myanmar, Sudan, North Korea, and under past or existing contracts of the parent corporation to provide goods or services with persons and entities that are identified on the List of Specially Designated Nationals and Blocked Persons (" SDNs "), that is the target of U.S. economic sanctions

51

administered by the U.S. Treasury Department's Office of Foreign Assets Control

(" OFAC ").

      **WHEREFORE**, Plaintiffs, Keith Stansell, Marc Gonsalves and Thomas Howes

demand judgment in their favor against Defendant BGP AMERICAS, INC. jointly and

severally, for their past and future physical and mental pain and suffering, disability,

disfigurement, mental anguish, loss of capacity for the enjoyment of life, emotional distress,

loss of years of their life, including treble damages under 18 U.S.C. §2333, plus costs,

attorneys fees, and such other monetary and equitable relief as this Honorable Court deems

appropriate to compensate plaintiffs.

DATED: August 2, 2010

/s Newton Porter_____       /s_Tony Korvick_____
NEWTON P. PORTER                              TONY KORVICK
Trial Counsel                                      Trial Counsel
(Florida Bar No. 833738)                    (Florida Bar No. 768405)
nporter@porterandkorvick.com             tkorvick@porterandkorvick.com
PORTER & KORVICK, P.A.                 PORTER & KORVICK, P.A.
9655 South Dixie Highway Suite 208      9655 South Dixie Highway Suite 208
Miami, Florida 33156                         Miami, Florida 33156
Telephone:     (305) 373-5040          Telephone:     (305) 373-5040
Facsimile:      (305) 668-9154          Facsimile:      (305) 668-9154
Attorneys for Plaintiffs                   Attorneys for Plaintiffs

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on August 2, 2010, I electronically filed the foregoing with the Clerk of the Court by using the CM/ECF system.  I further certify that I mailed the foregoing document and the notice of electronic filing by first class mail and electronic mail to the following non-CM/ECF participants: NONE AT THIS TIME.

<div style="margin-left:40%">

_s/Tony Korvick_____

TONY KORVICK (Florida Bar No. 768405)

Attorneys for Plaintiffs

PORTER & KORVICK, P.A.

9655 South Dixie Highway Suite 208

Miami, Florida 33156

Telephone:     (305) 373-5040

Fax:               (305) 668-9154

tkorvick@porterandkorvick.com

</div>