# UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF FLORIDA
### TAMPA DIVISION

**KEITH STANSELL, et al.,**

     **Plaintiffs,**

**v.**                                                  **Case No.  8:09-cv-2501-T-30AEP**

**BGP, INC., et al.,**

     **Defendants.**

_____/

# ORDER

THIS CAUSE comes before the Court upon Defendants' Motion to Dismiss (Dkt. 82). The Court has considered the motion, Plaintiffs' Response in opposition (Dkt. 88), the United States' Response to the motion (Dkt. 93)[1], and Defendants' Reply in support of their motion (Dkt. 92).  Upon consideration, the Court concludes that the motion should be granted in part and denied in part.

## Background[2]

In 2003, Plaintiffs Keith Stansell, Marc Gonsalves, and Thomas Howell were civilian workers conducting a counter narcotics surveillance mission in Colombia.  On February 13,

---

[1] The United States appears as an interested party, pursuant to 28 U.S.C. §2403(a), only to address Defendants' constitutional challenge to the material support provision of the Antiterrorism Act, 18 U.S.C. § 2339B.

[2] For purposes of a Motion to Dismiss this Court is required to accept the allegations of the Complaint as true.  Therefore, the factual background is taken from those allegations.  *See Hishon v. King & Spalding*, 467 U.S. 69, 73 (1984).

2003, Plaintiffs, along with a Colombian army sergeant and an American pilot, were conducting an aerial surveillance mission when their United States-registered aircraft was hit with heavy gunfire and crash landed.   The gunfire came from members of the Revolutionary Forces of Colombia ("FARC").

The FARC is a known terrorist organization operating in Colombia.   On October 8, 1997, the Secretary of State of the United States designated the FARC as a foreign terrorist organization, pursuant to 8 U.S.C. § 1189.   The FARC was re-designated as a foreign terrorist organization on September 5, 2001.   The FARC is known to engage in politically motivated violence, including kidnaping and murder.   It has also been identified as a significant foreign narcotics trafficker due to its involvement in the Colombian drug trade.

The occupants of the plane were immediately taken captive by the FARC members. The American pilot and Colombian soldier were shot and killed by the FARC shortly after being captured.   The Plaintiffs were marched into the jungle, where the FARC held them captive until July 2, 2008.

About two months after the plane crash, the FARC issued a public statement taking credit for holding Plaintiffs hostage.   In that statement, the FARC announced that it would release Plaintiffs, and about 250 Colombian citizens who were also being held hostage, in exchange for certain political concessions from the Colombian and American governments. For example, the FARC demanded that the Colombian government carve out of its sovereign territory a demilitarized zone, which would be used as a new base of operations for the FARC, and release hundreds of FARC terrorists currently held by the Colombian authorities.

It also demanded the release of two FARC members who were being held in the United States.

Defendant BGP, Inc., CNPC ("the BGP Parent") is a foreign corporation organized in the People's Republic of China. Defendants BGP International, Inc. and BGP Americas, Inc. ("the BGP Subsidiaries") are subsidiaries of the BGP Parent. BGP International, Inc. is a Texas corporation with its principal place of business in Houston, Texas. BGP Americas, Inc. is a Delaware corporation with its principal place of business in Houston, Texas.

In 2005, the Colombian government's national hydrocarbons agency, awarded a contract to the Defendants to acquire, process, and interpret 2D seismic data in the frontier area of the Atrato-San Juan river basins in the State of Choco on and near the Pacific coast and the Panamanian border. The FARC is known to be active in, and hold control of, that region of Colombia. In 2006, Defendants' employees, agents, and contract workers were actively engaged in oil exploration and seismic data activities in this region of Colombia.

Sometime in 2006, employees or agents of Defendants communicated and met personally with Ivan Rios, a member of the FARC Secretariat. As a result of these meetings, Defendants paid substantial money (at least one initial payment of 800 million Colombian pesos, the equivalent to several hundred thousand U.S. dollars) to the FARC in exchange for the FARC's agreement to allow Defendants to conduct its oil exploration activities without fear of terrorist acts. Defendants continued to provide support to the FARC in the form of additional monetary payments and various supplies and services.

