**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF FLORIDA**
**TAMPA DIVISION**

**KEITH STANSELL,**
**MARC GONSALVES, and**
**THOMAS HOWES,**

     **Plaintiffs,**

**v.**             **CASE NO. 8:09-CV-2501-JSM-AEP**

**BGP, INC., CHINA NATIONAL**
**PETROLEUM CORPORATION, BGP**
**INTERNATIONAL, INC.,**
**BGP AMERICAS, INC.,**


     **Defendants.**
_____/

**DEFENDANTS' MOTION FOR RECONSIDERATION, FOR PROTECTIVE**
**ORDER, TO QUASH SUBPOENAS DUCES TECUM AND FOR ORAL HEARING**
**SUBJECT TO DEFENDANTS' MOTION TO DISMISS**

   Defendants BGP, Inc., BGP International, Inc., and BGP Americas, Inc. (collectively

"Defendants") file this Motion for Reconsideration, for Protective Order, to Quash

Subpoenas Duces Tecum and for Oral Hearing Subject to Defendant's Motion to Dismiss

("Motion for Reconsideration and Protection") and move this Court, pursuant to Federal Rule

of Civil Procedure 26(c), to strike the abusive discovery propounded by Plaintiffs.  In its

order [Dkt. 94] on Defendants' Motion to Dismiss, the Court lifted the stay on discovery to

permit Plaintiffs limited discovery as to personal jurisdiction over the BGP Parent, including

discovery related to Plaintiffs' alter ego claim.  In response to the limited lifting of the stay,

Plaintiffs have propounded 517 separate requests for production and 755 requests for

admission on Defendants,[1] most of which are well beyond the limited scope ordered by this Court and are abusive, unreasonable, unduly burdensome, overbroad, intended to harass, and ridiculous, as discussed in detail below.  Plaintiffs have issued twenty-one subpoenas duces tecum on non-parties seeking 359 different categories of documents, including privileged documents from various law firms which may have provided counsel to BGP, Inc. and abusive, over-broad requests to the non-parties.  Because Plaintiffs have, once again, sought to abuse the discovery process, this time in an even more egregious way in light of this Court's limited lifting of the stay, Defendants request that Plaintiffs' discovery be stricken. As grounds for their Motion for Reconsideration and Protection, Defendants show the Court the following:

## Introduction

1.     On March 31, 2011, this Court issued its order on Defendants' Motion to Dismiss.  The Court deferred its ruling on the Motion to Dismiss and lifted the stay "as to personal jurisdiction discovery over the BGP Parent . . . including discovery related to the claim of alter ego."  In the Order, the Court found, among other things, that it did not have personal jurisdiction over BGP, Inc.  The Court specifically indicated that "[t]he majority of Plaintiffs' jurisdictional allegations are based on inferences that seem to be overreaching." Order [Dkt. 94], p. 9.  The Court further found that Plaintiffs' alter ego allegations were not supported, but noted that Plaintiffs' initial discovery attempts had been stayed.  The Court indicated that Plaintiffs could conduct "limited jurisdictional discovery for a period of 90

---

[1] By comparison, when Plaintiffs previously sought discovery on an "unlimited" basis, they sought 376 separate requests for production and 495 requests for admissions.

days[,] . . . . including discovery on their alter ego claim." *Id.* at 10.

2.     In response, Plaintiffs have propounded 517 separate requests for production upon Defendants, requesting that three separate corporate entities collect, review, and produce all responsive documents—many of which are in Chinese or other foreign languages and located in China, the United States, and other countries—within 30 days.  Plaintiffs have propounded 755 requests for admissions upon Defendants.  Specifically, on April 11, 2011, Plaintiffs served: (1) Plaintiffs' Third Request to Produce to Defendant BGP, Inc., attached as Exhibit A, which consists of 171 separate requests; and (2) Plaintiffs' Second Request for Admissions to Defendant BGP, Inc., attached as Exhibit B, which consists of 380 separate requests.  On April 12, 2011, Plaintiffs served: (1) Plaintiffs' Second Request for Admissions to Defendant BGP International, Inc., attached as Exhibit C, which consists of 224 separate requests; and (2) Plaintiffs' Second Request for Admissions to Defendant BGP Americas, Inc., attached as Exhibit D, which consists of 151 separate requests.  On April 13, 2011, Plaintiffs served: (1) Plaintiffs' Second Request to Produce to Defendant BGP International, Inc., attached as Exhibit E, which consists of 173 separate requests; and (2) Plaintiffs' Second Request to Produce to Defendant BGP Americas, Inc., attached as Exhibit F, which consists of 173 separate requests.  On April 5, 7, 8, and 13, 2011, Plaintiffs also issued twenty-one subpoenas duces tecum to non-parties requesting 359 different categories of documents.  The subpoenas are attached as Exhibit G.

3.     Plaintiffs' Requests for Production and Requests for Admission (collectively, the "Discovery Requests") are not limited to jurisdictional discovery; rather, they include many requests directed at the merits of this dispute.  The Discovery Requests are also rife

with abusive, overly broad, vague, unduly burdensome and expensive, irrelevant, and objectionable requests, as described in more detail below.  The twenty-one subpoenas duces tecum issued to non-parties (the "Third-Party Subpoenas") are likewise overly broad and unduly burdensome.

**Discussion**

I.   **This Court Should Not Allow Jurisdictional Discovery Because Plaintiffs Have Failed to First Establish a *Prima Facie* Case of Jurisdiction Over BGP, Inc.**

4.   Defendants respectfully request that the Court reconsider its March 31st Order granting Plaintiffs limited jurisdictional discovery because Plaintiffs have failed to first establish a *prima facie* case of jurisdiction over BGP, Inc.  Although the Eleventh Circuit has recognized that a qualified right to jurisdictional discovery exists, a plaintiff is not entitled to jurisdictional discovery unless he first establishes a *prima facie* case of jurisdiction over the defendant in his complaint.  *See Butler v. Sukhoi Co.*, 579 F.3d 1307, 1314 (11th Cir. 2009) (holding that the "district court abused its discretion in allowing the case to proceed and granting discovery on the jurisdictional issue" when "the complaint was insufficient as a matter of law to establish a *prima facie* case that the district court had jurisdiction"); *Janzini v. Nissan Motor Co., Ltd.*, 148 F.3d 181, 185-86 (2d Cir. 1998) (holding that district court did not err in denying jurisdictional discovery where plaintiffs did not establish a *prima facie* showing of jurisdiction over a foreign corporation); *Cent. States v. Reimer Express World Corp.*, 230 F.3d 934, 946-47 (7th Cir. 2000) (holding that district court did not abuse its discretion in denying jurisdictional discovery where evidence was insufficient to show a colorable basis for jurisdiction).  A *prima facie* case of jurisdiction is only established "if the plaintiff presents enough evidence to withstand a motion for directed verdict."  *Madara v.*

*Hall*, 916 F.2d 1510, 1514 (11th Cir. 1990).

5.      The Second Circuit has noted the importance of requiring plaintiffs to meet

the *prima facie* case in cases against foreign defendants:

> We recognize that without discovery it may be extremely difficult for
> plaintiffs in the Jazinis' situation to make a *prima facie* showing of jurisdiction
> over a foreign corporation that they seek to sue in the federal courts in New
> York.    That, however, is the consequence of the problems inherent in
> attempting to sue a foreign corporation that has carefully structured its
> business so as to separate itself from the operation of its wholly-owned
> subsidiaries in the United States—as it properly may do.  The rules governing
> establishment of jurisdiction over such a foreign corporation are clear and
> settled, and it would be inappropriate for us to deviate from them or to create
> an exception to them because of the problems plaintiffs may have in meeting
> their somewhat strict standards.

*Jazini*, 148 F.3d at 185.

6.      As determined by this Court in its March 31st Order, Plaintiffs' allegations of

jurisdiction against BGP, Inc. are "overreaching," "conclusory," "unsupported by facts," and

"not enough to support general jurisdiction."  Order [Dkt. 94] at pp. 9-10.  Allowing the

Plaintiffs to proceed with jurisdictional discovery will subject BGP, Inc., a foreign litigant

over which this Court does not have jurisdiction, to an extensive, costly, and burdensome

undertaking.    Furthermore, as discussed more fully below, Plaintiffs have already taken

advantage of the Court's grant of limited jurisdictional discovery by propounding harassing

and unduly burdensome requests.  Because Plaintiffs' have failed to establish a *prima facie*

case of jurisdiction of BGP, Inc., they should not be allowed to conduct jurisdictional

discovery.

## II.      This Court Should Grant a Protective Order Forbidding Plaintiffs' Discovery Requests

7.      Defendants seek protection from Plaintiffs' Discovery Requests because (1)

the requests are not limited to jurisdictional discovery, in contravention of this Court's March 31, 2011 Order and (2) they are abusive, overly broad, vague, unduly burdensome and expensive, and irrelevant. Rule 26(c)(1)(A) states that the Court may, "for good cause, issue an order to protect a party or person from annoyance, embarrassment, oppression, or undue burden or expense" by "forbidding the [] discovery." FED. R. CIV. P. 26(c)(1)(A). The discovery sought by Plaintiffs is excessive under any analysis. Responses could not be prepared in 30, or even 90 days. The Eleventh Circuit has noted that "[f]iltering out overly burdensome requests before issuing dispositive orders serves many of the same purposes as eliminating nonmeritorious claims for relief that unnecessarily broaden the scope of discovery. To the extent such requests unduly broaden the scope of discovery, rejecting them saves significant costs to the parties, the court, and other litigants." *Chudasama v. Mazda Motor Corp.*, 123 F.3d 1353, 1367 (11th Cir. 1997).

### A.      Plaintiffs Are Not Seeking Limited Jurisdictional Discovery

8.      In its March 31, 2011 Order, this Court allowed "**limited jurisdictional discovery** for a period of 90 days." Order [Dkt. 94], p. 10 (emphasis added). The Court further explained that "[d]uring that time, Plaintiffs may take **discovery regarding jurisdiction**, including discovery related to the alternative alter ego claim." *Id.* (emphasis added). The Court then lifted the stay on discovery "as to **personal jurisdictional discovery over the BGP Parent**." *Id.*, p. 23 (emphasis added).

9.      In flagrant disregard of this Court's clear directive to conduct discovery regarding jurisdiction, rather than the merits of the case, the Discovery Requests contain numerous requests that seek information relevant only to the merits of Plaintiffs' claims. A

non-exhaustive list of impermissible, merit-based discovery is below.

10.    Plaintiffs' Third Request to Produce to Defendant BGP, Inc., attached as Exhibit A, contains the following improper requests:

- Documents reflecting any and all contracts or written agreements you ever had in effect with the ANH in Colombia, including any contract(s) or other business deal(s) resulting from your bids to the ANH identified in Docket Entry 56-29.  *See* Ex. A, Request No. 79.

- Documents reflecting the complete name, job title, business address and nationality, and current residence address for each and every one of your employees, agents and local contract workers who performed the field work in Colombia under the ANH contract(s). *See* Ex. A, Request No. 81.

- Documents reflecting the complete name, job title, business address and nationality, and current residence address for each and every one of your managers or officers who was personally in Colombia and responsible for supervising or overseeing the performance of the work under the ANH contracts in Colombia.  *See* Ex. A, Request No. 82.

- Documents reflecting the complete name, job title, business address and nationality, and current residence address for each and every one of your employees, agents, management, directors, vice-presidents, or officers involved with the response to the two separate kidnappings of BGP's local contract workers and/or helicopter pilot in 2006 in Colombia.  *See* Ex. A, Request No. 83.

- Documents reflecting any planning or safety precautions taken by you in response to the potential threat posed by the FARC to your employees and/or contract workers who were performing the work on the ANH contract(s) in Colombia. *See* Ex. A, Request No. 84.

- Documents reflecting any kidnap and ransom insurance policies you ever applied for or obtained covering employees or contract workers in Colombia. *See* Ex. A, Request No. 85.

- Documents reflecting the complete name, job title, business address and nationality, and current residence address for each and every one of your employees who ever traveled to Colombia or performed work in Colombia from 2005 to 2007. *See* Ex. A, Request No. 86.

- Documents reflecting any and all invoices, statements, or other form of billing records submitted to ANH for payment for work performed in Colombia from 2005 to 2007. *See* Ex. A, Request No. 87.

- Documents reflecting complete payroll records for all employees, agents, subcontractors and contract workers involved with the performing under the ANH contracts. *See* Ex. A, Request No. 88.

- Passports, visas and business travel records for all personnel who entered Colombia with respect to preparing for bidding, submitting the bids or performing under the ANH contracts. *See* Ex. A, Request No. 89.

- Documents reflecting any and all communications between your employees in Colombia from 2005 to 2007 and any other person located or based in the United States. *See* Ex. A, Request No. 90.

- Produce any and all information related to e-mail from 2005 to 2007 originating from or sent to Colombia or the U.S., or any of your workers, employees, contractors, agents, or subsidiaries there, including but not limited to current, backed-up and archived programs, accounts, unified messaging, server-based e-mail, Web-based e-mail, dial-up e-mail, user names and addresses, domain names and addresses, e-mail messages, attachments, manual and automated mailing lists and mailing list addresses. *See* Ex. A, Request No. 99.

- The contract(s) awarded to BGP, INC. in 2005 or 2006 by the ANH for 2D seismic exploration services in the Atrato-San Juan basin in Choco, Colombia. *See* Ex. A, Request No. 170.