Plaintiffs bring claims against each of the Defendants under the civil provision of the Antiterrorism Act ("ATA"), 18 U.S.C. § 2333(a), for providing material support to the FARC, with knowledge of the FARC's status as a designated foreign terrorist organization or with knowledge that the FARC engaged in terrorist activities, in violation of 18 U.S.C. § 2339B. Plaintiffs allege that their captivity was prolonged due to Defendants' contributions to the FARC. They claim those contributions are acts of international terrorism and violation of 18 U.S.C. § 2339B. Section 2339B prohibits the provision of material support and resources to terrorist organizations with knowledge that the organization is a terrorist organization.

Defendant's bring the current motion to dismiss for lack of standing, lack of personal and subject matter jurisdiction, and failure to state a claim.

## Discussion

### I.      Standing

Standing "is the threshold question in every federal case, determining the power of the court to entertain the suit." *Warth v. Seldin,* 422 U.S. 490, 499 (1975). In order to demonstrate Article III standing, a plaintiff must make three showings:

> First, the plaintiff must have suffered an "injury in fact" - an invasion of a legally protected interest which is (a) concrete and particularized, and (b) "actual or imminent, not conjectural or hypothetical." Second, there must be a causal connection between the injury and the conduct complained of - the injury has to be "fairly . . . traceable to the challenged action of the defendant, and not . . . the result of the independent action of some third party not before the court. Third, it must be "likely," as opposed to merely "speculative," that the injury will be "redressed by a favorable decision."

*Bochese v. Town of Ponce Inlet*, 405 F.3d 964, 980 (11ᵗʰ Cir. 2005) (*citing Dillard v. Baldwin County Com'rs*, 225 F.3d 1271 (11ᵗʰ Cir. 2000)).  At the pleading stage, Plaintiffs have a relatively low burden to establish causation for standing purposes. *Goldberg v. UBS AG*, 660 F. Supp. 2d 410, 418 (E.D.N.Y. 2009) (*citing United States v. SCRAP*, 412 U.S. 669, 689, 93 S.Ct. 2405, 2417, 37 L. Ed. 2d 254 (1973)).

Defendants here contest only the causal connection element of standing.  Defendants contend that Plaintiffs' causal connection allegations are too attenuated to confer standing because Plaintiffs have not pled sufficient facts to show that their injuries are fairly traceable to Defendants alleged conduct.

Despite Defendants contentions, Plaintiffs allege the necessary chain of causation to support standing.  First, they allege that each of the defendants contributed money and supplies directly to the FARC beginning in 2006.  Dkt. 73, ¶¶ 50, 53, 54,99, 102, 103, 168, 171, 172.  They further allege that Defendants knew or consciously avoided knowing that the FARC was a designated terrorist organization.  According to the Fourth Amended Complaint, Defendants provided the support in exchange for the FARC allowing them to continue their oil explorations without fear of terrorist activities.  Dkt. 73, ¶¶ 50, 99, 168.  Based on these allegations, Defendants knew that their contributions to the FARC would be funding terrorist activities.  *See Goldberg*, 660 F.Supp.2d 410; *Wultz v. Islamic Republic of Iran*, 2010 WL 4228350 (D.D.C. 2010).

Plaintiffs also allege that the money and supplies provided by Defendants were distributed to FARC fronts across Colombia, including the First Front where Plaintiffs were

being held.  Dkt. 73, ¶¶ 88, 137, 206.  In addition, Plaintiffs allege that part of Defendants

contributions to the FARC was distributed "directly to the First Front to continue to maintain

Plaintiffs' captivity."  Dkt. 73, ¶¶ 90, 139, 208.  Therefore, there is no break in the causal

chain.  Defendant's payment and provision of other support to the FARC is alleged to have

directly caused Plaintiffs' alleged injuries.  The facts alleged by Plaintiffs sufficiently

demonstrate the requisite causal connection for standing purposes.

## II.    Personal Jurisdiction

### A.    *Jurisdiction over BGP Subsidiaries under Rule 4(k)(1)*[3]

Under Federal Rule of Civil Procedure 4(k)(1)(c), "serving a summons or filing a

waiver of service establishes personal jurisdiction over a defendant...when authorized by

statute."  The ATA authorizes nationwide service of process to establish jurisdiction.  18

U.S.C. § 2334.  BGP Americas, Inc. was served on December 18, 2009.  BGP International,

Inc. was served on December 22, 2009.  Rule 4(k)(1) provides an adequate basis for personal

jurisdiction over the BGP subsidiaries.