11.     Plaintiffs' Second Request for Admissions to BGP, Inc., attached as exhibit B, includes the following improper requests:

- Admit that Plaintiffs' cause of action alleges liability arising from events occurring during the performance of a seismic exploration contract in Colombia in 2006. *See* Ex. B, Request No. 337.

- Admit that BGP, Inc., China National Petroleum Corporation submitted two separate seismic contract bids to the ANH in 2005, one for the Atrato-San

Juan Basin, and the other for the Sinu-San Jacinto basin.  *See* Ex. B, Request No. 340.

- Admit that BGP, Inc., China National Petroleum Corporation was the sole bidder for the ANH Atrato-San Juan basin contract.  *See* Ex. B, Request No. 341.

- Admit that the Atrato-San Juan basin contract area was in the Department of Choco to the south of Colombia's border with Panama and adjacent to the Pacific coast.  *See* Ex. B, Request No. 342.

- Admit that the Sinu-San Jacinto basin contract area was located north of the Colombia-Panama border adjacent to the Caribbean coast.  *See* Ex. B, Request No. 343.

- Admit that the Sinu-San Jacinto basin contract area was not in the Department of Choco.  *See* Ex. B, Request No. 344.

- Admit that BGP, Inc., China National Petroleum Corporation was awarded the ANH contract for the Atrato-San Juan basin.  *See* Ex. B, Request No. 345.

- Admit that BGP, Inc., China National Petroleum Corporation was awarded the ANH contract for the Atrato-San Juan basin in 2005.  *See* Ex. B, Request No. 346.

- Admit that BGP, Inc., China National Petroleum Corporation was awarded the ANH contract for the Atrato-San Juan basin in 2006.  *See* Ex. B, Request No. 347.

- Admit that BGP, Inc., China National Petroleum Corporation employees performed the ANH contract for the Atrato-San Juan basin in 2006. *See* Ex. B, Request No. 348.

- Admit that BGP, Inc., China National Petroleum Corporation started work in Colombia on the ANH contract for the Atrato-San Juan basin in 2005. *See* Ex. B, Request No. 349.

- Admit that BGP, Inc., China National Petroleum Corporation started work in Colombia on the ANH contract for the Atrato-San Juan basin in 2006. *See* Ex. B, Request No. 350.

- Admit that BGP, Inc., China National Petroleum Corporation completed all work in Colombia work on the ANH contract for the Atrato-San Juan basin in 2006. *See* Ex. B, Request No. 351.

- Admit that BGP, Inc., China National Petroleum Corporation completed all work in Colombia work on the ANH contract for the Atrato-San Juan basin in 2007. *See* Ex. B, Request No. 352.

12.   Plaintiffs' Second Request for Admissions to BGP International, Inc., attached as exhibit C, includes the following improper requests:

- Admit that Plaintiffs' cause of action alleges liability arising from events occurring during the performance of a seismic exploration contract in Colombia in 2006. *See* Ex. C, Request No. 185.

- Admit that BGP, Inc., China National Petroleum Corporation submitted two separate seismic contract bids to the ANH in 2005, one for the Atrato-San

Juan basin, and the other for the Sinu-San Jacinto basin. *See* Ex. C, Request No. 188.

- Admit that BGP, Inc., China National Petroleum Corporation was the sole bidder for the ANH Atrato-San Juan basin contract. *See* Ex. C, Request No. 189.

- Admit that the Atrato-San Juan basin contract area was in the Department of Choco to the south of Colombia's border with Panama and adjacent to the Pacific coast. *See* Ex. C, Request No. 190.

- Admit that the Sinu-San Jacinto basin contract area was located north of the Colombia-Panama border adjacent to the Caribbean coast. *See* Ex. C, Request No. 191.

- Admit that the Sinu-San Jacinto basin contract area was not in the Department of Choco. *See* Ex. C, Request No. 192.

- Admit that BGP, Inc., China National Petroleum Corporation was awarded the ANH contract for the Atrato-San Juan basin. *See* Ex. C, Request No. 193.

- Admit that BGP, Inc., China National Petroleum Corporation was awarded the ANH contract for the Atrato-San Juan basin in 2005. *See* Ex. C, Request No. 194.

- Admit that BGP, Inc., China National Petroleum Corporation was awarded the ANH contract for the Atrato-San Juan basin in 2006. *See* Ex. C, Request No. 195.

- Admit that BGP, Inc., China National Petroleum Corporation employees performed the ANH contract for the Atrato-San Juan basin in 2006.  *See* Ex. C, Request No. 196.

- Admit that BGP, Inc., China National Petroleum Corporation started work in Colombia on the ANH contract for the Atrato-San Juan basin in 2005.  *See* Ex. C, Request No. 197.

- Admit that BGP, Inc., China National Petroleum Corporation started work in Colombia on the ANH contract for the Atrato-San Juan basin in 2006.  *See* Ex. C, Request No. 198.

- Admit that BGP, Inc., China National Petroleum Corporation completed all work in Colombia work on the ANH contract for the Atrato-San Juan basin in 2006.  *See* Ex. C, Request No. 199.

- Admit that BGP, Inc., China National Petroleum Corporation completed all work in Colombia work on the ANH contract for the Atrato-San Juan basin in 2007.  *See* Ex. C, Request No. 200.

- Admit that employees of BGP International, Inc. were involved in the bidding on the ANH Atrato-San Juan basin seismic contract in 2005.  *See* Ex. C, Request No. 214.

- Admit that employees of BGP International, Inc. were involved in performing field services in Colombia on the ANH Atrato-San Juan basin seismic contract in 2005.  *See* Ex. C, Request No. 215.

- Admit that employees of BGP International, Inc. were involved in performing seismic data processing or interpretation in the U.S. on the ANH Atrato-San Juan basin seismic contract in 2005.  *See* Ex. C, Request No. 216.

- Admit that employees of BGP International, Inc. were involved in monitoring or supervising performance on the ANH Atrato-San Juan basin seismic contract in 2005.  *See* Ex. C, Request No. 217.

- Admit that employees of BGP International, Inc. were involved in managing the ANH Atrato-San Juan basin seismic contract in 2005.  *See* Ex. C, Request No. 218.

13.    Plaintiffs' Second Request for Admissions to BGP Americas, Inc., attached as exhibit D, includes the following improper requests:

- Admit that Plaintiffs' cause of action alleges liability arising from events occurring during the performance of a seismic exploration contract in Colombia in 2006.  *See* Ex. D, Request No. 119.

- Admit that in 2006 BGP Americas, Inc., was engaged in the provision of seismic exploration services.  *See* Ex. D, Request No. 120.

- Admit that in 2006 BGP Americas, Inc., was engaged in the processing and interpretation of seismic exploration services.  *See* Ex. D, Request No. 121.

- Admit that BGP Americas, Inc., China National Petroleum Corporation submitted two separate seismic contract bids to the ANH in 2005, one for the Atrato-San Juan basin, and the other for the Sinu-San Jacinto basin.  *See* Ex. D, Request No. 122.

- Admit that BGP, Inc., China National Petroleum Corporation was the sole bidder for the ANH Atrato-San Juan basin contract. *See* Ex. D, Request No. 123.

- Admit that the Atrato-San Juan basin contract area was in the Department of Choco to the south of Colombia's border with Panama and adjacent to the Pacific coast. *See* Ex. D, Request No. 124.

- Admit that the Sinu-San Jacinto basin contract area was located north of the Colombia-Panama border adjacent to the Caribbean coast. *See* Ex. D, Request No. 125.

- Admit that the Sinu-San Jacinto basin contract area was not in the Department of Choco. *See* Ex. D, Request No. 126.

- Admit that BGP, Inc., China National Petroleum Corporation was awarded the ANH contract for the Atrato-San Juan basin. *See* Ex. D, Request No. 127.

- Admit that BGP, Inc., China National Petroleum Corporation was awarded the ANH contract for the Atrato-San Juan basin in 2005. *See* Ex. D, Request No. 128.

- Admit that BGP, Inc., China National Petroleum Corporation was awarded the ANH contract for the Atrato-San Juan basin in 2006. *See* Ex. D, Request No. 129.

- Admit that BGP, Inc., China National Petroleum Corporation employees performed the ANH contract for the Atrato-San Juan basin in 2006. *See* Ex. D, Request No. 130.

- Admit that BGP, Inc., China National Petroleum Corporation started work in Colombia on the ANH contract for the Atrato-San Juan basin in 2005. *See* Ex. D, Request No. 131.

- Admit that BGP, Inc., China National Petroleum Corporation started work in Colombia on the ANH contract for the Atrato-San Juan basin in 2006. *See* Ex. D, Request No. 132.

- Admit that BGP, Inc., China National Petroleum Corporation completed all work in Colombia work on the ANH contract for the Atrato-San Juan basin in 2006. *See* Ex. D, Request No. 133.

- Admit that BGP, Inc., China National Petroleum Corporation completed all work in Colombia work on the ANH contract for the Atrato-San Juan basin in 2007. *See* Ex. D, Request No. 134.

- Admit that employees of BGP Americas, Inc. were involved in the bidding on the ANH Atrato-San Juan basin seismic contract in 2005. *See* Ex. D, Request No. 141.

- Admit that employees of BGP Americas, Inc. were involved in performing field services in Colombia on the ANH Atrato-San Juan basin seismic contract in 2005. *See* Ex. D, Request No. 142.

- Admit that employees of BGP Americas, Inc. were involved in performing seismic data processing or interpretation in the U.S. on the ANH Atrato-San Juan basin seismic contract in 2005. *See* Ex. D, Request No. 143.

- Admit that employees of BGP Americas, Inc. were involved in monitoring or supervising performance on the ANH Atrato-San Juan basin seismic contract in 2005.  *See* Ex. D, Request No. 144.

- Admit that employees of BGP Americas, Inc. were involved in managing the ANH Atrato-San Juan basin seismic contract in 2005.Admit that employees of BGP International, Inc. were involved in managing the ANH Atrato-San Juan basin seismic contract in 2005.  *See* Ex. D, Request No. 145.

14.     Plaintiffs' Second Request to Produce to BGP International, Inc., attached as exhibit E, includes the following improper requests:

- Documents reflecting any and all contracts or written agreements you ever had in effect with the ANH in Colombia, including any contract(s) or other business deal(s) resulting from your bids to the ANH identified in Docket Entry 56-29.  *See* Ex. E, Request No. 114.

- Documents reflecting all communications between any BGP International, Inc. directors, officers, managers, employees or representatives related to the ANH contracts in Colombia, including voice, data, text, e-mail.  *See* Ex. E, Request No. 115.

- Documents reflecting the complete name, job title, business address and nationality, and current residence address for each and every one of your directors, officers, managers, employees or representatives, agents and local contract workers who performed the field work in Colombia under the ANH contract(s).  *See* Ex. E, Request No. 116.

- Documents reflecting the complete name, job title, business address and nationality, and current residence address for each and every one of your directors, officers, managers, employees or representatives who was personally in Colombia and responsible for supervising or overseeing the performance of the work under the ANH contracts in Colombia. *See* Ex. E, Request No. 117.

- Documents reflecting the complete name, job title, business address and nationality, and current residence address for each and every one of your employees, agents, management, directors, vice-presidents, or officers involved with the response to the two separate kidnappings of BGP's local contract workers and/or helicopter pilot in 2006 in Colombia. *See* Ex. E, Request No. 118.

- Documents reflecting any planning or safety precautions taken by you in response to the potential threat posed by the FARC to your directors, officers, managers, employees or representatives and/or contract workers who were performing the work on the ANH contract(s) in Colombia. *See* Ex. E, Request No. 119.

- Documents reflecting any kidnap and ransom insurance policies or all risk insurance policies you ever applied for or obtained covering your directors, officers, managers, employees or representatives or contract workers in Colombia. *See* Ex. E, Request No. 120.

- Documents reflecting the complete name, job title, business address and nationality, and current residence address for each and every one of your directors, officers, managers, employees or representatives who ever traveled to Colombia or performed work in Colombia from 2005 to 2007. *See* Ex. E, Request No. 121.

- Documents reflecting any and all invoices, statements, or other form of billing records submitted to ANH for payment for work performed in Colombia from 2005 to 2007. *See* Ex. E, Request No. 122.

- Documents reflecting complete payroll records for all directors, officers, managers, employees or representatives, agents, subcontractors and contract workers involved with the performing under the ANH contracts. *See* Ex. E, Request No. 123.

- Passports, visas and business travel records for all personnel who entered Colombia with respect to preparing for bidding, submitting the bids or performing under the ANH contracts. *See* Ex. E, Request No. 124.

- Documents reflecting any and all communications between your directors, officers, managers, employees or representatives and/or contract workers in Colombia from 2005 to 2007 and any other person located or based in the United States. *See* Ex. E, Request No. 125.

- Documents reflecting or confirming that seismic data was sent from Colombia to the BGP processing center in Houston, TX. *See* Ex. E, Request No. 126.

15.     Plaintiffs' Second Request to Produce to BGP Americas, Inc., attached as

exhibit F, includes the following improper requests:

- Documents reflecting any and all contracts or written agreements you ever had in effect with the ANH in Colombia, including any contract(s) or other business deal(s) resulting from your bids to the ANH identified in Docket Entry 56-29.  *See* Ex. F, Request No. 114.

- Documents reflecting all communications between any BGP Americas directors, officers, managers, employees or representatives related to the ANH contracts in Colombia, including voice, data, text, e-mail.  *See* Ex. F, Request No. 115.

- Documents reflecting the complete name, job title, business address and nationality, and current residence address for each and every one of your directors, officers, managers, employees or representatives, agents and local contract workers who performed the field work in Colombia under the ANH contract(s).  *See* Ex. F, Request No. 116.