### B.    *Jurisdiction over BGP Parent under Rule 4(k)(2)*

Plaintiffs allege jurisdiction over the BGP Parent under Fed. R. Civ. P. 4(k)(2), which

provides:

---

[3] In the Complaint, Plaintiffs only alleged basis for jurisdiction over all Defendants is Fed.
R. Civ. P. 4(k)(2).  That rule clearly cannot apply to the BGP Subsidiaries because each of the
subsidiaries is subject to jurisdiction in other states.  In their response to the motion to dismiss,
Plaintiffs argue that this Court has jurisdiction over the subsidiaries under Rule 4(k)(1).  The Court
will therefore analyze jurisdiction pursuant to 4(k)(1) and allow Plaintiffs to amend the complaint
to correct the jurisdictional allegations in accordance with this order.

"For a claim that arises under federal law, serving a summons or filing a waiver of service establishes personal jurisdiction over a defendant if:
(A) the defendant is not subject to jurisdiction in any state's courts of general jurisdiction; and
(B) exercising jurisdiction is consistent with the United States Constitution and laws."

The BGP Parent filed its waiver of service on February 12, 2010.  It is undisputed that the BGP Parent is not subject to jurisdiction in any state in the United States.

C.      *Fifth Amendment Due Process*

In any assertion of personal jurisdiction, the Court must determine whether the exercise of jurisdiction comports with due process.  *Republic of Panama v. BCCI Holdings (Luxembourg) S.A.*, 119 F.3d 935, 942 (11th Cir. 1997).  When a federal statute provides the basis for jurisdiction, due process is examined under the due process clause of the Fifth Amendment, rather than the Fourteenth Amendment.  *Id.*  "Due process requires that a defendant 'have certain minimum contacts with ... [the forum] such that the maintenance of the suit does not offend traditional notions of fair play and substantial justice.'"  *Wultz*, 2010 WL 4228350 at *16 (*quoting Int'l Shoe Co. v. Wash.*, 326 U.S. 310, 320 (1945)).  The relevant forum under these circumstances is the United States as a whole.  *Associated Transport Line, Inc. v. Productos Fitosanitarios Proficol El Carmen, S.A.*, 197 F.3d 1070, 1074 (11th Cir. 1999).

A court's establishment of personal jurisdiction may be based on a showing of either specific or general jurisdiction.  Specific jurisdiction arises "out of a party's activities in the forum [] that are related to the cause of action alleged in the complaint."  *Sloss Industries*

*Corp. v. Eurisol* 488 F.3d 922, 925 (11th Cir. 2007) (quoting *McGow,* 412 F.3d, 1207, 1214 n. 3 (11th Cir. 2005)) (internal quotation marks omitted).   In order to establish specific jurisdiction, a defendant's contacts with the forum must (I) be related to the plaintiff's cause of action or have given rise to it, (ii) involve some act by which the defendant purposefully avails itself of the privilege of conducting activities within the forum, and (iii) be such that the defendant should reasonably anticipate being haled into court there.  *Id.* (additional citations omitted).  In contrast, general jurisdiction can only be exercised if a defendant has "continuous and systematic" contacts with the forum.  *Id.* at 925 n. 3*; See Helicopteros Nacionales de Colombia, S.A. v. Hall,* 466 U.S. 408, 415-16 (1984).  Here, Plaintiffs assert that this Court has general jurisdiction over all defendants because their contacts with the forum are unrelated to the litigation.

*1.      The BGP Subsidiaries*

The BGP Subsidiaries are undisputedly domestic corporations with their principal places of business within the United States.  By virtue of being domestic corporations, they clearly have minimum contacts with the United States as a whole.

Minimum contacts with the United States does not automatically satisfy due process, however.  *Panama*, 119 F.3d at 947.  Rare circumstances arise in which inconvenience of the forum is so burdensome as to raise constitutional concern.  *Id.* at 947-948.  The burden shifts to the defendant to show that jurisdiction is "so gravely difficult and inconvenient" that it is unfairly at severe disadvantage in comparison to the plaintiff.  *Id.* at 948.

The BGP Subsidiaries have failed to meet their burden.  Though they fully describe their lack of contacts with Florida, they fail to show that litigating in Florida would be significantly more burdensome than litigating in any other venue with the United States.