- Documents reflecting the complete name, job title, business address and nationality, and current residence address for each and every one of your directors, officers, managers, employees or representatives who was personally in Colombia and responsible for supervising or overseeing the performance of the work under the ANH contracts in Colombia.  *See* Ex. F, Request No. 117.

- Documents reflecting the complete name, job title, business address and nationality, and current residence address for each and every one of your

employees, agents, management, directors, vice-presidents, or officers involved with the response to the two separate kidnappings of BGP's local contract workers and/or helicopter pilot in 2006 in Colombia.  *See* Ex. F, Request No. 118.

- Documents reflecting any planning or safety precautions taken by you in response to the potential threat posed by the FARC to your directors, officers, managers, employees or representatives and/or contract workers who were performing the work on the ANH contract(s) in Colombia.  *See* Ex. F, Request No. 119.

- Documents reflecting any kidnap and ransom insurance policies or all risk insurance policies you ever applied for or obtained covering your directors, officers, managers, employees or representatives or contract workers in Colombia.  *See* Ex. F, Request No. 120.

- Documents reflecting the complete name, job title, business address and nationality, and current residence address for each and every one of your directors, officers, managers, employees or representatives who ever traveled to Colombia or performed work in Colombia from 2005 to 2007.  *See* Ex. F, Request No. 121.

- Documents reflecting any and all invoices, statements, or other form of billing records submitted to ANH for payment for work performed in Colombia from 2005 to 2007.  *See* Ex. F, Request No. 122.

- Documents reflecting complete payroll records for all directors, officers, managers, employees or representatives, agents, subcontractors and contract workers involved with the performing under the ANH contracts.  *See* Ex. F, Request No. 123.

- Passports, visas and business travel records for all personnel who entered Colombia with respect to preparing for bidding, submitting the bids or performing under the ANH contracts.  *See* Ex. F, Request No. 124.

- Documents reflecting any and all communications between your directors, officers, managers, employees or representatives and/or contract workers in Colombia from 2005 to 2007 and any other person located or based in the United States.  *See* Ex. F, Request No. 125.

- Documents reflecting or confirming that seismic data was sent from Colombia to the BGP processing center in Houston, TX.  *See* Ex. F, Request No. 126.

- Produce any and all information related to e-mail from 2005 to 2007 originating from or sent to Colombia or the U.S., or any of your workers, employees, contractors, agents, or subsidiaries there,, including but not limited to current, backed-up and archived programs, accounts, unified messaging, server-based e-mail, Web-based e-mail, dial-up e-mail, user names and addresses, domain names and addresses, e-mail messages, attachments, manual and automated mailing lists and mailing list addresses.  *See* Ex. F, Request No. 133.

16.    These requests clearly exceed the scope of discovery mandated by this Court

in its March 31, 2011 Order.  Defendants should not be forced to remedy Plaintiffs' decision to ignore the Court's Order by sorting through the voluminous requests and determining which are permissible and which are not.  Thus, this Court should issue a protective order under 26(c)(1)(A) forbidding the Discovery Requests.

**B.      A Protective Order Is Warranted Because the Discovery Requests Are Abusive, Unreasonable, Unduly Burdensome, Overly Broad, Inflammatory, Harassing, and Seek Irrelevant Information**

17.      The Discovery Requests that Plaintiffs have propounded are unacceptable because they are clearly abusive, unreasonable, unduly burdensome, overly broad, inflammatory, and intended to harass Defendants and to needlessly increase the cost of this litigation.  This Court should protect Defendants from Plaintiffs' abusive and harassing discovery and should forbid these unreasonable, unduly burdensome, and overbroad Discovery Requests.

**1.      This Court should guard against Plaintiffs' abusive and unfair discovery to a foreign litigants**

18.      In *Societe Nationale Industrielle Aerospatile v. U.S. District Court*, 482 U.S. 522, 543-44 (1987) ("*Aerospatile*"), the United States Supreme Court cautioned district courts to guard against abusive or unfair discovery to foreign litigants in order to respect the sovereignty of states in which the evidence is located.  The Supreme Court recognized that "the process of obtaining evidence in a civil-law jurisdiction is normally conducted by a judicial officer rather than by private attorneys."  *Id.* at 543.  China is such a jurisdiction and its law provides that "no foreign organization or individual may, without the consent of the competent authorities of the People's Republic of China, serve documents or make investigations and collect evidence within the territory of the People's Republic of China."

*See* Law of Civil Procedure of the People's Republic of China, Article 263, English translation available at http://www.china.org.cn/english/government/207339.htm.   Chinese law further provides, "In accordance with the international treaties concluded or acceded to by the People's Republic of China or on the principle of reciprocity, the people's courts of China and foreign courts may request each other's assistance in the service of legal documents, in investigation and collection of evidence or in other litigation acts…. The request for providing of judicial assistance shall be effected through channels provided in the international treaties concluded or acceded to by the People's Republic of China." *Id.*, Articles 262-63.  Both the United States and China are parties to the Hague Convention on the Taking of Evidence Abroad in Civil or Commercial Matters ("Hague Evidence Convention").  *See* Hague Conference on Private International Law Website at www.hcch.net.

19.    Furthermore, China has made an official declaration pursuant to Article 23 of the Hague Evidence Convention requiring any discovery request to be "clearly enumerated ... and of direct and close connection with the subject matter of the litigation."  Thirteen of the seventeen signatory states to the Hague Evidence Convention have made similar declarations under Article 23.  *See Aerospatiale*, 482 U.S. at 537 n.22    Article 23 declarations are intended to specifically prevent the type of fishing expedition the Plaintiffs are attempting in this case.  *See Aerospatiale*, 482 U.S. at 565 n.23 (Blackmun, J., concurring in part) ("An Article 23 reservation and, in fact, the Convention in general require an American court to give closer scrutiny to the evidence requested than is normal in United States, but this is not inconsistent with recent amendments to the Federal Rules of Civil Procedure that provide for

a more active role on the part of the trial judge as a means of limiting discovery abuse.").

20. In *Aerospatiale*, the Supreme Court addressed a federal district court's obligation to employ the Hague Evidence Convention procedures "when litigants seek answers to interrogatories, the production of documents, and admissions from a French adversary over whom the court has personal jurisdiction."  482 U.S. at 524.  The Court determined that a district court should apply the concept of international comity to determine whether the parties must use the Hague Evidence Convention or the Federal Rules of Civil Procedure.  *Id.* at 539-45.  The Court noted that the nature of the concerns that guide the comity analysis are contained in the Restatement of Foreign Relations Law of the United States § 436(1)(c).  *Id.* at 544 & n.28.  In determining whether to allow the use the Federal Rules of Civil Procedure or require the use of the Hague Evidence Convention, a court should consider:

> (1) the importance to the … litigation of the documents and other information requested; (2) the degree of specificity of the request; (3) whether the information originated in the United States; (4) the availability of alternative means of securing the information; and (5) the extent to which noncompliance with the request would undermine important interests of the United States, or compliance with the request would undermine important interests of the state where the information is located.

*Id.*

21.    In performing its analysis, the Court recognized the importance of guarding closely against overly burdensome and abusive discovery to foreign litigants:

> American courts, in supervising pretrial proceedings, should exercise special vigilance to protect foreign litigants from the danger that unnecessary, or unduly burdensome, discovery may place them in a disadvantageous position. Judicial supervision of discovery should always seek to minimize its costs and inconvenience and to prevent improper uses

of discovery requests. When it is necessary to seek evidence abroad, however, the district court must supervise pretrial proceedings particularly closely to prevent discovery abuses. For example, the additional cost of transportation of documents or witnesses to or from foreign locations may increase the danger that discovery may be sought for the improper purpose of motivating settlement, rather than finding relevant and probative evidence. Objections to "abusive" discovery that foreign litigants advance should therefore receive the most careful consideration. In addition, we have long recognized the demands of comity in suits involving foreign states, either as parties or as sovereigns with a coordinate interest in the litigation. See *Hilton v. Guyot,* 159 U.S. 113, 16 S.Ct. 139, 40 L.Ed. 95 (1895). American courts should therefore take care to demonstrate due respect for any special problem confronted by the foreign litigant on account of its nationality or the location of its operations, and for any sovereign interest expressed by a foreign state. We do not articulate specific rules to guide this delicate task of adjudication.

*Id.* at 546.  The Court also explained how to evaluate the propounded discovery:

Some discovery procedures are much more "intrusive" than others. In this case, for example, an interrogatory asking petitioners to identify the pilots who flew flight tests in the Rallye before it was certified for flight by the Federal Aviation Administration, or a request to admit that petitioners authorized certain advertising in a particular magazine, is certainly less intrusive than a request to produce all of the "design specifications, line drawings and engineering plans and all engineering change orders and plans and all drawings concerning the leading edge slats for the Rallye type aircraft manufactured by the Defendants." Even if a court might be persuaded that a particular document request was too burdensome or too "intrusive" to be granted in full, with or without an appropriate protective order, it might well refuse to insist upon the use of Convention procedures before requiring responses to simple interrogatories or requests for admissions. The exact line between reasonableness and unreasonableness in each case must be drawn by the trial court, based on its knowledge of the case and of the claims and interests of the parties and the governments whose statutes and policies they invoke.

*Id.* at 545-46.

22.    Importantly, the Court in *Aerospatiale* warned against the dangers of unduly burdensome discovery propounded to a foreign litigant even when that foreign litigant was subject to the personal jurisdiction of the United States courts.  This Court should be even

more vigilant to protect the foreign litigant against abusive discovery in this case because BGP, Inc. is not currently subject to the personal jurisdiction of the United States courts. The Supreme Court has not yet determined the applicability of its *Aerospatiale* decision to jurisdictional discovery when the forum court does not have personal jurisdiction over the foreign litigation. However, as discussed in paragraph 4 above, the Eleventh Circuit in *Butler* held that a plaintiff must first establish a *prima facie* case of jurisdiction before he is entitled to jurisdictional discovery. *See* 539 F.3d at 1314.

23.     Even if this Court permits discovery to proceed, however, Plaintiffs must use the Hague Evidence Convention for discovery propounded on BGP, Inc. *See Knight v. Ford Motor Co.*, 615 A.2d 297, 301-02 (N.J. Super. Ct. Law Div. 1992) (holding that the Hague Evidence Convention is the only procedure to use when conducting jurisdictional discovery); *Geo-Culture, Inc. v. Siam Inv. Mgmt.*, 936 P.2d 1063, 1067 (Or. Ct. App. 1997) (upholding the trial court's application of the Hague Evidence Convention to conduct jurisdictional discovery because the plaintiff's complaint failed to allege a prima facie basis for asserting personal jurisdiction); *Jenco v. Martech Int'l, Inc.*, No. 86-4229, 1988 WL 54733, at *1 (E.D. La. May 19, 1988) (applying the *Aerospatiale* balancing test to jurisdictional discovery, but determining that the Hague Evidence Convention was required because "the interests of protecting a foreign litigant in light of the jurisdictional problems are paramount").[2]

---

[2] Although some lower courts have applied the *Aerospatiale* balancing test to jurisdictional discovery and allowed discovery to proceed under the Federal Rules of Civil Procedure, they noted that the jurisdictional discovery was not intrusive "[b]ecause plaintiffs have pared their discovery requests to *ten* interrogatories limited to the issue of personal jurisdiction." *Rich v. KIS Cal., Inc.*, 121 F.R.D. 254, 257 (M.D.N.C. 1988) (emphasis added); *see also Milliken & Co. v. Bank of China*, __ F. Supp. 2d ____, 2010 WL 5187744, at *7 (M.D.N.C. 1988) (noting that the plaintiff asked the foreign litigant to produce a specific, discrete source of information, propounding only *five* interrogatories and *eight* individual document requests) (emphasis added);

Therefore, in the event this Court allows Plaintiffs' jurisdictional discovery to proceed, the Court should require Plaintiffs to use the Hague Evidence Convention when attempting to propound discovery on BGP, Inc.

24.     Below are examples of abusive, inflammatory, harassing, overly broad, and irrelevant discovery requests propounded on Chinese Parent BGP, Inc.

25.     Plaintiffs' Third Request to Produce to BGP, Inc., attached as exhibit A, includes the following improper, impermissible requests:

- Your minutes of corporate meetings or other memorializations thereof for 2005 to 2009.  *See* Ex. A, Request No. 2.

- Documents reflecting the planning, specifications, construction, renovation, conversion, build out, equipping or staffing for the BGP Training Center in Houston, TX.  *See* Ex. A, Request No. 17.

- Documents reflecting the complete names and addresses for any architect, engineer, consultant, general contractor, subcontractor, realtor or broker involved with any aspect of the planning, development, construction or acquisition of the BGP Training Center in Houston, TX.  *See* Ex. A, Request No. 22.

---

*In re Bedford Computer Corp.*, 114 B.R. 2, 6 (Bankr. D.N.H. 1990) ("All of the reasoning and factors for decision of *Rich* apply to this case except that the totality of discovery sought in this case is too extensive, unnecessary and intrusive.  It is far more than ten interrogatories and primarily relates to issues not relevant at this time.").  By contrast, the plaintiffs in this case have propounded 171 document requests and 380 requests for admission upon BGP, Inc.

- Documents reflecting any U.S. lawyers or U.S. law firms you have hired or retained in from 2005 to 2009, including billing and payment records. *See* Ex. A, Request No. 27.

- Documents reflecting the complete names, job titles, travel documents and visas, and travel itineraries for all BGP, Inc. employees who have traveled to the United States for the annual SEG meetings for the past 10 years. *See* Ex. A, Request No. 39.