2.      *The BGP Parent*

Plaintiffs allege two alternative bases to satisfy the due process requirements.  First, Plaintiffs allege the BGP Parent itself has minimum contacts with the United States sufficient to support jurisdiction.  Second, Plaintiffs attempt to rely on an alter ego theory to allow the BGP Subsidiaries' contacts with the United States to be imputed to the BGP Parent.  Both alternatives fail to comport with due process.

a.      *Minimum Contacts*

Again, Plaintiffs must show the BGP Parent had "continuous and systematic business contacts with the United States sufficient to subject [it] to the jurisdiction of it Courts." *Consolidated Development Corp. v. Sherritt, Inc.*, 216 F.3d 1286, 1292 (11th Cir. 2000). The contacts with the forum must be pervasive.  *Associated Transport*, 197 F.3d at 1075.

The BGP Parent's alleged contacts are not enough to support general jurisdiction.  The majority of Plaintiffs' jurisdictional allegations are based on inferences that seem to be overreaching.  For example, Plaintiffs allege the BGP brand website identifies "branches and offices" and a "processing center" located in Houston, Texas, without reference to any corporate subsidiary.  This kind of allegation requires too great a leap to be a proper foundation for jurisdiction.

b.    *Alter Ego*

As an alternative to the BGP Parent's own minimum contacts, Plaintiffs allege that

the Defendants are all alter egos of each other such that the BGP Subsidiaries' contacts can

be imputed to the BGP Parent.  As alleged, however, the alter ego theory is not supported.

Plaintiffs alter ego allegations are all conclusory statements unsupported by facts, simply

listing factors to be considered in an alter ego analysis, rather than containing true factual

support.

The Court is aware that discovery has been stayed pending a ruling on the instant

motion to dismiss.  Plaintiffs have not been able to take discovery which may help them

obtain sufficient facts to support the assertion of jurisdiction.  The Court will therefore allow

limited jurisdictional discovery for a period of 90 days.  During that time, Plaintiffs may take

discovery regarding jurisdiction, including discovery related to the alternative alter ego

claim.  At the end of the discovery period, Plaintiffs may file an amended complaint and the

BGP Parent may renew their motion to dismiss for lack of personal jurisdiction if

appropriate.

## III.    Subject Matter Jurisdiction[4]

Defendants challenge subject matter jurisdiction arguing that the ATA does not have

extraterritorial reach, which would deprive this Court of subject matter jurisdiction.  A strong

---

[4] Defendants also argue that the BGP Parent is immune from suit under the Foreign Sovereign Immunities Act, 28 U.S.C. § 1602, and the ATA.  Because this Court has no personal jurisdiction over the BGP Parent, the Court need not decide whether that defendant has immunity under either the FSIA or ATA at this time.  The Court will address these issues if needed following the jurisdictional discovery.

presumption against extraterritorial applications of federal statutes exists unless the statute makes clear Congress intended it to have extraterritorial reach. *Morrison v. National Australia Bank Ltd.*, 130 S.Ct. 2869, 2877 (U.S. 2010). Defendants argue that the civil suit provision of the ATA, under which Plaintiffs bring their claims, do not provide for extraterritorial application. "Congress, however, clearly intended the ATA have extraterritorial application; 18 U.S.C. § 2333 provides civil remedies for victims of 'international terrorism' and 18 U.S.C. § 2331 explicitly defines that term to include acts which occur primarily outside the territorial jurisdiction of the United States." *Goldberg*, 660 F.Supp. 2d at 431. There may be some concern in applying the extraterritorial reach of the ATA to a foreign defendant. However, the remaining defendants here are United States corporations. "There is nothing fundamentally unfair about requiring [corporations within the United States] to comply with United States law." *Id.*

## IV. Failure to State a Claim under 12(b)(6)

Determining the propriety of granting a motion to dismiss requires courts to accept all the factual allegations in the complaint as true and evaluate all inferences derived from those facts in the light most favorable to the plaintiff. *See Hunnings v. Texaco, Inc.*, 29 F.3d 1480, 1483 (11th Cir. 1994). Nonetheless, "conclusory allegations, unwarranted factual deductions or legal conclusions masquerading as facts will not prevent dismissal." *Davila v. Delta Air Lines, Inc.*, 326 F.3d 1183, 1185 (11th Cir. 2003). To survive a motion to dismiss, a plaintiff's complaint must include "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007).