- Documents reflecting the number of papers or presentations made by you or your employees at the SEG Annual Meetings in the United States for the past 10 years. *See* Ex. A, Request No. 42.

- Documents reflecting your corporate organizational chart(s), including chain of command, executives and managerial oversight responsibilities, regions, divisions, departments, management and supervision from 2005 to 2009. *See* Ex. A, Request No. 46.

- Documents reflecting the names of all the Regional Managers you have had for the past 10 years, including the name of each Region and the years each manager held the position. *See* Ex. A, Request No. 49.

- Documents reflecting the names and job titles of your officers and directors, including vice-presidents, for the past 10 years and the years each officer or director held that position. *See* Ex. A, Request No. 50.

- Complete personnel files for your employee(s) who held the position of Regional Manager Americas from 2005 to 2009. *See* Ex. A, Request No. 77.

- Documents describing your business record keeping and document retention and destruction policies and procedures generally from 2005 to 2009. *See* Ex. A, Request No. 93.

- Documents reflecting the details of the hardware and software systems used for your electronic data storage, archive & retrieval systems from 2005 to 2009. *See* Ex. A, Request No. 94.

- Documents reflecting minutes of corporate meetings, resolutions or other corporate decision from 2005 to 2009 that contain any references preserving or preventing spoliation of potential evidence. *See* Ex. A, Request No. 95.

- Documents identifying any documents destroyed or electronic files that have been deleted from the magnetic or optical storage media or overwritten from 2005 to 2009, and the dates of destruction or overwriting. *See* Ex. A, Request No. 96.

- Documents reflecting the location or disposition of the storage of data generated by the users of your computers from 2005 to 2009, including e-mail communications and word-processed files, including whether the data are backed up on tape or other media, how many such media currently exist with backup data on them, the maximum storage size in megabytes for each such media, the brand name for each such media, the last time each such media was backed up with data, what was the computer or other hardware for each such backup, and the physical location and current user of each computer or other hardware listed. *See* Ex. A, Request No. 97.

- Any and all contracts held by you, or related to your provision or receipt of goods or services in or related to Cuba, Iran, Myanmar (Burma), North Korea, Syria and Sudan, and any other government, country or person or entity, including such persons and entities that are identified on the List of Specially Designated Nationals and Blocked Persons (" SDNs "), that is the target of U.S. economic sanctions administered by the U.S. Treasury Department's Office of Foreign Assets Control (" OFAC "), which contracts were specifically excluded from the assets to be transferred by BGP, Inc. to the Joint Venture with ION Geophysical, as specifically identified as excluded from the "California [BGP, Inc.] Transferred Assets" in ION's 10-K filed March 1, 2010, Exhibit 10.52, ¶ 3.1(b)(vi).  *See* Ex. A, Request No. 100.

- The contracts held by BGP, Inc., or related to its provision or receipt of goods or services in or related to Cuba, Iran, Myanmar (Burma), North Korea, Syria and Sudan, and any other government, country or person or entity, including such persons and entities that are identified on the List of Specially Designated Nationals and Blocked Persons (" SDNs "), that is the target of U.S. economic sanctions administered by the U.S. Treasury Department's Office of Foreign Assets Control (" OFAC "), which contracts were specifically excluded from the assets to be transferred by BGP, Inc. to the Joint Venture with ION Geophysical, as specifically identified as excluded from the "California [BGP, Inc.] Transferred Assets" in ION's 10-K filed

March 1, 2010, Exhibit 10.52, ¶ 3.1(b)(vi) and in your October 23, 2009 Term Sheet.  *See* Ex. A, Request No. 114.

- Any communication on the letterhead of BGP, Inc., BGP Americas, Inc. and BGP International, Inc. received prior to December 10, 2009 and demonstrating the method of transmission or receipt.  *See* Ex. A, Request No. 119.

- Any communication received from BGP, Inc., BGP Americas, Inc., and BGP International, Inc. from a U.S. telefax number or phone number before December 10, 2009.  *See* Ex. A, Request No. 120.

- Any email received from BGP, Inc., BGP International, Inc., and BGP, Americas, Inc. related to the joint venture.  *See* Ex. A, Request No. 121.

- Documents showing the position and title of all managers, directors, vice presidents, and/or officers of BGP, Inc. from 2005-2010.  *See* Ex. A, Request No. 127.

- Documents showing any licenses issued from any State in the United States, or agency or division of any State in the United States to your employees, directors, officers, vice-presidents, managers, agents, or representatives.  *See* Ex. A, Request No. 133.

- Copies of civil lawsuits in any jurisdiction in which BGP, Inc., or any of its U.S. subsidiaries was a party.  *See* Ex. A, Request No. 134.

- BGP, Inc.'s consolidated financial statements for 2005 to 2009, including all notes, exhibits and schedules thereto.  *See* Ex. A, Request No. 139.

- BGP, INC.'s balance sheets for 2005 to 2009, including all notes, exhibits and schedules thereto.  *See* Ex. A, Request No. 140.

- BGP, INC.'s profit and loss statements for 2005 to 2009, including all notes, exhibits and schedules thereto, and including details by division or region. *See* Ex. A, Request No. 141.

- An archive or back up copy of the http://www.bgp.com.cn website, including all subpages thereto, in existence from 2005 to 2009.  *See* Ex. A, Request No. 158.

- BGP, Inc.'s tax returns in the PRC for 2005 to 2009.  *See* Ex. A, Request No. 167.

- BGP, Inc.'s complete audited financial statements from 2005 to 2009.  *See* Ex. A, Request No. 168.

- All e-mail communications from 2005 to 2009 between employees of BGP International, the international business division of BGP, Inc., and BGP International, Inc.  *See* Ex. A, Request No. 169.

26.    Plaintiffs' Second Request for Admissions to Defendant BGP, Inc. attached as exhibit B, includes the following improper requests:

- Admit that for some time between 2005 to 2009, BGP International, the international business division of BGP, Inc., China National Petroleum Corporation, had business dealings in Myanmar, also known as Burma.  *See* Ex. B, Request No. 115.

- Admit that for some time between 2005 to 2009, BGP International, the international business division of BGP, Inc., China National Petroleum Corporation, had business dealings in Iran.  *See* Ex. B, Request No. 116.

- Admit that for some time between 2005 to 2009, BGP International, the international business division of BGP, Inc., China National Petroleum Corporation, had business dealings in Sudan.  *See* Ex. B, Request No. 117.

- Admit that for some time between 2005 to 2009, BGP International, the international business division of BGP, Inc., China National Petroleum Corporation, had business dealings in North Korea.  *See* Ex. B, Request No. 118.

- Admit that for some time between 2005 to 2009, BGP International, the international business division of BGP, Inc., China National Petroleum Corporation, had business dealings in Libya.  *See* Ex. B, Request No. 119.

- Admit that for some time between 2005 to 2009, BGP International, the international business division of BGP, Inc., China National Petroleum Corporation, had business dealings in Cuba.  *See* Ex. B, Request No. 120.

- Admit that in 1996 when BGP International, Inc. was incorporated, the Bureau of Geophysical Prospecting had business dealings in one or more countries which were designated as a state sponsor of terrorism by the Secretary of State for the U.S.  *See* Ex. B, Request No. 121.

- Admit that in 1996 when BGP International, Inc. was incorporated, the Bureau of Geophysical Prospecting had business dealings in one or more

countries which were subject to sanctions by the United States under Executive Order of the President. *See* Ex. B, Request No. 122.

- Admit that you hold a contract to provide goods or services in Cuba, or are engaged in providing goods or services there. *See* Ex. B, Request No. 125.

- Admit that in the past 5 years you have previously held a contract to provide goods or services in Cuba, or were engaged in the provision of goods or services there. *See* Ex. B, Request No. 126.

- Admit that you hold a contract to provide goods or services in Iran, or are engaged in providing goods or services there. *See* Ex. B, Request No. 127.

- Admit that in the past 5 years you have previously held a contract to provide goods or services in Iran, or were engaged in the provision of goods or services there. *See* Ex. B, Request No. 128.

- Admit that you hold a contract to provide goods or services in Myanmar (Burma), or are engaged in providing goods or services there. *See* Ex. B, Request No. 129.

- Admit that in the past 5 years you have previously held a contract to provide goods or services in Myanmar (Burma), or were engaged in the provision of goods or services there. *See* Ex. B, Request No. 130.

- Admit that you hold a contract to provide goods or services in North Korea, or are engaged in providing goods or services there. *See* Ex. B, Request No. 131.

- Admit that in the past 5 years you have previously held a contract to provide goods or services in North Korea, or were engaged in the provision of goods or services there. *See* Ex. B, Request No. 132.

- Admit that you hold a contract to provide goods or services in Syria, or are engaged in providing goods or services there. *See* Ex. B, Request No. 133.

- Admit that in the past 5 years you have previously held a contract to provide goods or services in Syria, or were engaged in the provision of goods or services there. *See* Ex. B, Request No. 134.

- Admit that you hold a contract to provide goods or services in Sudan, or are engaged in providing goods or services there. *See* Ex. B, Request No. 135.

- Admit that in the past 5 years you have previously held a contract to provide goods or services in Sudan, or were engaged in the provision of goods or services there. *See* Ex. B, Request No. 136.

- Admit that you hold a contract to provide goods or services with persons and entities that are identified on the List of Specially Designated Nationals and Blocked Persons ("SDNs"), that is the target of U.S. economic sanctions administered by the U.S. Treasury Department's Office of Foreign Assets Control ("OFAC"), or are engaged in providing goods or services to such person(s) or entity(s). *See* Ex. B, Request No. 137.

- Admit that in the past 5 years you have previously held a contract to provide goods or services with persons and entities that are identified on the List of Specially Designated Nationals and Blocked Persons ("SDNs"), that is the

target of U.S. economic sanctions administered by the U.S. Treasury Department's Office of Foreign Assets Control ("OFAC"), or were engaged in providing goods or services to such person(s) or entity(s).  *See* Ex. B, Request No. 138.

- Admit that any and all contracts held by you, or related to your provision or receipt of goods or services in or related to Cuba, Iran, Myanmar (Burma), North Korea, Syria and Sudan, and any other government, country or person or entity, including such persons and entities that are identified on the List of Specially Designated Nationals and Blocked Persons ("SDNs"), that is the target of U.S. economic sanctions administered by the U.S. Treasury Department's Office of Foreign Assets Control ("OFAC"), were contracts specifically excluded from the assets to be transferred by BGP, Inc. to the Joint Venture with ION Geophysical, as specifically identified as excluded from the "California [BGP, Inc.] Transferred Assets" in ION's 10-K filed March 1, 2010, Exhibit 10.52 ¶ 3.1(b)(vi).  *See* Ex. B, Request No. 139.

   **2.      The Discovery Requests propounded on the U.S. Subsidiary Defendants are equally abusive, unreasonable, unduly burdensome, overly broad, inflammatory, harassing, and seek irrelevant information**

27.     The Discovery Requests propounded on the BGP subsidiaries are equally abusive, unreasonable, unduly burdensome, overly broad, inflammatory, harassing and seek irrelevant information.  A non-exhaustive list of impermissible discovery requests is below.

28.     Plaintiffs' Second Request to Produce to Defendant BGP, International, Inc., attached as exhibit E, includes the following improper, impermissible requests:

- Documents reflecting the names and job titles or positions for all persons employed by BGP International, Inc. from 2005 to 2009.  *See* Ex. E, Request No. 11.

- Policies and procedures of BGP International, Inc. in effect between 2005 to 2009.  *See* Ex. E, Request No. 13.

- Employee codes of conducts of BGP International, Inc. in effect between 2005 to 2009.  *See* Ex. E, Request No. 14.

- Rules and regulations of BGP International, Inc. in effect between 2005 to 2009.  *See* Ex. E, Request No. 15.

- Minimum job qualification requirements for each job title or position of BGP International, Inc. in effect between 2005 to 2009.  *See* Ex. E, Request No. 16.

- Documents reflecting any advertising, marketing, public relations or promotional materials of BGP International, Inc. from 2005 to 2009.  *See* Ex. E, Request No. 19.

- Documents reflecting any contract or agreement to retain the services of any person or entity to assist BGP International, Inc. with advertising, marketing, public relations or promotions.  *See* Ex. E, Request No. 20.

- Monthly account statements, cancelled checks and deposit slips or receipts from April 2004 to December 2009 for BGP International, Inc.'s operating accounts with any bank or financial institution in the U.S.  *See* Ex. E, Request No. 21.

- Monthly account statements, cancelled checks and deposit slips or receipts from April 2004 to December 2009 for BGP International, Inc.'s operating accounts with any bank or financial institution outside the U.S. *See* Ex. E, Request No. 22.

- Documents reflecting communications with any bank or financial institution of BGP International, Inc. identifying all persons or entities authorized to sign checks, transfer funds, debit the account, or access the account records in person or on-line, from 2005 to 2009. *See* Ex. E, Request No. 23.

- Documents identifying the complete name, job title, and address of any personal banking representative, account manager or representative, financial manager or representative, at any financial institution in the U.S. engaged in financial transactions for the benefit of BGP International, Inc. *See* Ex. E, Request No. 24.

- Documents reflecting the name and address of the financial institution, account numbers and names, for any holding accounts, transfer accounts, master accounts, linked accounts, parent accounts, other subsidiary or affiliate accounts, used to deposit, infuse or transfer moneys to BGP International, Inc., or to make payments on behalf of BGP International, Inc. *See* Ex. E, Request No. 25.