While in the ordinary case a plaintiff may find the bar exceedingly low to plead only more than "a statement of facts that merely creates a suspicion [of] a legally cognizable right of action," it is clear that "a plaintiff's obligation to provide the 'grounds' of his 'entitlement to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do."  *Id.* at 1959, 1965; *see also Davis v. Coca-Cola Bottling Co. Consol.*, 516 F.3d 955, 974, n. 43 (11th Cir. 2008) (noting the abrogation of the "no set of facts" standard and holding *Twombly* "as a further articulation of the standard by which to evaluate the sufficiency of all claims").  Absent the necessary factual allegations, "unadorned, the-defendant-unlawfully-harmed-me accusation[s]" will not suffice. *Ashcroft v. Iqbal*, 129 S.Ct. 1937, 1949 (2009).

The ATA provides for a civil action for "[a]ny national of the United States injured in his or her person, property, or business by reason of an act of international terrorism."  18 U.S.C. § 2333(a).  An act of international terrorism is defined by the statute as "activities that--

> (A) involve violent acts or acts dangerous to human life that are a violation of the criminal laws of the United States or of any State, or that would be a criminal violation if committed within the jurisdiction of the United States or of any State;
>
> (B) appear to be intended--
>
> (I) to intimidate or coerce a civilian population;
>
> (ii) to influence the policy of a government by intimidation or coercion; or
>
> (iii) to affect the conduct of a government by mass destruction, assassination, or kidnaping; and

(C) occur primarily outside the territorial jurisdiction of the United States, or transcend national boundaries in terms of the means by which they are accomplished, the persons they appear intended to intimidate or coerce, or the locale in which their perpetrators operate or seek asylum;"

18 U.S.C.A. § 2331(1).  The issue here is whether a contribution to a known terrorist organization is an "act dangerous to human life" and "a violation of the criminal laws of the United States," and whether § 2339B is constitutional.

A.    *Acts Dangerous to Human Life*

Defendants contend that their alleged payments to the FARC do not constitute "acts dangerous to human life."  They rely heavily on the Seventh Circuit's reasoning in the early *Boim* cases.  In *Boim v. Quranic Literacy Inst. and Holy Land Foundation For Relief And Development*, 291 F.3d 1000, 1011 (7th Cir. 2002) ("Boim I"), the Seventh Circuit determined that allegations of "knowledge of and intent to further the payee's violent criminal acts" was required to allege that a contribution to a terrorist organization was a violent act.  But *Boim I's* holding is inapplicable to this case.  *Boim I* dealt with claims under § 2339A, which criminalizes the provision of material support or resources with knowledge or intent that the support or resources would be used in preparation for, or in carrying out, violations of various terrorism related criminal statutes.  18 U.S.C. § 2339A(a).

The claims at issue here involve violations of § 2339B.  As the Supreme Court recently held in *Holder v. Humanitarian Law Project*, 130 S.Ct. 2705 (2010), § 2339B, the criminal statute on which Plaintiffs' claims rely, does not have a specific intent requirement. As will be discussed further in a later section, the court held that Congress's amendments to

the statute in 2004 made clear that the only knowledge required was the knowledge that the organization was a terrorist organization or engaged in terrorist activities. The statute does not require specific knowledge or intent to further the terrorist activities.

And, in *Boim v. Holy Land Foundation for Relief and Development*, 549 F.3d 685 (7th Cir. 2008) ("Boim III"), the Seventh Circuit slightly relaxed its previous standard. It analogized the contribution of monetary support to a terrorist organization to giving a loaded gun to a child. Though that act would not be violent in itself, it would be dangerous to human life. This Court agrees with the holding in *Boim III* that although the provision of money to a terrorist organization such as the FARC may not be violent, it is clearly dangerous to human life.

B.      *A Violation of United States Criminal Law*

Plaintiffs allege Defendants' actions constitute violations of 18 U.S.C. § 2339B, which criminalizes the provision of "material support or resources to a foreign terrorist organization" with "knowledge that the organization is a designated terrorist organization ..., that the organization has engaged or engages in terrorist activity..., or that the organization has engaged or engages in terrorism." 18 U.S.C. § 2339B(a)(1). The section defines "material support or resources" by reference to § 2339A. 18 U.S.C. § 2339B(g)(4). Material support includes "any property, tangible or intangible, or service, including currency or monetary instruments or financial securities, financial services, lodging, training, expert advice or assistance, safehouses, false documentation or identification, communications equipment, facilities, weapons, lethal substances, explosives, personnel (1 or more

individuals who may be or include oneself), and transportation, except medicine or religious

materials." 18 U.S.C. § 2339A(b)(1).