- Documents reflecting the name and address of the company or vendor which prepared your employee payroll checks, payroll records, quarterly FICA,

Social Security or tax withholding reports, W-2 or 1099 forms from 2005 to 2009.  *See* Ex. E, Request No. 27.

- Any applications for financing or credit submitted by you, or on your behalf, to any U.S. financial institution, from your incorporation to 2009.  *See* Ex. E, Request No. 28.

- Your customer lists from 2005 to 2009.  *See* Ex. E, Request No. 29. .

- All invoices generated or delivered by you to any person or entity for goods or services provided from 2005 to 2009.  *See* Ex. E, Request No. 30.

- Documents reflecting payment on any of your invoices from 2005 to 2009, including copies of checks, drafts, wire transfer or credit card payments.  *See* Ex. E, Request No. 31.

- Documents reflecting the purchase, lease or acquisition of all your computer servers, workstations, monitors, archive systems or other related computer equipment from 2004 to 2009.  *See* Ex. E, Request No. 32.

- Copies of monthly billing statements from your local telephone, DSL, internet and cellular telephone service providers from 2004 to 2009.  *See* Ex. E, Request No. 33.

- Copies of your electric, water, waste, janitorial or other utility bills from 2004 to 2009.  *See* Ex. E, Request No. 34.

- Records reflecting payment for your computer servers, workstations, monitors, archive systems or other related computer equipment from 2004 to 2009.  *See* Ex. E, Request No. 35.

- Records reflecting payments made to your local telephone, DSL, internet and cellular telephone service providers from 2004 to 2009.  *See* Ex. E, Request No. 36.

- Records reflecting payments made to your electric, water, waste, janitorial or other utility bills from 2004 to 2009.  *See* Ex. E, Request No. 37.

- Any and all daily, weekly, monthly, quarterly and/or annual reports from 2005 to 2009.  *See* Ex. E, Request No. 41.

- Documents related to offices, office space, physical plant and location, phone systems, fax systems, internet, and cable systems of BGP International, Inc. *See* Ex. E, Request No. 52.

- Documents related to billings and payment for rent, lease, electric consumption, phone, fax, cable, internet, and satellite provider, including form of payment such as cancelled checks.  *See* Ex. E, Request No. 53.

- Business identity documents such as business cards, stationary, logos, envelopes, and marketing material for BGP International, Inc. including billings for such goods and services and payment for such goods and services. *See* Ex. E, Request No. 55.

- Documents submitted to you or received from any overseas location related to any business activities of BGP, Inc. or any of its subsidiaries.  *See* Ex. E, Request No. 57.

- Documents reflecting the names, job titles, and dates of all BGP International, Inc. personnel who visited, worked, or trained at the BGP training Center in Houston. *See* Ex. E, Request No. 67.

- Documents reflecting the planning, specifications, construction, renovation, conversion, build out, equipping or staffing for the BGP Training Center in Houston, TX. *See* Ex. E, Request No. 71.

- Documents reflecting the complete names and addresses for any architect, engineer, consultant, general contractor, subcontractor, realtor or broker involved with any aspect of the planning, development, construction or acquisition of the BGP Training Center in Houston, TX. *See* Ex. E, Request No. 76.

- Documents reflecting any U.S. accountants or accounting firms you have hired or retained in from 2005 to 2009, including billing and payment records. *See* Ex. E, Request No. 81.

- Documents reflecting any U.S. insurance brokers or agents, or insurance agencies or brokerages, you have hired or retained in from 2005 to 2009, including billing and payment records. *See* Ex. E, Request No. 82.

- Documents reflecting any U.S. shippers, freight forwarders, vendors, trucking or transportation service providers you have hired or retained in from 2005 to 2009, including billing and payment records, this includes UPS, federal Express, DHL or other equivalent service. *See* Ex. E, Request No. 83.

- Documents reflecting your corporate organizational chart(s), including chain of command, executives and managerial oversight responsibilities, regions, divisions, departments, management and supervision from 2005 to 2009.  *See* Ex. E, Request No. 87.

- Documents reflecting the names of all the Regional Managers you have had in the time period 2005-2009, including the name of each Region and the years each manager held the position.  *See* Ex. E, Request No. 92.

- Documents reflecting the names and job titles of your officers, directors and managers of for 2005-2009 and the years each person held that position.  *See* Ex. E, Request No. 93.

- Documents identifying BGP, Inc. as an insured, additional insured, or loss payee for any insurance policy written in the United States or issued by a U.S. insurance company which were in effect from 2005 to 2009.  *See* Ex. E, Request No. 103.

- Documents reflecting any insurance policies worldwide naming you and BGP, Inc. as an insured, additional insured or loss payee which were in effect from 2005 to 2009.  *See* Ex. E, Request No. 104.

- Documents reflecting any and all U.S. group health insurance plans (either issued by a U.S. insurer or issued for delivery in the U.S.) available to or covering your employees. *See* Ex. E, Request No. 105.

- Complete personnel files including travel records for your employee(s) who held the position of Regional Manager of BGP International, Inc. from 2005 to 2009.  *See* Ex. E, Request No. 112.

- Documents describing your business record keeping and document retention and destruction policies and procedures from 2005 to 2009.  *See* Ex. E, Request No. 127.

- Documents reflecting the details of the hardware and software systems used for your electronic data storage, archive & retrieval systems from 2005 to 2009.  *See* Ex. E, Request No. 128.

- Documents reflecting minutes of corporate meetings, resolutions or other corporate decision from 2005 to 2009 that contain any references preserving or preventing spoliation of potential evidence.  *See* Ex. E, Request No. 129.

- Documents identifying any documents destroyed or electronic files that have been deleted from the magnetic or optical storage media or overwritten from 2005 to 2009, and the dates of destruction or overwriting.  *See* Ex. E, Request No. 130.

- Documents reflecting the location or disposition of the storage of data generated by the users of your computers from 2005 to 2009, including e-mail communications and word-processed files, including whether the data are backed up on tape or other media, how many such media currently exist with backup data on them, the maximum storage size in megabytes for each such media, the brand name for each such media, the last time each such media was

backed up with data, what was the computer or other hardware for each such backup, and the physical location and current user of each computer or other hardware listed.  *See* Ex. E, Request No. 131.

- Documents reflecting the Internet Service Provider (ISP) or satellite service provider used by you for transmission of communications and data from and to overseas locations from 2005 to 2009.  *See* Ex. E, Request No. 132.

- Produce any and all information related to e-mail from 2005 to 2007 originating from or sent to Colombia or the U.S., or any of your workers, employees, contractors, agents, or subsidiaries there,, including but not limited to current, backed-up and archived programs, accounts, unified messaging, server-based e-mail, Web-based e-mail, dial-up e-mail, user names and addresses, domain names and addresses, e-mail messages, attachments, manual and automated mailing lists and mailing list addresses.  *See* Ex. E, Request No. 133.

- Documents showing the position and title of all officers, managers, directors, vice presidents, and/or officers of BGP International, Inc. from 2005-2010.  *See* Ex. E, Request No. 140.

- Communications of any nature to the Bank of China, New York Branch, including related to any financing, arranging credit, guaranteeing capital, bridge loans, equipment purchases, insurance premiums, bonus payments related to BGP International, Inc.  *See* Ex. E, Request No. 141.

- Copies of civil lawsuits in any jurisdiction in which BGP International, Inc. was a party. *See* Ex. E, Request No. 144.

- Copies of sworn declarations, affidavits, or deposition testimony made by any of BGP International, Inc. employees, officers, directors, vice-presidents, managers. *See* Ex. E, Request No. 145.

- Documents reflecting payments made by BGP International, Inc. to SEG, AAPG, or IAGC from 2005 to 2009 for event or reception sponsorship, attendance, or exhibition display space at any convention or trade show. *See* Ex. E, Request No. 152.

- All documents reflecting communications or decisions concerning policies and procedures for BGP International, Inc. in effect from 2005 to 2009. *See* Ex. E, Request No. 154.

- All documents reflecting communications or decisions concerning employee codes of conduct for BGP International, Inc. in effect from 2005 to 2009. *See* Ex. E, Request No. 155.

- All documents reflecting communications or decisions concerning rules and regulations for BGP International, Inc. in effect from 2005 to 2009. *See* Ex. E, Request No. 156.

- All documents reflecting communications or decisions concerning safety requirements for BGP International, Inc. in effect from 2005 to 2009. *See* Ex. E, Request No. 157.

- All documents reflecting communications or decisions from 2005 to 2009 concerning employee job qualification criteria for BGP International, Inc. *See* Ex. E, Request No. 158.

- All documents reflecting communications or decisions from 2005 to 2009 concerning hiring decisions for BGP International, Inc. *See* Ex. E, Request No. 159.

- Complete copies of your state, federal and local income tax returns in the U.S. for 2005 to 2009, including all schedules or exhibits thereto. *See* Ex. E, Request No. 165.

- Documents related to any BGP International, Inc. business activity or performance of any part of overseas contracts or subcontracts where 2D seismic exploration services occurred. *See* Ex. E, Request No. 166.

- All Texas Franchise Tax returns or reports filed by you, or on your behalf, from 2004 to 2009. *See* Ex. E, Request No. 167.

- All Texas Franchise Tax No Tax Due Information Reports 05-163 forms filed by you, or on your behalf, from 2004 to 2009. *See* Ex. E, Request No. 168.

- All Texas Franchise Tax E-Z Computation 05-169 forms filed by you, or on your behalf, from 2004 to 2009. *See* Ex. E, Request No. 169.

- All Texas Franchise Tax Owner Information Reports filed by you, or on your behalf, from 2004 to 2009. *See* Ex. E, Request No. 170.

- All Texas Franchise Tax Long Form 05-158A or 05-158B forms filed by you, or on your behalf, from 2004 to 2009. *See* Ex. E, Request No. 171.

- All W-2s issued by you from 2004 to 2009.  *See* Ex. E, Request No. 172.

- All 1099s issued by you from 2004 to 2009.  *See* Ex. E, Request No. 173.

29.     Plaintiffs' Second Request to Produce to Defendant BGP, Americas, Inc., attached as exhibit F, includes the following improper, impermissible requests:

- Organizational chart(s) for BGP Americas, Inc. from 2005 to 2009, including divisions, departments, territories, supervisory or managerial reporting or chain of command.  *See* Ex. F, Request No. 7.

- Documents reflecting the chain of command within BGP Americas, Inc. from 2005 to 2009.  *See* Ex. F, Request No. 8.

- Documents reflecting the number of persons employed by BGP Americas, Inc. from 2005 to 2009.  *See* Ex. F, Request No. 9.

- Documents reflecting the names and job titles or positions for all persons employed by BGP Americas, Inc. from 2005 to 2009.  *See* Ex. F, Request No. 11.

- Policies and procedures of BGP Americas, Inc. in effect between 2005 to 2009.  *See* Ex. F, Request No. 13.

- Employee codes of conducts of BGP Americas, Inc. in effect between 2005 to 2009.  *See* Ex. F, Request No. 14.

- Rules and regulations of BGP Americas, Inc. in effect between 2005 to 2009. *See* Ex. F, Request No. 15.

- Minimum job qualification requirements for each job title or position of BGP Americas, Inc. in effect between 2005 to 2009.  *See* Ex. F, Request No. 16.

- Documents reflecting any advertising, marketing, public relations or promotional materials of BGP Americas, Inc. from 2005 to 2009.  *See* Ex. F, Request No. 19.

- Documents reflecting any contract or agreement to retain the services of any person or entity to assist BGP Americas, Inc. with advertising, marketing, public relations or promotions.  *See* Ex. F, Request No. 20.

- Monthly account statements, cancelled checks and deposit slips or receipts from April 2004 to December 2009 for BGP Americas, Inc.'s operating accounts with any bank or financial institution in the U.S.  *See* Ex. F, Request No. 21.

- Monthly account statements, cancelled checks and deposit slips or receipts from April 2004 to December 2009 for BGP Americas, Inc.'s operating accounts with any bank or financial institution outside the U.S.  *See* Ex. F, Request No. 22.

- Documents reflecting communications with any bank or financial institution of BGP Americas, Inc. identifying all persons or entities authorized to sign checks, transfer funds, debit the account, or access the account records in person or on-line, from 2005 to 2009.  *See* Ex. F, Request No. 23.

- Documents identifying the complete name, job title, and address of any personal banking representative, account manager or representative, financial manager or representative, at any financial institution in the U.S. engaged in

financial transactions for the benefit of BGP Americas, Inc.  *See* Ex. F, Request No. 24.

- Documents reflecting the name and address of the company or vendor which prepared your employee payroll checks, payroll records, quarterly FICA, Social Security or tax withholding reports, W-2 or 1099 forms from 2005 to 2009.  *See* Ex. F, Request No. 27.

- Any applications for financing or credit submitted by you, or on your behalf, to any U.S. financial institution, from your incorporation to 2009.  *See* Ex. F, Request No. 28.

- Your customer lists from 2005 to 2009.  *See* Ex. F, Request No. 29.

- All invoices generated or delivered by you to any person or entity for goods or services provided from 2005 to 2009.  *See* Ex. F, Request No. 30.

- Documents reflecting payment on any of your invoices from 2005 to 2009, including copies of checks, drafts, wire transfer or credit card payments.  *See* Ex. F, Request No. 31.

- Documents reflecting the purchase, lease or acquisition of all your computer servers, workstations, monitors, archive systems or other related computer equipment from 2004 to 2009.  *See* Ex. F, Request No. 32.

- Copies of monthly billing statements from your local telephone, DSL, internet and cellular telephone service providers from 2004 to 2009.  *See* Ex. F, Request No. 33.