1.      *Constitutionality of § 2339B*

As mentioned above, the Supreme Court recently determined that § 2339B does not

have a specific intent requirement, meaning that a defendant need not have known that his

or her material support would be used to further terrorist activities in order to violate the

statute. *Holder*, 130 S.Ct. 2705, 2717. Defendants now argue that without a specific intent

requirement, the statute is unconstitutional because it violates the personal guilt requirement

of the Fifth Amendment. This Court rejects Defendants' argument.

Though, as Defendants point out, the personal guilt question was not before the

Supreme Court, it is difficult to believe the Supreme Court would have upheld an

interpretation or application of the statute that was unconstitutional. The court was certainly

aware of the issue as it had been argued throughout the lengthy history of the litigation. In

addition, the court's detailed analysis of *Scales v. United States*, 367 U.S. 203 (1961), in

which the Supreme Court dealt specifically with the personal guilt requirement of the Fifth

Amendment, indicates the Court was aware of the personal guilt issue when it made its

ruling.

Furthermore, this Court agrees with the Ninth Circuit's reasoning in *Humanitarian

Law Project v. Mukasey*, 552 F.3d 916 (9th Cir. 2009) (reversed in part on other grounds by

*Holder*, 130 S.Ct. 2705). In rejecting the plaintiffs request to read a specific intent

requirement into § 2339B, the *Mukasey* court concluded that specific intent was not necessary to satisfy the personal guilt requirement. *Id.* at 926. The court stated:

> [ATA] section 2339B(a) already requires the government to prove that the donor defendant provided "material support or resources" to a designated foreign terrorist organization with knowledge that the donee organization is a designated foreign terrorist organization, or with knowledge that the organization is or has engaged in terrorist activities or terrorism. 18 U.S.C. § 2339B(a).   As amended, [ATA] section 2339B(a) complies with the conventional requirement for criminal conduct-awareness of some wrongdoing.   Thus, a person with such knowledge is put on notice that "providing material support or resources" to a designated foreign terrorist organization is unlawful.   Accordingly, we hold that the amended version of section 2339B comports with the Fifth Amendment's requirement of "personal guilt."

*Mukasey*, 552 F.3d at 926 (internal quotations omitted).

Like the Defendants here, the plaintiffs in *Mukasey* relied on *Scales* for the proposition that specific intent is necessary to satisfy the personal guilt requirement.   Both the *Mukasey* court and the *Holder* court found that *Scales* was distinguishable from the § 2339B cases before them because the statute at issue in *Scales* prohibited mere membership in a group advocating violent overthrow of the government.   Section 2339B, on the other hand, prohibits the contribution of material support to a terrorist organization with knowledge of the organization's nature.

This Court finds Defendants' constitutional arguments unpersuasive.   The lack of specific intent does not violate the Fifth Amendment personal guilt requirement.

2.      *Knowledge Requirement*

Defendants contend that in addition to knowledge that the organization engages in terrorist activity, the ATA requires a defendant to know that the organization targets Americans.  Asserting the Eleventh Circuit knowledge standard in the criminal context, they argue that Plaintiffs had to plead that Defendants had actual knowledge or were deliberately indifferent to the organization's targeting of terrorists.

Following the Supreme Court's decision in *Holder*, it is apparent that the only knowledge necessary to state a claim under § 2339B is the knowledge explicitly delineated in the statute, i.e., that the organization is a designated terrorist organization, that it engages in terrorist activity, or that it engages in terrorism.  The only case to which Defendants cite to support their assertion is *Abecassis v. Wyatt*, 704 F.Supp.2d 623, (S.D. Texas 2010).  Aside from the fact that a Southern District of Texas case has no binding effect on this Court, the *Abecassis* court was interpreting § 2339B before it was amended in 2004 to clarify the knowledge requirement.  *Id.* at 29, n. 23.  There is no basis, therefore, for Defendants assertions regarding the level of knowledge required.

3.      *Material Support Requirement*

The term "material support or resources" is clearly defined by § 2339A(b)(1), as noted above.  Defendants argue that section fails to define the term "material."  This is simply not the case.  The word material is included in the subsection.  If "material" were not intended to be defined by that subsection, Congress would have simply left out that word.