- Copies of your electric, water, waste, janitorial or other utility bills from 2004 to 2009.  *See* Ex. F, Request No. 34.

- Records reflecting payment for your computer servers, workstations, monitors, archive systems or other related computer equipment from 2004 to 2009.  *See* Ex. F, Request No. 35.

- Records reflecting payments made to your local telephone, DSL, internet and cellular telephone service providers from 2004 to 2009.  *See* Ex. F, Request No. 36.

- Records reflecting payments made to your electric, water, waste, janitorial or other utility bills from 2004 to 2009.  *See* Ex. F, Request No. 37.

- Any and all daily, weekly, monthly, quarterly and/or annual reports from 2005 to 2009.  *See* Ex. F, Request No. 41.

- Documents related to offices, office space, physical plant and location, phone systems, fax systems, internet, and cable systems of BGP Americas, Inc.  *See* Ex. F, Request No. 52.

- Documents related to billings and payment for rent, lease, electric consumption, phone, fax, cable, internet, and satellite provider, including form of payment such as cancelled checks.  *See* Ex. F, Request No. 53.

- BGP Americas, Inc. bank account information and persons or entities authorized to transact business in these accounts, or other account for the benefit of BGP Americas, Inc., or in a holding account to which BGP Americas, Inc. has access.  *See* Ex. F, Request No. 54.

- Business identity documents such as business cards, stationary, logos, envelopes, and marketing material for BGP Americas, Inc. including billings for such goods and services and payment for such goods and services. *See* Ex. F, Request No. 55.

- Documents reflecting the names, job titles, and dates of all BGP Americas, Inc. personnel who visited, worked, or trained at the BGP training Center in Houston. *See* Ex. F, Request No. 67.

- Documents reflecting the relationship between the activities of your assumed name entity BGP Geophysical Technology Center, Inc., and the activities of the BGP Training Center in Houston identified and depicted in Exhibit 4 to Plaintiffs' 2nd Request for Admissions. *See* Ex. F, Request No. 70.

- Documents reflecting the planning, specifications, construction, renovation, conversion, build out, equipping or staffing for the BGP Training Center in Houston, TX. *See* Ex. F, Request No. 71.

- Documents reflecting the complete names and addresses for any architect, engineer, consultant, general contractor, subcontractor, realtor or broker involved with any aspect of the planning, development, construction or acquisition of the BGP Training Center in Houston, TX. *See* Ex. F, Request No. 76.

- Documents reflecting any U.S. accountants or accounting firms you have hired or retained in from 2005 to 2009, including billing and payment records. *See* Ex. F, Request No. 81.

- Documents reflecting any U.S. insurance brokers or agents, or insurance agencies or brokerages, you have hired or retained in from 2005 to 2009, including billing and payment records.  *See* Ex. F, Request No. 82.

- Documents reflecting any U.S. shippers, freight forwarders, vendors, trucking or transportation service providers you have hired or retained in from 2005 to 2009, including billing and payment records, this includes UPS, federal Express, DHL or other equivalent service.  *See* Ex. F, Request No. 83.

- Documents reflecting your corporate organizational chart(s), including chain of command, executives and managerial oversight responsibilities, regions, divisions, departments, management and supervision from 2005 to 2009.  *See* Ex. F, Request No. 87.

- Documents reflecting details of your business relationship with Orient Geophysical, Inc. d/b/a Orient, Inc. from 2005 to 2009, including any direct or indirect ownership interest, right to appoint, hire or fire officers and management, financial oversight and control.  *See* Ex. F, Request No. 90.

- Documents reflecting the names of all the Regional Managers you have had in the time period 2005-2009, including the name of each Region and the years each manager held the position.  *See* Ex. F, Request No. 92.

- Documents reflecting the names and job titles of your officers, directors and managers of for 2005-2009 and the years each person held that position.  *See* Ex. F, Request No. 93.

- Documents reflecting the ownership and advertising, promotion, publicity, marketing or publication of the ownership or activities of the BGP Training Center in Houston, TX from 2005 to 2009.  *See* Ex. F, Request No. 96.

- Documents reflecting the ownership and advertising, promotion, publicity, marketing or publication of the ownership or activities of your assumed name entity BGP Geophysical Technology Center, Inc. from 2005 to 2009.  *See* Ex. F, Request No. 97.

- Documents reflecting any and all U.S. group health insurance plans (either issued by a U.S. insurer or issued for delivery in the U.S.) available to or covering your employees.  *See* Ex. F, Request No. 105.

- Documents reflecting any insurance policies issued by a foreign insurance company or syndicate naming BGP, Inc. as an insured or additional insured which were in effect from 2005 to 2009, which also named BGP Americas, Inc. or any of its directors, officers, managers, employees or representatives, agents or contract workers as an insured or additional insured including all risk, war risk, or kidnap and ransom policies.  *See* Ex. F, Request No. 109.

- Complete personnel files including travel records for your employee(s) who held the position of Regional Manager Americas from 2005 to 2009.  *See* Ex. F, Request No. 112.

- Documents reflecting the job description and official corporate or managerial duties and responsibilities and decision making authority for the Regional

Manager of BGP Americas, Inc. from 2005 to 2009.  *See* Ex. F, Request No. 113.

- Documents describing your business record keeping and document retention and destruction policies and procedures from 2005 to 2009.  *See* Ex. F, Request No. 127.

- Documents reflecting the details of the hardware and software systems used for your electronic data storage, archive & retrieval systems from 2005 to 2009.  *See* Ex. F, Request No. 128.

- Documents identifying any documents destroyed or electronic files that have been deleted from the magnetic or optical storage media or overwritten from 2005 to 2009, and the dates of destruction or overwriting.  *See* Ex. F, Request No. 130.

- Documents reflecting the location or disposition of the storage of data generated by the users of your computers from 2005 to 2009, including e-mail communications and word-processed files, including whether the data are backed up on tape or other media, how many such media currently exist with backup data on them, the maximum storage size in megabytes for each such media, the brand name for each such media, the last time each such media was backed up with data, what was the computer or other hardware for each such backup, and the physical location and current user of each computer or other hardware listed.  *See* Ex. F, Request No. 131.

6

- Documents reflecting the Internet Service Provider (ISP) or satellite service provider used by you for transmission of communications and data from and to overseas locations from 2005 to 2009.  *See* Ex. F, Request No. 132.

- Documents showing the position and title of all officers, managers, directors, vice presidents, and/or officers of BGP Americas, Inc. from 2005-2010.  *See* Ex. F, Request No. 140.

- Communications of any nature to the Bank of China, New York Branch, including related to any financing, arranging credit, guaranteeing capital, bridge loans, equipment purchases, insurance premiums, bonus payments related to BGP Americas, Inc.  *See* Ex. F, Request No. 141.

- Copies of civil lawsuits in any jurisdiction in which BGP Americas, Inc. was a party.  *See* Ex. F, Request No. 144.

- Copies of sworn declarations, affidavits, or deposition testimony made by any of BGP Americas, Inc. employees, officers, directors, vice-presidents, managers.  *See* Ex. F, Request No. 145.

- Documents reflecting payments made by BGP Americas, Inc. to SEG, AAPG, or IAGC from 2005 to 2009 for event or reception sponsorship, attendance, or exhibition display space at any convention or trade show.  *See* Ex. F, Request No. 152.

- All documents reflecting communications or decisions concerning policies and procedures for BGP Americas, Inc. in effect from 2005 to 2009.  *See* Ex. F, Request No. 154.

- All documents reflecting communications or decisions concerning employee codes of conduct for BGP Americas, Inc. in effect from 2005 to 2009. *See* Ex. F, Request No. 155.

- All documents reflecting communications or decisions concerning rules and regulations for BGP Americas, Inc. in effect from 2005 to 2009. *See* Ex. F, Request No. 156.

- All documents reflecting communications or decisions concerning safety requirements for BGP Americas, Inc. in effect from 2005 to 2009. *See* Ex. F, Request No. 157.

- All documents reflecting communications or decisions from 2005 to 2009 concerning employee job qualification criteria for BGP Americas, Inc. *See* Ex. F, Request No. 158.

- All documents reflecting communications or decisions from 2005 to 2009 concerning hiring decisions for BGP Americas, Inc. *See* Ex. F, Request No. 159.

- Complete copies of your state, federal and local income tax returns in the U.S. for 2005 to 2009, including all schedules or exhibits thereto. *See* Ex. F, Request No. 165.

- Documents related to any BGP Americas, Inc. business activity or performance of any part of overseas contracts or subcontracts where 2D seismic exploration services occurred. *See* Ex. F, Request No. 166.

- All Texas Franchise Tax returns or reports filed by you, or on your behalf, from 2004 to 2009.  *See* Ex. F, Request No. 167.

- All Texas Franchise Tax No Tax Due Information Reports 05-163 forms filed by you, or on your behalf, from 2004 to 2009.  *See* Ex. F, Request No. 168.

- All Texas Franchise Tax E-Z Computation 05-169 forms filed by you, or on your behalf, from 2004 to 2009.  *See* Ex. F, Request No. 169.

- All Texas Franchise Tax Owner Information Reports filed by you, or on your behalf, from 2004 to 2009.  *See* Ex. F, Request No. 170.

- All Texas Franchise Tax Long Form 05-158A or 05-158B forms filed by you, or on your behalf, from 2004 to 2009.  *See* Ex. F, Request No. 171.

- All W-2s issued by you from 2004 to 2009.  *See* Ex. F, Request No. 172.

- All 1099s issued by you from 2004 to 2009.  *See* Ex. F, Request No. 173.

30.     The Discovery Requests exceed the scope of permissible discovery outlined in the Federal Rules of Civil Procedure.  Good cause supports the issuance of a protective order under Rule 26(c)(1)(A) forbidding the Discovery Requests.

### C.     The Protective Order Must Also Cover the Depositions Requested by Plaintiffs

31.     Plaintiffs have served a "Notice of Taking Videotape Deposition Duces Tecum Corporate Representative of BGP Americas, Inc." and "Notice of Taking Videotape Deposition Duces Tecum Corporate Representative BGP, International, Inc." in which they demand that the witnesses appear with "those items requested in "Plaintiff's [sic] Second Request to Produce" to each respective Defendant.  The Notices are attached as Exhibit H.  These depositions must be quashed for the same reasons set forth in this motion.  Plaintiffs

have suggested that the depositions take place in late May 2011.  An army of lawyers in China and in the United States could not marshal the documents requested by Plaintiffs by the end of May 2011.

**III.** **This Court Should Grant a Protective Order Forbidding Plaintiffs' Third Party Subpoenas or, In the Alternative, Should Quash the Third Party Subpoenas**

    **A.** **The Third Party Subpoenas Were Designed to Harass Defendants and Seek Privileged, Confidential and Proprietary Information**

32.    Defendants move, pursuant to Rules 26 and 45(c)(3), to quash Plaintiffs' Third Party Subpoenas, which were designed to harass and damage Defendants and their business relationships, without leading to relevant evidence.  By issuing these subpoenas to third parties, Plaintiffs are simply attempting to embarrass Defendants by publicly labeling them as accomplices of terrorists, and this Court should not allow it.  FED. R. CIV. P. 26 (stating that a court may "issue an order to protect a party from annoyance, embarrassment, oppression, or undue burden or expense"); *see also Burnett v. Baraka Inv. & Dev. Corp.*, 274 F. Supp. 2d 86, 103 (D.D.C. 2003) ("[I]t is difficult to imagine uglier or more serious charges than those plaintiffs have leveled at these defendants.  The use of the privileged medium of a lawsuit to publicly label someone an accomplice of terrorists can cause incalculable reputational damage.").  Plaintiffs' attempts to embarrass Defendants are evident because any *relevant* information they are seeking through the non-party subpoenas can be obtained from the Defendants themselves through a proper discovery request, without the need to involve third parties.

33.    The Third Party Subpoenas should also be quashed because they seek privileged, confidential, and proprietary information.  A party has standing to quash a

subpoena issued to a non-party "if the party alleges a personal right or privilege with respect

to the subpoenas." *Auto-Owners Ins. Co. v. S.E. Floating Docks, Inc.*, 231 F.R.D. 426, 429

(M.D. Fla. 2005).   A party has a "personal right" regarding confidential and proprietary

documents.   *Id.*   The information that Plaintiffs seek from Ladas & Parry LLP, a law firm

that provided counsel to BGP, Inc., is privileged.   For example, Plaintiffs seek "[a]ll e-mail

communications between BGP, Inc. and Ladas & Perry LLP during the past 10 years" and

"any and all written communications between BGP, Inc. and Ladas & Perry LLP during the

last 10 years."  Ex. G.  The other requests are similar in their attempts to obtain privileged

documents.   The information that Plaintiffs seek from ION Geophysical Corp. and The

Glover Group LLC is confidential and proprietary to Defendants.   For example, Plaintiffs

seek "[d]ocuments reflecting all assets of BGP, Inc. to be transferred to the JV included [sic]

seismic recording systems, inventory, certain intellectual property rights, and contract rights"

and "[d]ocuments reflecting the contracts held by BGP, Inc., or related to its provision or

receipt of goods or services in or related to Cuba, Iran, Myanmar (Burma), North Korea,

Syria, and any other government, country, or person or entity…."  The other requests seek

similarly extensive and intrusive information about the JV relationship between BGP, Inc.

and ION Geophysical Corp. that is confidential and proprietary.   This Court, therefore,

should quash the Third Party Subpoenas.