Plaintiffs have alleged that Defendants provided material support including "substantial monetary payments, a diesel generator, computer and printer, food, medical, nursing and dental services, radios, weapons and ammunition, transportation services for FARC terrorists via helicopter, and aerial surveillance flights to confirm that FARC camps were safely hidden from the Colombian Air Force or US counter narcotics surveillance flights above." Dkt. 73, ¶ 102 and 171.  These allegations are sufficient.

C.     *Appearance of an Intent to Intimidate or Coerce a Civilian Population or Affect the Conduct of a Government*

"To constitute an act of terrorism, an act dangerous to human life and violative of U.S. criminal law must also 'appear to be intended' to do one of three things: 'intimidate or coerce a civilian population'; 'influence the policy of a government by intimidation or coercion'; or 'affect the conduct of a government by mass destruction, assassination, or kidnaping.'" *Wultz*, 2010 WL 4228350 at *33 (citing 18 U.S.C. § 2331(1)(B).  This element must be analyzed "as a matter of external appearance" and not as a matter of subjective intent.  *Boim III*, 549 F.3d at 699.

Plaintiffs fail to sufficiently allege this element of their claims.  Plaintiffs simply state, in conclusory fashion, that Defendants actions appear to be intended to achieve any of the enumerated results.  Plaintiffs' factual allegations, however, contradict that assertion. Specifically, Plaintiffs allege Defendants made payments to the FARC "in exchange for the FARC's agreement to allow [Defendants] to conduct [their] oil exploration activities without fear of terrorist acts." Dkt. 73, ¶¶ 50, 99, 168.  This allegation would not lead an objective

observer to conclude Defendants intended to achieve any one of the results listed in §
2331(1)(B).  Because Plaintiffs fail to adequately plead this required element, the Fourth
Amended Complaint must be dismissed.  The Court will allow Plaintiffs to amend the
complaint as to this element if they have a good faith belief that there are facts which support
the claim.

D.      Causation

        Causation under the § 2333(a) requires a showing that a plaintiffs injuries occurred
"by reason of" an act of international terrorism.  "The words 'by reason of' have been
interpreted to express Congress's intent to require a showing of proximate causation."[5]
*Goldberg*, 660 F.Supp.2d at 429 (*citing Holmes v. Securities Investor Protection Corp.*, 503
U.S. 258, 265-68 (1992)).  "If a reasonably prudent person could foresee that a harm like the
one that the plaintiff suffered might result from his or her actions, then there is proximate
causation."  *Zivojinovich v. Barner*, 525 F.3d 1059, 1069 (11th Cir. 2008).  Moreover,
"Congress intended [the ATA] provisions to impose liability on any point along the causal
chain of terrorism."  *In re Chiquita Brands Intern., Inc. Alien Tort Statute and Shareholder
Derivative Litigation*, 690 F.Supp.2d 1296, 1314 (S.D.Fla. 2010) (internal quotations
omitted).

---

        [5] Defendants have suggested that the Court adopt a "but for" causation requirement.
However, the Court is unaware of, and Defendants fail to point to, any ATA case in which such
strict causation is required.  In fact, many courts considering the ATA have definitively held that but
for causation is not required.  *See Weiss*, 453 F.Supp.2d at 631; *Boim III*, 549 F.3d 695-697; *In re
Chiquita Brands Intern., Inc.*, 690 F.Supp.2d 1296, 1313 -1315 (S.D.Fla.,2010).

Defendants argue that the claims should be dismissed for lack of proximate cause for multiple reasons.  First, Defendants first provision of material support is alleged to be in 2006, at least two years after Plaintiffs were captured by the FARC.  But Plaintiffs assert that they seek relief only for injuries that resulted from Defendants' conduct during the time period between Defendants' first contribution in 2006 and Plaintiffs' ultimate release on July 2, 2008.  Plaintiffs claim relief for their continued captivity.  At trial, Plaintiffs claims for damages will be limited to that specific time period.