    34.    Pursuant to Rule 26, Defendants also seek a protective order forbidding

Plaintiffs Third Party Subpoenas because they seek irrelevant information and are unduly

burdensome and overbroad.   Parties to an action "clearly have standing to move for a

protective order if the subpoenas [to non-parties] seek irrelevant information."  *Auto-Owners*

*Ins. Co.*, 231 F.R.D. at 429-30 ("Although Defendants have limited standing to quash the subpoenas pursuant to Rule 45, Defendants' motion to quash is also based on Rule 26."). This also applies to overbroad, oppressive, or unduly burdensome requests to non-parties. *Id.*; *Barrington v. Mortgage It, Inc.*, No. 07-61304, 2007 WL 4370647, at *3 (S.D. Fla. Dec. 10, 2007) ("The Court, therefore, must determine whether the subpoenas duces tecum [to non-parties] seek irrelevant information and/or are overly broad under the same standards set forth in Rule 26(b) and as applied to Rule 24 requests for production.").

35.     The scope of discovery, which is governed by Rule 26, allows "discovery regarding any matter, not privileged, which is relevant to the subject matter of the pending litigation." FED. R. CIV. P. 26(b)(1). "The scope of discovery, though, is not without limits. Discovery of a matter not reasonably calculated to lead to discovery of admissible evidence is not within the scope of Rule 26(b)(1)." *Auto-Owners Ins. Co.*, 231 F.R.D. at 429 (internal quotations and citations omitted). Discovery may also be prohibited if it is overbroad, unreasonably cumulative or duplicative, or "the burden of expense of the proposed discovery outweighs its likely benefit, taking into account the needs of the case, the amount in controversy, the parties' resources, and the importance of the proposed discovery in resolving the issues." FED. R. CIV. P. 26(b)(2).

**B.      The Third Party Subpoenas Seek Information That Will Not Lead to a Finding of Jurisdiction over BGP, Inc.**

36.     In cases of limited jurisdictional discovery, discovery requests should not be permitted if the facts sought, even if established, would be irrelevant to the jurisdictional analysis. *See Howland v. Hertz Corp.*, 431 F. Supp. 2d 1238, 1244 (M.D. Fla. 2006) ("The Court agrees that Plaintiff has failed to allege any specific facts being sought through

discovery that, if proven, would establish jurisdiction."); *Bernardele v. Bonorino*, 608 F. Supp. 2d 1313, 1323 (S.D. Fla. 2009) ("[J]urisdictional discovery as to Bonorino, McPartlin, and MG is unwarranted because the additional jurisdictional facts sought by Plaintiffs would not affect my analysis."); *Nuance Commc'ns, Inc. v. Abby Software House*, 626 F.3d 1222, 1235-36 (Fed. Cir. 2010) ("[A] trial court may deny jurisdictional discovery when it is clear that further discovery would not demonstrate facts sufficient to constitute a basis for jurisdiction or where the request for discovery is based on little more than a hunch that it might yield jurisdictionally relevant facts.") (internal citations and quotations omitted); *U.S. v. Swiss Am. Bank, Ltd.*, 274 F.3d 610, 626-27 (1st Cir. 2001) ("Failure to allege specific contacts, relevant to establishing personal jurisdiction, in a jurisdictional discovery request can be fatal to that request."); *Am. W. Airlines, Inc. v. GPA Group, Ltd.*, 877 F.2d 793, 801 (9th Cir. 1989) ("[I]t is difficult to see how receiving answers to the interrogatories would have provided [the plaintiff] with information to aid its assertion of jurisdiction.").  In this case, Plaintiffs are seeking to establish general jurisdiction such that BGP, Inc. has "continuous and systematic" contacts with the forum.  Through the Third Party Subpoenas, however, Plaintiffs are seeking to establish facts of BGP, Inc.'s sporadic and limited contacts with the United States.  Even if these facts were established, they would not be enough for Plaintiffs to show that BGP, Inc. has continuous and systematic contacts with the United States.

37.    In *Auto-Owners Insurance*, this Court held that the plaintiff's subpoena duces tecum to a third party seeking information regarding the defendant's financial matters was "grossly overbroad and irrelevant" because "it does not relate to a claim or defense by the

parties, but is in aid of execution of a judgment that has not yet been entered."  231 F.R.D. at

429.  In *Barrington*, which was an employment action, the Southern District of Florida held

that a subpoena duces tecum to a non-party was overly broad on its face because it sought

"any and all documents, files and records, reflecting or relating to the employment" of the

plaintiff.  2007 WL 4370647, at *3.

38.     As discussed in more detail below, Plaintiffs subpoenas are similarly

overbroad and irrelevant.  Plaintiffs' broad-scope requests seek extensive and intrusive

information about every aspect of the legal, business, and financial relationship between

Defendants and the non-parties.  The requests are overbroad, vague, unduly burdensome,

harassing, irrelevant, and not reasonably calculated to lead to discovery of admissible

evidence.

### 1.     Subpoenas Regarding BGP, Inc's Participation In Trade Shows

39.     Plaintiffs issued subpoenas duces tecum directed towards the Society of

Exploration Geophysicists, the American Association of Petroleum Geologists, and the

International Association of Geophysical Contractors.  Broadly speaking, these subpoenas

seek information regarding BGP, Inc's membership in these entities and its participation in

various trade shows or conventions hosted by these entities.  These subpoenas should be

quashed because the discovery they seek is irrelevant.  Plaintiffs' Fourth Amended Complaint

included allegations that personal jurisdiction existed over BGP, Inc. based, in part, on its

participation and attendance at various conferences and conventions hosted by the Society of

Exploration Geophysicists.  Fourth Amended Complaint [Dkt. 79], ¶ 37.  Taking these

allegations as true, the Court specifically found that "[t]he BGP Parent's alleged contacts are

not enough to support general jurisdiction."  Order [Dkt. 94], p. 9.  Thus, the subpoenas to the Society of Exploration Geophysicists, the American Association of Petroleum Geologists, and the International Association of Geophysical Contractors are futile and overly burdensome because the Court has already ruled that BGP, Inc. cannot be subject to general personal jurisdiction based on membership in a trade organization, because such contacts do not establish the requisite "continuous and systematic" business contacts.

40.     Further, even setting aside that the subpoenas seek information that is irrelevant, the requests for production are overly broad and unduly burdensome.  The requests seek, among other things, **all** e-mail communication with these entities, **all** written communications between BGP, Inc. and these entities, and **all** payments to these entities by BGP, Inc. over a six year time period.  The requests are also improper because the information Plaintiffs seek could be obtained from BGP, Inc. in a proper discovery request.  The Court should issue an order under Rule 26(c)(1)(A) forbidding the subpoenas or, alternatively, quash the subpoenas under Rule 45(c).

### 2.     Subpoenas Regarding BGP, Inc.'s Lobbying Activities and its Grant to Texas Tech

41.     Plaintiffs issued subpoenas duces tecum to Texas Tech University and the Glover Park Group, a lobbying firm.  The subpoenas seek, respectively, information regarding a research grant to Texas Tech by BGP, Inc. and BGP, Inc.'s retention of The Glover Park Group.  These subpoenas should be quashed because they seek information that is irrelevant.  Plaintiffs' Fourth Amended Complaint included allegations that general personal jurisdiction existed over BGP, Inc. because "BGP, Inc. hired three lobbyists with a Washington, DC law firm" and because "BGP/CNPC awarded a $185,000 grant to Professor

Hua-wei Zhou at Texas Tech University."   Fourth Amended Complaint [Dkt. 79], ¶ 37. Again, taking these allegations as true, the Court rejected the conclusion that general jurisdiction existed over BGP, Inc.  Discovery regarding BGP, Inc.'s lobbying activities and a research grant to Texas Tech are futile and irrelevant because the Court has already ruled that these contacts do not give rise to jurisdiction.  Thus, as set forth above, the subpoenas to Texas Tech University and The Glover Park Group should be forbidden by protective order or, in the alternative, quashed.

42.     The subpoenas to Texas Tech and The Glover Park Group are also overly broad and intended to harass and embarrass BGP, Inc.  The Texas Tech subpoena seeks "**all** email communication between BGP, Inc. and TTU Professor Hua-wei Zhou," and the Glover Park subpoena seeks "**all** email communications between BGP, Inc. and The Glover Park Group LLC during the last 10 years."  Ex. G.  The Glover Park subpoena further seeks "[c]ommunications or documents reflecting the contracts held by BGP, Inc. or related to its provision or receipt of goods in or related to Cuba, Iran, Myanmar (Burma), North Korea, Syria and Sudan . . . ."  Ex. G.  BGP, Inc.'s contacts with countries other that the United States are simply irrelevant for jurisdictional—or any other—purposes.  The subpoenas to Texas Tech and The Glover Park Group should be forbidden by protective order or, in the alternative, quashed.

### 3.     Subpoenas Regarding Shipping Activities

43.     Plaintiffs directed subpoenas duces tecum to Shepard Exposition Services, Inc., Freeman Co., Global Experience Specialists, Inc., Andrews Technologies, Inc., Seismic Reservoir 20202, Inc., and Paulsson, Inc.  All of these subpoenas are overly broad and

unduly burdensome in that, instead of requesting specific categories of documents, they seek "[y]our complete file(s) related to the Chinese corporate entity known as BGP, Inc. . . . including any files from any of your other offices, distribution centers, or subsidiaries." Ex. G.

44.      Shepard Exposition Services, Inc. , Freeman Co., and Global Experience Specialists, Inc. appear to be logistics and convention management companies that may have shipped containers, "prefabricated buildings-exhibition stands," or other exhibition products on behalf on BGP, Inc. to a convention or trade show.  Ex. G.  As set forth above, BGP, Inc.'s participation in trade shows or conventions is **not relevant** to personal jurisdiction because the Court has already rejected such participation as establishing the requisite "continuous and systematic" contacts.  Likewise, Andrews Technologies, Inc. is a company that supplies goods and services to energy companies in the United States, Mexico, and South America.  Of note, the subpoena to Andrews Technologies seeks all documents related to any products shipped by BGP, Inc. "into any Mexican port from 2005–2009."  Ex. G. BGP Inc.'s contacts with Mexico simply have no bearing on the personal jurisdiction of a U.S. court.

45.      For the reasons outlined above, the subpoenas to Shepard Exposition Services, Inc., Freeman Co., Global Experience Specialists, Inc., Andrews Technologies, Inc., Seismic Reservoir 20202, Inc., and Paulsson, Inc. should be forbidden by protective order or, in the alternative, quashed because they are overly broad, unduly burdensome, harassing, and seek irrelevant information.

**4.     Subpoenas Regarding Joint Venture with Ion Corp.**

46.     Plaintiffs served subpoenas duces tecum to the Bank of China's New York Branch and ION Geophysical Corp. ("ION") regarding the relationship between BGP, Inc. and ION.  First, these subpoenas seek irrelevant information because the Court rejected BGP, Inc.'s participation in a joint venture with ION as a basis for general jurisdiction.  Order [Dkt. 79], p. 9.  The information sought from ION and the Bank of China regarding the joint venture relationship or the financing involved with the transaction do not bear on personal jurisdiction and should be either forbidden by protective order or quashed.

47.     Further, these subpoenas are overly broad and generally unreasonable.  For example, the ION subpoena seeks the "complete file submitted by you, or your representative, to the Committee on Foreign Investment in the United States for regulatory review and approval of the joint venture," and any communications received from BGP International, Inc. or BGP Americas, Inc. received prior to December 2009.  Ex. G.  The ION Subpoena also seeks the "contracts held by BGP, Inc., or related to its provision or receipt of goods in or related to Cuba, Iran, Myanmar (Burma), North Korea, Syria and Sudan . . . ."  Ex. G.  As stated above, this request seeks irrelevant information because BGP, Inc.'s contacts with other nations cannot establish jurisdiction in the United States and are merely an attempt to harass and embarrass BGP, Inc.

48.     Likewise, the subpoena to the Bank of China is overly broad in that it seeks detailed, confidential financial information relating to BGP, Inc., BGP International, Inc., and BGP Americas, Inc.  For example, the Bank of China subpoena seeks "[a]ny communication on the letterhead of BGP, Inc. received prior to December 10, 2009" and "[m]onthly account

statements, cancelled checks and deposit slips or receipts from April 2004 to December 2009 from BGP Americas, Inc.'s operating accounts with any bank or financial institution in the U.S." Ex. G. The subpoena also seeks "[c]ommunications of any nature to you or your representatives related to any financing, arranging credit, guaranteeing capital, bridge loans, equipment purchases, insurance premiums, bonus payments related to BGP Americas, Inc." Ex. G. Such incredibly broad, unlimited discovery to a third party regarding confidential financial information is impermissible under these circumstances.

49.     The subpoenas to the Bank of China's New York Branch and ION Geophysical Corp. should be forbidden by protective order or, in the alternative, quashed because they are overly broad, unduly burdensome, harassing, and seek irrelevant information.