Defendants next argue Plaintiffs have not pled facts which demonstrate that Defendants' support was a substantial factor in Plaintiffs continued detention.  Like the court in *Chiquita*, this Court rejects Defendants' argument that their contributions to the FARC were minimal due to FARC's vast resources.  *Chiquita*, 690 F. Supp.2d at 1315.  Defendants allegedly contributed monetary support and various supplies and services to the FARC.  "Plaintiffs have alleged sufficient facts from which a reasonable trier of fact could conclude that [Defendants'] actions of providing material support to FARC would fund some of FARC's terrorist activities, including the kidnaping and murders of Americans."  *Id.*; *See also Boim III*, 549 F.3d at 698 (holding that a donor who contributed $1,000 to a terrorist organization would be liable "because the knowing contributors as a whole would have significantly enhanced the risk of terrorist acts and thus the probability that the plaintiff's decedent would be a victim.").

Finally, Defendants argue Plaintiffs' injuries were not a reasonably foreseeable result of Defendants' actions.  Assuming Defendants were aware of the FARC's nature as a

terrorist organization as alleged, it is implausible that Defendants could not reasonably foresee that their contributions would be used to fund terrorist acts, including the continued captivity of any hostages being held by the FARC.  *See Boim III*, 549 F.3d at 698.

As Plaintiffs state in the Complaint, the FARC was only willing to release Plaintiffs in exchange for concessions from the Colombian government or the release of FARC members being held in the United States.  But, based on the allegations in the Complaint, the Defendants' contributions potentially allowed the FARC to continue their operations longer than they may have been able without such support.  Whether this allegation is true is an issue for the fact finder.  Plaintiffs have therefore sufficiently alleged proximate causation.

## V.    Act of War Exception to the ATA

The ATA prohibits claims for injuries or losses by acts of war.  18 U.S.C. § 2336(a).  Under the statute, "the term 'act of war' means any act occurring in the course of -- (A) declared war; (B) armed conflict, whether or not war has been declared, between two or more nations; or (C) armed conflict between military forces of any origin."   18 U.S.C. § 2331(4)(c).  The only definition that could apply in these circumstances is an armed conflict between military forces of any origin.

The issue here is whether a designated terrorist organization can constitute a "military force" for ATA purposes.  At least two courts have found as a matter of law that designated terrorist organizations cannot be a military force under the ATA.  *See Weiss v. Arab Bank, PLC*, 2007 WL 4565060 (E.D.N.Y. 2007); *Morris v. Khadr*, 415 F.Supp.2d 1323 (D.Utah

2006). These courts found appreciable differences between military forces and terrorist forces. *Weiss*, 2007 WL 4565060 at *4-6. The *Morris* court stated:

> There are undoubtedly differences between military forces and terrorists. A conventional dictionary definition of "military" is "armed forces" or the persons serving in them. "Armed forces," in turn, are "the combined military, naval, and air forces of a nation." In contrast, "terrorism" is conventionally defined as "the systematic use of terror especially as a means of coercion." "Terror" itself is defined as "violent or destructive acts (as bombing) committed by groups in order to intimidate a population or government into granting their demands."

*Morris*, 415 F.Supp.2d at 1334 (internal citations omitted).

The *Weiss* court also noted the legislative history of the ATA suggests that terrorist organizations should not be considered military forces. The House and Senate Reports express the intention of the act of war exclusion is to "bar actions for injuries that result from military action by recognized governments as opposed to terrorists, even though governments also sometimes target civilian populations." *Weiss*, 2007 WL 4565060 at *5 (citing H.R.Rep. No. 102-1040 at 7 (1992); S. Rep. 102-342 at 46 (1992)).

This Court agrees with the conclusions of the *Morris* and *Weiss* courts. To find that a terrorist organization can be a military force under the ATA would defeat the purpose of the Act, "which was enacted to deter terrorist activity and hold liable those who engage in it." *Weiss*, 2007 WL 4565060 at *6. Therefore, the FARC cannot be considered a military force of any origin. And the act of war exclusion cannot apply here.

It is therefore ORDERED AND ADJUDGED that:

1.      The Court defers ruling on Defendants' Motion to Dismiss (Dkt. 82).

2.      The stay is lifted as to personal jurisdictional discovery over the BGP Parent.

Plaintiffs have ninety (90) days to conduct such discovery, including discovery related to the

claim of alter ego.  At the end of the discovery period, Plaintiffs may seek to amend the

complaint, failing which the Court will rule on the motion as it stands.

**DONE** and **ORDERED** in Tampa, Florida on March 31, 2011.

JAMES S. MOODY, JR.
UNITED STATES DISTRICT JUDGE

**Copies furnished to:**
Counsel/Parties of Record

S:\Odd\2009\09-cv-2501.mtd 82.frm