**5.     Subpoenas Regarding Orient Geophysical, Inc.**

50.     Plaintiffs issued subpoenas duces tecum to Orient Geophysical, Inc. a/k/a Orient, Inc. ("Orient"), Warren C. Brown, Esq., and Lawyers Title Co. regarding Orient's relationship with BGP, Inc. and a real estate transaction between Orient and M.R.I., Inc. Ex. G. Orient is a U.S. subsidiary of BGP, Inc. The subpoena to Orient sets forth 173 requests for production seeking detailed financial and organizational information. Ex. G. Orient is not a party to this lawsuit and should not be subject to such extensive, overly broad, and unduly burdensome discovery. Further, it appears that Plaintiffs may be attempting to impute Orient's contacts with the United States to BGP, Inc. under an alter ego theory in order to establish jurisdiction over BGP, Inc. This attempt is fatally flawed because, as mentioned above, Orient is not a party to this lawsuit and its contacts with the United States

may not be used to establish jurisdiction over BGP, Inc.  Further, the deadline to add parties was February 2, 2011; Plaintiffs' fishing expedition is futile because it is too late to add Orient as a party to this lawsuit.  *See* Scheduling Order [Dkt. 83].[3]

51.     Because Orient's contacts with the United States are irrelevant to the jurisdictional inquiry before the Court, the subpoenas to Warren C. Brown, Esq., and Lawyers Title Co. are unduly burdensome because they seek information that has no relevance to this lawsuit.  In addition, as with all the other third party subpoenas, the subpoenas to Orient, Warren C. Brown, Esq. and Lawyers Title Co. contain the same type of overly broad, unduly burdensome, harassing and irrelevant discovery requests.  The subpoenas to Orient, Warren C. Brown, Esq., and Lawyers Title Co. should be forbidden by protective order or, in the alternative, quashed because they are unduly burdensome and seek irrelevant information.

### 6.     Subpoenas Regarding BGP, Inc.'s Intellectual Property

52.     Plaintiffs served subpoenas duces tecum to Ladas & Perry, LLP ("Ladas") and a former employee of the same firm, William R. Evans, seeking information regarding Ladas's representation of BGP, Inc. in connection with various intellectual property matters. Plaintiffs' Fourth Amended Complaint alleged that personal jurisdiction over BGP, Inc. existed because "BGP, Inc. CNPC has held a patent since 2006."  Complaint [Dkt. 79], ¶ 37. As with Plaintiffs' other allegations regarding jurisdiction over BGP, Inc., the Court held that the fact that BGP, Inc. holds a U.S. patent does not establish general jurisdiction.  Order

---

[3] Plaintiffs attempted to seek similar discovery from Orient prior to the stay ordered by this Court; therefore, Plaintiffs clearly knew of the existence of Orient prior to the deadline to add new parties.

[Dkt. 94], p. 9.  Information held by the U.S. law firm that obtained the patent is irrelevant to personal jurisdiction because this Court has already found that general jurisdiction cannot be predicated on this alleged contact.  Thus, the subpoenas to Ladas and its former employee are irrelevant and should be forbidden or, alternatively, quashed.

53.     Further, the subpoenas to Ladas and its former employee seek privileged information.  Requests 1, 4, and 5 of the Ladas subpoena seek "[a]ll of Ladas & Perry, LLC's retainer agreements, bills, statements or invoices submitted to BGP, Inc. for legal or professional services rendered in the last ten years," "[a]ll email communications between BGP, Inc. and Ladas & Perry LLP during the last ten years" and "[d]ocuments reflecting any and all written communications between BGP, Inc. and Ladas & Perry LLP during the past ten years."  Ex. G.  These requests are clearly improper, overly broad, and require the disclosure of privileged information.

54.     The subpoenas to Ladas & Perry, LLP and William R. Evans should be forbidden by protective order or, in the alternative, quashed because they are unduly burdensome and seek privileged and irrelevant information.

### 7.     Subpoena Regarding Lawsuit Against BGP International, Inc.

55.     Plaintiffs issued a subpoena duces tecum to Vaughan E. Waters, Esq., a lawyer who represented BGP International, Inc. in a U.S. lawsuit, seeking an insurance policy naming BGP International, Inc. as insured.  This Court has already ruled that BGP International, Inc. is subject to the Court's personal jurisdiction.   BGP International's insurance policies have no bearing on the jurisdictional issues before this Court or even to any issue germane to this lawsuit in general.  This subpoena is unduly burdensome in that it

seeks irrelevant information and should be forbidden by protective order or, in the alternative, quashed.

56.      In summary, the less expensive and more convenient sources from which to obtain *relevant* information regarding Defendants' relationships with these non-parties are through proper discovery requests issued to the Defendants themselves.  Indeed, Plaintiffs have propounded discovery to Defendants regarding these same topics and, rather then permitting the Court to consider any proper objections thereto, Plaintiffs have proceeded with insidious requests to third parties.  Plaintiffs appear to be on an improper fishing expedition in an effort to harass Defendants by seeking unduly burdensome, oppressive, embarrassing, premature, and completely irrelevant discovery from non-parties without any cogent basis for seeking the information.   This Court, therefore, should issue a protective order forbidding Plaintiffs' subpoenas duces tecum.

## IV.    This Court Should Sanction Plaintiffs for Their Egregious Discovery Requests by Forbidding Jurisdictional Discovery

57.      As described in detail above, Plaintiffs have abused this Court's grant of limited jurisdictional discovery and have propounded abusive, overly broad, vague, unduly burdensome and expensive, irrelevant, and objectionable requests on each Defendant and on 19 third parties.  Plaintiffs have clearly taken advantage of this limited discovery process to harass BGP, Inc. and for other improper purposes that the United States Supreme Court warned about in *Aerospatiale*.  *See* 482 U.S. at 546.  As a result, Defendants respectfully request that this Court use its sanction power under Federal Rule of Civil Procedure 26 and its inherent power to manage the cases and parties before it by forbidding all jurisdictional discovery in this case.

58.     Rule 26, which governs discovery, provides that a court may issue a protective order "to protect a party or person from annoyance, embarrassment, oppression, or undue burden or expense [by] forbidding the [] discovery."  Fed. R. Civ. P. 26(c)(1)(A).  With regard to sanctions, Rule 26 provides:

> (g)(1) … By signing [a discovery request], an attorney or party certifies that to the best of the person's knowledge, information, and belief formed after a reasonable inquiry:
>
> ….
>
> > (B) with respect to a discovery request …, it is:
> >
> > > (i) consistent with these rules and warranted by existing law or by a nonfrivolous argument for extending, modifying, or reversing existing law, or for establishing new law;
> > >
> > > (ii) not interposed for any improper purpose, such as to harass, cause unnecessary delay, or needlessly increase the cost of litigation; and
> > >
> > > (iii) neither unreasonable nor unduly burdensome or expensive, considering the needs of the case, prior discovery in the case, the amount in controversy, and the importance of the issues at stake in the action.

FED. R. CIV. P. 26(g).

59.     If discovery is propounded in violation of Rule 26, the Court must impose sanctions.  Fed. R. Civ. P. 26(g)(3); *In re Olympia Holding Corp.*, 189 B.R. 846, 856 (Bankr. M.D. Fla. 1995).  The court in *In re Olympia Holding Corp.* recognized that "the spirit of the rule is violated when discovery is used as a tactical weapon rather than to explore a party's claims and the facts connected therewith."  189 B.R. at 856 (imposing sanctions against the plaintiff and plaintiff's counsel for propounding unreasonable, overly burdensome discovery requests which harassed defendants into filing protective orders and motions for sanctions)

(internal quotations omitted).

60.     This Court also has the inherent power to sanction a party separate and apart from any rule or statute that might allow the imposition of sanctions.  *See Chambers v. NASXO, Inc.*, 501 U.S. 32, 46-47 (1991).  The Eleventh Circuit has held that inherent powers "are necessarily vested in courts to manage their affairs to 'achieve the orderly and expeditious disposition of cases.'" *In re Mroz*, 65 F.3d 1567, 1575 (11th Cir. 1995) (quoting *Chambers*, 501 U.S. at 53).  The inherent powers may be utilized even when a specific rule allows sanctions for that same conduct.  *In re Olympia Holding Corp.*, 189 B.R. at 856. Sanctioning under the inherent powers requires a finding of bad faith, which "includes vexations, wanton, or oppressive behavior." *Id.*

61.     The Eleventh Circuit has held that a court has wide discretion in determining what type of sanctions to impose.  *Donaldson v. Clark*, 819 F.2d 1551, 1557 (11th Cir. 1987).  In light of the extremely abusive and vexatious discovery that plaintiffs have propounded in clear violation of this Court's order permitting limited jurisdictional discovery, Defendants request that the Court forbid all jurisdictional discovery in this case as permitted under Rule 26 and the Court's inherent powers.  Defendants also request any other sanctions that the Court deems just and proper under the circumstances.

## **Request for Oral Hearing**

62.     In the event this Court permits discovery to proceed, Defendants respectfully request an oral hearing or  conference with the Court and Plaintiffs' counsel to establish a proper scope for jurisdictional discovery and reasonable deadlines to respond to Plaintiffs' voluminous Discovery Requests and the depositions.

## Conclusion

For the foregoing reasons, Defendants respectfully request that this Court issue an Order disallowing jurisdictional discovery against BGP, Inc.  In the alternative, Defendants request this Court issue a Protective Order forbidding Plaintiffs' current Discovery Requests, forbidding or quashing the Third Party Subpoenas and sanctioning Plaintiffs.  In the event the Court does not forbid the Discovery Requests and the Third Party Subpoenas, Defendants request an oral hearing so that the Court, Defendants and Plaintiffs may establish a proper scope for jurisdictional discovery and reasonable deadlines for responses to the Discovery Requests and Third Party Subpoenas.

Respectfully submitted,

By: /s/ *Tony L. Visage*
    Tony L. Visage

BRACEWELL & GIULIANI LLP
Stephen B. Crain
*Admitted Pro Hac Vice*
Texas State Bar No. 04994580
S.D. of Texas No. 12499
stephen.crain@bgllp.com

Tony L. Visage
*Admitted Pro Hac Vice*
Texas State Bar No. 00788587
S.D. of Texas No. 17248
tony.visage@bgllp.com

J. Erick Sandlin
*Admitted Pro Hac Vice*
Texas State Bar No. 24056265
S.D. of Texas No. 872070
erick.sandlin@bgllp.com

South Tower Pennzoil Place

711 Louisiana Street, Suite 2300
Houston, Texas 77002
(713) 223-2300 (Telephone)
(713) 221-1212 (Facsimile)

*Primary Counsel for BGP, Inc., BGP International, Inc., and BGP Americas, Inc.*

and

MILLS PASKERT DIVERS P.A.
Jeffrey M. Paskert
Florida Bar No. 846041
jpaskert@mpdlegal.com
Ryan M. Scully
Florida Bar No. 0030944
rscully@mpdlegal.com
100 North Tampa Street, Suite 2010
Tampa, Florida 33602
Office: 813.229.3500
Facsimile: 813.229.3502

*Local Counsel for BGP, Inc., BGP International, Inc., and BGP Americas, Inc.*

## CERTIFICATE OF CONFERENCE

I hereby certify that on April 18, 2011, Defendants' counsel Tony Visage and Stephen Crain conferred with Plaintiffs' counsel, Tony Korvick and Newt Porter, regarding this Motion for Reconsideration and Protection.  Mr. Korvick indicated that Plaintiffs oppose the Motion for Reconsideration and Protection.

/s/ *Tony L. Visage*
Tony L. Visage

### CERTIFICATE OF SERVICE

I hereby certify that on April 19, 2011 I caused a copy of the foregoing document to be filed with the Court's electronic filing system.

*   /s/ Tony L. Visage*
Tony L. Visage

I hereby certify that a true and correct copy the foregoing has been forwarded to the following by Federal Express on this 19th day of April, 2011.

Ladas & Parry LLP
26 West 61st Street
New York, NY 10023

Mr. Brett O'Brien
The Glover Park Group LLC
1025 F Street NW, 9th Floor
Washington, DC 20004

Orient, Inc.
2958 Rogerdale Rd.
Houston, Texas 77042

Mr. Warren C. Brown, Esq.
617 Caroline, Suite 301
Houston, Texas 77002

Lawyers Title Co.
617 Caroline, Suite 301
Houston, TX 77002

Mr. David Roland, Esq.
General Counsel
ION Geophysical Corp.
2105 City West Blvd., Suite 400
Houston, Texas 77042

Society of Exploration Geophysicists
8801 South Yale, Suite 500
Tulsa, OK 74137

Texas Tech University
Attn:  Dept. Chairman Dr. Cal G. Barnes
Department of Geosciences, SCI-328
Lubbock, TX 79409

American Association of Petroleum Geologists
1444 S. Boulder Ave.
Tulsa, OK 74119

International Association of Geophysical Contractors
1225 North Loop West, Suite 220
Houston, TX 77008

Andrews Technologies, Inc.
50 Briar Hollow Lane, Suite 200E
Houston, TX 77027

Paulsson, Inc.
c/o Registered Agent Bjorn Nils Patrick Paulsson
4612 Wolfe Way
Woodland Hills, CA 91364

Seismic Reservoir 20202, Inc.
c/o Registered Agent Robert G. Quinn
Quinn & Quinn
18665 Via Torino
Irvine, CA 92603

Global Experience Specialists, Inc.
1415 Cockrell Hill Rd., Suite 300
Dallas, TX 75211

Global Experience Specialists, Inc.
2121 Sage Road, Suite 320
Houston, TX 77056

Global Experience Specialists, Inc.
950 Grier Drive
Las Vegas, NV 89119
Freeman Co.
Corporate Headquarters
1600 Viceroy, Suite 100
Dallas, TX 75235

Shepard Exposition Services, Inc.
1531 Carroll Drive NW
Atlanta, GA 30318

Records Custodian
Bank of China (New York Branch)
410 Madison Avenue
New York, NY 10017

Vaughan E. Waters, Esq.
Thornton, Biechlin, Segrato, Reynolds & Guerra LC
Fifth Floor
One International Centre
100 N.E. Loop 410
San Antonio, Texas 78216


_/s/ Tony L. Visage_____
Tony L. Visage